USDC SCAN INDEX SHEET

















JPP   4/5/06   15:13

3:06-CV-00669   SAITER V. MII LIQUIDATION INC

*1*

*WDREFRNC.*



**Original**

FILED

2006 MAR 27 AM 9: 47

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

1  WILLIAM M. LOW, ESQ. (Bar No. 106669)
   CYRUS L. TORABI, ESQ. (Bar No. 222759)
2  HIGGS, FLETCHER & MACK LLP
   401 West 'A' Street, Suite 2600
3  San Diego, CA 92101-7913
   TEL:  619.236.1551
4  FAX:  619.696.1410

5  Attorneys for Defendant
   MII LIQUIDATION, INC. fka METABOLIFE
6  INTERNATIONAL, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  JOSEPH SAITER,                    CASE NO. 06CV 0669 BTM JMA

12            Plaintiff,              NOTICE OF TRANSFER TO UNITED
                                      STATES DISTRICT COURT FOR THE
13  v.                                SOUTHERN DISTRICT OF CALIFORNIA

14  MII LIQUIDATION, INC. fka          [28 U.S.C. § 157(b)(5)]
    METABOLIFE INTERNATIONAL, INC.;
15  THE CHEMINS COMPANY, INC.; DIXIE
    HEALTH OF PENSACOLA, INC. dba
16  SMOOTHIE KING; and SMOOTHIE KING
    FRANCHISES, INC.,
17
              Defendants.
18

19       **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

20       PLEASE TAKE NOTICE that Circuit Court of Santa Rosa County, Florida Case No. 04-

21  299-CA (the "Case") is being transferred to this Court pursuant to this Court's: (i) Order Granting

22  Petition of Debtors-in-Possession Pursuant to 28 U.S.C. § 157(b)(5) dated November 2, 2005;

23  and (ii) Supplemental Order Regarding Transfer of Cases Pursuant to 28 U.S.C. § 157(b)(5) dated

24  December 2, 2005, both of which were issued in Case No. 05-01802.

25       Defendant MII LIQUIDATION, INC. fka METABOLIFE INTERNATIONAL, INC.

26  states the following in support of this transfer:

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

728842.2

NOTICE OF 28 U.S.C. § 157(b)(5) TRANSFER TO UNITED STATES DISTRICT COURT

1.    On June 30, 2005, MII Liquidation, Inc., which was then known as Metabolife International, Inc. ("Metabolife") and its wholly owned subsidiary, AHP Liquidation, Inc., which was then known as Alpine Health Products, LLC ("Alpine") (Metabolife and Alpine are collectively referred to herein as "Debtors-in-Possession") filed voluntary Chapter 11 petitions before the United States Bankruptcy Court for the Southern District of California as Case Nos. 05-06040 and 05-06041, respectively.

2.    The Case was filed as Case No. 04-299-CA in the Circuit Court of Santa Rosa County, Florida on April 5, 2004, which date is prior to the filing of Debtors-in-Possession's Chapter 11 petitions.  The Case was thereby stayed by the automatic stay provisions of 11 U.S.C. § 362 as to Debtors-in-Possession.

3.    On September 9, 2005, the United States Bankruptcy Court for the Southern District of California entered an Order enjoining all aspects of the Case, including claims against defendants other than Debtors-in-Possession, through December 6, 2005.  On November 30, 2005, the United States Bankruptcy Court for the Southern District of California entered another Order extending the September 9, 2005 Order through March 10, 2006.  The September 9, 2005 Order and the November 30, 2005 Order are attached hereto as Attachments 1 and 2.

4.    On November 2, 2005 and December 2, 2005, this Court entered two Orders as Docket Item Nos. 29 and 31 in Case No. 05-01802.  These Orders, which are attached hereto as Attachments 3 and 4, mandated the transfer of the Case to this Court for all purposes pursuant to 28 U.S.C. § 157(b)(5).  See Exhibit 'A' to the December 2, 2005 Order.

5.    In light of the foregoing, the Case has been stayed since June 30, 2005 as to Debtors-in-Possession, and as to all defendants since September 9, 2005.  Furthermore, in light of this Court's November 2, 2005 and December 2, 2005 Orders, the Case is being transferred to this Court for all purposes.

HIGGS, FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

1

2    DATED: March 23, 2006                          HIGGS, FLETCHER & MACK LLP

3

4                                                   By:_____

5                                                     WILLIAM M. LOW, ESQ.
                                                      CYRUS L. TORABI, ESQ.
6                                                     Attorneys for Defendant
                                                      MII LIQUIDATION, INC. fka
7                                                     METABOLIFE INTERNATIONAL, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

728842.2                                    3

NOTICE OF 28 U.S.C. § 157(b)(5) TRANSFER TO UNITED STATES DISTRICT COURT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ATTACHMENT 1

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

728842.2

4

NOTICE OF 28 U.S.C. § 157(b)(5) TRANSFER TO UNITED STATES DISTRICT COURT

CSD 3000A [11/15/04]
Name, Address, Telephone No. & I.D. No.

DAVID L. OSIAS / DEBRA A. RILEY (091287/151925)
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Attorneys for Plaintiffs

Order Entered on
September 09, 2005
by Clerk U.S. Bankruptcy Court
Southern District of California

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| | |
|---|---|
| In Re<br>METABOLIFE INTERNATIONAL, INC., and<br>ALPINE HEALTH PRODUCTS, LLC,<br>Debtor. | BANKRUPTCY NO. 05-6040-H11 (Jointly Admin.) |
| Metabolife International, Inc., and<br>Alpine Health Products, LLC,<br>Plaintiff(s) | ADVERSARY NO. 05-90378-JH |
| v.<br>Rosemary Alaniz, an individual; et al.,<br>Defendants(s) | Date of Hearing: September 7, 2005<br>Time of Hearing: 2:00 p.m.<br>Name of Judge: John J. Hargrove |

## ORDER ON

## MOTION FOR (A) ON AN EMERGENCY BASIS, A TEMPORARY RESTRAINING ORDER, (B) UPON DUE NOTICE, A PRELIMINARY INJUNCTION, AND (C) CERTAIN OTHER AND ADDITION

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __2__ pages, is granted. Motion/Application Docket Entry No. ___3___

//

//

//

//

DATED: **September 09, 2005**

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Allen Matkins Leck Gamble & Mallory LLP
(Firm name)

By: /s/ David L. Osias
     Attorney for ☑ Movant ☐ Respondent

CSD 3000A

CSD 3000A [11/15/04] (Page 2)
ORDER ON MOTION FOR (A) ON AN EMERGENCY BASIS, A TEMPORARY RESTRAINING
DEBTOR: METABOLIFE INTERNATIONAL, INC., and
    ALPINE HEALTH PRODUCTS, LLC,

CASE NO.: 05-6040-H11 (Jointly Admin.)
ADV. NO.: 05-90378-JH

The Plaintiffs' Motion for (A) on an Emergency Basis, a Temporary Restraining Order, (B) Upon Due Notice, a Preliminary Injunction, and (C) Certain Other and Additional Relief came on for hearing before this Court on September 7, 2005, at 2:00 p. m., the Honorable John J. Hargrove presiding. David L. Osias of Allen Matkins Leck Gamble & Mallory LLP appeared as counsel for the Plaintiffs; other appearances were as noted on the record. After consideration of Plaintiffs' moving papers, the files herein, and the argument of counsel at the hearing, the Court finds that notice of the motion was properly given and that, based upon the facts and circumstances herein, the multi-party stipulation executed in the Ephedra Products Liability MDL (04 MD 1598 JSR), and the approval of that stipulation by the United States District Court for the Southern District of New York, entry of the preliminary injunction is reasonably necessary to promote and protect the parties' efforts to work toward a chapter 11 plan.

In light of the foregoing, IT IS HEREBY ORDERED as follows:

1. The motion for preliminary injunction is granted. All proceedings in any case, suit, or action commenced by an Ephedra Plaintiff (as defined in the moving papers), including any proceedings against the non-debtor defendants in such case, suit, or action, are hereby stayed and enjoined through December 6, 2005.

2. This preliminary injunction and stay may be extended upon the approval of such extension by both this Court and the MDL District Court.

3. Pending further order of this Court, all procedural deadlines, including under the Federal Rules of Bankruptcy or Civil Procedure, in this adversary proceeding, such as dates by which service must be effected, a response to the complaint or pretrial reports filed, or initial discovery disclosures made, are also stayed.

*Signed by Judge John J. Hargrove September 09, 2005*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# ATTACHMENT 2

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

728842.2                          5

NOTICE OF 28 U.S.C. § 157(b)(5) TRANSFER TO UNITED STATES DISTRICT COURT

CSD 3000A [11/15/04]
Name, Address, Telephone No. & I.D. No.

DAVID L. OSIAS / DEBRA A. RILEY (091287/151925)
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Attorneys for Plaintiffs

Order Entered on
November 30, 2005
by Clerk U.S. Bankruptcy Court
Southern District of California

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| | |
|---|---|
| In Re<br>METABOLIFE INTERNATIONAL, INC., and<br>ALPINE HEALTH PRODUCTS, LLC,<br><div align=right>Debtor.</div> | BANKRUPTCY NO. 05-6040-H11 (Jointly Admin.) |
| Metabolife International, Inc., and<br>Alpine Health Products, LLC,<br><div align=right>Plaintiff(s)</div> | ADVERSARY NO. 05-90378-JH |
| v.<br>Rosemary Alaniz, an individual; et al.,<br><div align=right>Defendants(s)</div> | Date of Hearing:<br>Time of Hearing:<br>Name of Judge: |

## ORDER ON

## EX PARTE APPLICATION FOR AN ORDER EXTENDING SECTION 105 PRELIMINARY INJUNCTION THROUGH MARCH 10, 2006

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __2__ pages, is granted.  Motion/Application Docket Entry No. ___27___

//

//

//

//

DATED:  November 30, 2005

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Allen Matkins Leck Gamble & Mallory LLP
(Firm name)

By: /s/ David L. Osias
Attorney for ☑ Movant ☐ Respondent

Judge, United States Bankruptcy Court

CSD 3000A

CSD 3000A [11/15/04] (Page 2)
ORDER ON EX PARTE APPLICATION FOR AN ORDER EXTENDING SECTION 105
DEBTOR: METABOLIFE INTERNATIONAL, INC., and
          ALPINE HEALTH PRODUCTS, LLC.

CASE NO.: 05-6040-H11 (Jointly Admin.)
ADV. NO.: 05-90378-JH

Based upon the ex parte application of Debtors in Possession for an order extending the section 105 preliminary injunction entered by this Court on September 9, 2005 (the "Injunction Order"), and good cause appearing therefor,

IT IS HEREBY ORDERED as follows:

1. The preliminary injunction is extended from December 6, 2005, through March 10, 2006.

2. The extension of the Injunction Order does not enjoin Ephedra Claimants from filing proofs of claim or commencing adversary complaints in accordance with the Claims Bar Date Order entered by this Court on November 18, 2005.

3. Any party added to Adversary Proceeding No. 05-90378-JH shall become subject to this Order upon the giving of notice to them of this Order.

4. All other terms of the Injunction Order remain unchanged.

CSD 3000A

*Signed by Judge John J. Hargrove November 30, 2005*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# ATTACHMENT 3

27
28

Higgs, Fletcher
& Mack LLP
Attorneys At Law
San Diego

728842.2

6

NOTICE OF 28 U.S.C. § 157(b)(5) TRANSFER TO UNITED STATES DISTRICT COURT

05 NOV -3 AM 8: 22

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>METABOLIFE INTERNATIONAL, INC.<br>and ALPINE HEALTH PRODUCTS, LLC,<br><br>Debtors/Petitioners, | CASE NO. 05cv1802-IEG(RBB)<br><br>Order Granting Petition of Debtors-<br>in-Possession Pursuant to 28 U.S.C.<br>§ 157(b)(5) [Doc. No. 1] |

Debtors-in-possession Metabolife International, Inc. ("Metabolife") and Alpine Health Products, LLC ("Alpine Health") (together with Metabolife, the "Debtors-in-Possession"), petition the Court pursuant to 28 U.S.C. § 157(b)(5) for an order determining that personal injury tort and wrongful death ("PITWD") claims, which cannot be tried in a bankruptcy court, shall be heard in this district court rather than in state and federal courts throughout the country. Debtors-in-Possession also seek related ancillary relief as necessary to implement the transfer the cases to this Court. Debtors-in-Possession do not, at this time, seek transfer of the approximately 200 MDL Actions currently pending before the Southern District of New York to this Court for pretrial management. Debtors-in-Possession, however, do seek immediate transfer of all other non-MDL PITWD actions to this Court. Debtors-in-Possession have served a copy of their petition upon counsel for all interested parties, including counsel for all PITWD plaintiffs.

- 1 -

29

05cv1802

1      Metabolife's sole shareholders, Michael Blevins, William Bradley, and Michael Ellis, have

2  joined in the petition. These parties, however, additionally ask the Court to immediately transfer to

3  this Court all Ephedra Actions, including those which are part of the S.D.N.Y. MDL Action.

4      The Official Committee of Unsecured Creditors ("Committee"), appointed in the

5  coordinated Metabolife and Alpine Health bankruptcy actions, has filed a limited opposition. The

6  Committee argues that although this Court should be designated as the proper forum for trial of all

7  PITWD ephedra actions, the existing MDL Transfer Order, as well as the "tag-along" requirements

8  of MDL Rules 1.1 and 7.4, require that all actions, once removed to this District, be transferred to

9  the MDL Proceedings for all pretrial management purposes. The Committee, therefore, opposes

10  the shareholders' proposal to immediately transfer the MDL Actions to this Court.

11      Oppositions have been filed by Christopher Harris, and Jerome and Susana Kreutzer, who

12  have PITWD actions pending before the San Diego County Superior Court as part of coordinated

13  proceeding JCCP 4360. An opposition has also been filed by certain doctors who are defendants to

14  a PITWD action that was made part of the S.D.N.Y. MDL Action.

15      The Plaintiffs' Coordinating Committee ("PCC") of the S.D.N.Y. Ephedra MDL Action

16  also filed a late "response" to Metabolife's petition. In that "response" the PCC asks the Court to

17  transfer all the "adversary proceedings" involving PITWD claims against Metabolife to the MDL

18  Judge in S.D.N.Y. pursuant to 28 U.S.C. § 1412. Debtors-in-Possession have filed a consolidated

19  reply responding to the arguments of each of these parties.

20      A hearing was held before Chief Judge Irma E. Gonzalez on October 24, 2005. Robert

21  Barnes appeared on behalf of Debtors-in-Possession. Victor Vilaplana and Peter Gurfein appeared

22  on behalf of shareholders Michael Blevins, William Bradley, and Michael Ellis. David Molton and

23  Christine Bauer appeared on behalf of the Official Committee of Unsecured Creditors. Laura

24  Taylor appeared on behalf of the Unofficial Retailers' Committee. Fernando DeLeon, Edward

25  Blizzard, and Anne Andrews appeared on behalf of the Ephedra MDL Plaintiffs' Coordinating

26  Committee. Steven Siskos appeared on behalf of the JCCP Plaintiffs' Coordinating Committee.

27  Manuel Corrales appeared on behalf of San Diego Superior Court Plaintiffs Jerome and Susana

28  Kreutzer. Thomas Tosdal appeared on behalf of San Diego Superior Court Plaintiff Christopher

05cv1802

1 | Harris.  Lisa Ackley appeared on behalf of third party Chemins.  Paul LaScala appeared on behalf
2 | of third party Wal-Mart.

### *Background*

4 |     Debtors-in-Possession filed a petition for bankruptcy under chapter 11 of the Bankruptcy
5 | Code in the United States Bankruptcy Court for the Southern District of California on June 30,
6 | 2005 (Case No. 05-06040).  Those bankruptcy proceedings are being jointly administered by Chief
7 | Bankruptcy Judge John Hargrove .  At the time the bankruptcy petitions were filed, approximately
8 | 362 ephedra-based personal injury tort and wrongful death ("PITWD") actions were pending
9 | against Metabolife and/or Alpine Health in state and federal courts.  These PITWD cases allege
10 | injuries resulting from the purchase and use of Metabolife's products that contained ephedra.

11 |     Approximately 200 Ephedra Actions have been transferred to the District Court for the
12 | Southern District of New York pursuant to an April 13, 2004 MDL Transfer Order.  Judge Jed S.
13 | Rakoff is presiding over the consolidated pretrial management of the MDL claims.  In addition,
14 | there are approximately 90 actions pending before California state courts which have been
15 | coordinated by the Judicial Council of California ("JCCP") in a single proceeding in the San Diego
16 | County Superior Court before Judge Ronald Styn.[1]  There are approximately 73 additional actions
17 | pending in various state or federal courts around the country.  In addition to Metabolife and Alpine
18 | Health, many of the Ephedra Actions name other parties with a connection to Metabolife, such as
19 | retailers or entities that sold Metabolife products to the users, manufacturers of Metabolife
20 | products, distributors, and Metabolife's shareholders.

21 |     After Metabolife and Alpine filed their bankruptcy petitions on June 30, 2005, the
22 | bankruptcy court appointed an Official Committee of Unsecured Creditors ("Committee") under
23 | 11 U.S.C. § 1102.  The Committee is made up of certain plaintiffs in the Ephedra Actions as well
24 | as certain trade creditors of the Debtors-in-Possession.  Debtors-in-Possession have moved the
25 | bankruptcy court for approval of the sale of substantially all of their assets.  That sale is currently
26 | set for November 3, 2005.

27 |

---

28 | [1] On September 27, 2005, Superior Court defendants Wal-Mart, Rite-Aid Corp., Costco Wholesale Corp., and The Chemins Company removed 20 of the San Diego Superior Court JCCP actions to Southern District of California Bankruptcy Court.

05cv1802

1    Pursuant to the provisions of the bankruptcy code, all Ephedra Actions against Debtors-in-

2  Possession were automatically stayed with the filing of the bankruptcy.  On July 8, 2005, Judge

3  Styn issued an order staying the JCCP action in San Diego County Superior Court for 90 days,

4  including claims against third parties.  On August 23, 2005, Judge Rakoff entered a stipulation that

5  had been negotiated and signed by Debtors-in-Possession, the Committee, and the third parties,

6  staying the MDL Ephedra Actions for 90 days.  On September 7, 2005, Judge Hargrove granted

7  Debtors-in-Possession's motion for a preliminary injunction enjoining all proceedings in all

8  Ephedra Actions for a period of 90 days.

9    On September 16, 2005, Debtors-in-Possession filed the current petition under 28 U.S.C.

10  § 157(b)(5) for an order determining that all PITWD claims shall be tried in this District Court

11  rather than in courts scattered around the country.  Debtors-in-Possession do not seek immediate

12  transfer of the 200 or so MDL Actions pending before the Southern District of New York, but

13  instead propose that those cases remain in New York until such time as they are ready for

14  resolution by trial.  Debtors-in-Possession ask that the remaining 162 or so non-MDL cases

15  pending throughout the country, including the 90 JCCP cases before the San Diego County

16  Superior Court, be forthwith transferred to this Court.

17                                             ***Discussion***

18    Pursuant to 28 U.S.C. § 157, "[t]he district court shall order that personal injury tort and

19  wrongful death claims shall be tried in the district court in which the bankruptcy case is pending,

20  or in the district court in the district in which the claim arose, as determined by the district court in

21  which the bankruptcy case is pending."  The purpose of § 157(b)(5) is "to centralize the

22  administration of the [bankruptcy] estate and to eliminate the 'multiplicity of forums for the

23  adjudication of parts of a bankruptcy case.'"  A.H. Robins Company, Inc. v. Piccinin, 788 F.2d

24  994, 1011 (4th Cir. 1986) (quoting 130 Cong. Rec. H.7492, June 29, 1984, *reprinted in* 1984

25  U.S.C.C.A.N. at 579); see also In re Pan Am Corp., 16 F.3d 513, 516 (2d Cir. 1994) ("Congress

26  enacted section 157(b)(5) to expand the district court's venue-fixing powers with an eye to

27  centralizing the adjudication of a bankruptcy case.").  By centralizing cases under § 157(b)(5), the

28  court "increases the debtor's odds of developing a reasonable plan of reorganization which will

                                              - 4 -                                    05cv1802

1 | 'work a rehabilitation of the debtor and at the same time assure fair and non-preferential resolution

2 | of the . . . claims.'" In re Dow Corning Corp., 86 F.3d 482, 496 (6th Cir. 1996) (quoting A.H.

3 | Robins Co., 788 F.2d at 1011). The district court's power to fix venue under § 157(b)(5) also

4 | extends to cases pending against nondebtor defendants which are "related to" a debtor's

5 | bankruptcy proceedings pursuant to 28 U.S.C. § 1334(b). In re Dow Corning Corp., 86 F.3d at

6 | 497.

7 |      Although the language of § 157(b)(5) appears to impose upon the district court a mandatory

8 | duty to fix venue, the court must first determine whether it is appropriate to abstain pursuant to 28

9 | U.S.C. § 1334(c). In re Dow Corning, 86 F.3d at 497 (citing In re Pan Am Corp., 950 F.2d 839,

10 | 844 (2d Cir. 1991)). Section 1334(c)(1) provides as follows: "[n]othing in this section prevents a

11 | district court in the interests of justice, or, in the interest of comity with State courts or respect for

12 | state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in

13 | or related to a case under title 11." In determining whether or not to abstain from transferring

14 | venue under § 157(b)(5), courts should consider twelve factors:

15 |     (1)    the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,

16 |     (2)    the extent to which state law issues predominate over bankruptcy issues,
    (3)    the difficulty or unsettled nature of the applicable law,

17 |     (4)    the presence of a related proceeding commenced in state court or other bankruptcy court,

18 |     (5)    the jurisdictional basis, if any, other than 28 U.S.C. § 1334,
    (6)    the degree of relatedness or remoteness of the proceeding to the main bankruptcy

19 |         case,

20 |     (7)    the substance rather than form of an asserted "core" proceeding,
    (8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

21 |     (9)    the burden on [the bankruptcy court's] docket,

22 |     (10)  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

23 |     (11)  the existence of a right to a jury trial, and
    (12)  the presence in the proceeding of nondebtor parties.

24 | In re Pacific Gas & Electric Co., 279 B.R. 561, 569-70 (N.D. Cal. 2002) (quoting Christensen v.

25 | Tucson Estates, Inc., 912 F.2d 1162, 1167 (9th Cir. 1999)). Where a proper request for transfer is

26 | made under § 157(b)(5), "[t]ransfer should be the rule, abstention the exception." In re Pan Am

27 | Corp., 950 F.2d at 845; see also In re Twin Laboratories, Inc., 300 B.R. 836, 841 (S.D.N.Y. 2003).

28 |      Despite the issues raised by the San Diego Superior Court plaintiffs Harris and Kreutzer, as

- 5 -

1   well as the doctor defendants in the <u>Gyani v. Metabolife Int'l Inc.</u> case pending before the Southern

2   District of New York, the Court concludes that it is in the best interests of all involved parties to

3   grant the Debtors-in-Possession's motion under § 157(b)(5). This case demonstrates the need to

4   centralize the administration of all PITWD claims against the bankruptcy estate in a single district

5   court. Like the Dow Corning breast implant claims addressed in the <u>In re Dow Corning Corp.</u>

6   case, the Dalkon Shield IUD claims addressed in the <u>A.H. Robins Company, Inc.</u> case, the claims

7   resulting from the crash of Pan Am flight 103 in the <u>In re Pan Am. Corp.</u> case, and the similar

8   ephedra claims raised in <u>In re Twin Laboratories, Inc.</u>, the claims of the 362 PITWD plaintiffs who

9   have filed suits against Metabolife and Alpine Health need to be administered by a central court.

10   As the Fourth Circuit pointed out many years ago in the <u>A.H. Robins Company, Inc.</u> case, "[t]he

11   'single focal point' of this proceeding [the chapter 11 bankruptcy] is the development of a

12   reasonable plan of reorganization for the debtor, one which will work a rehabilitation of the debtor

13   and at the same time assure fair and non-preferential resolution of the [ephedra] claims." 788 F.2d

14   at 1012. Although a couple of objections have been filed by individual claimants in opposition to

15   the current petition, "[i]f the claimants as a whole are to realize reasonable compensation for their

16   claims, it is obviously in the interest of the class of claimants as a whole to obviate the tremendous

17   expense of trying these cases separately." <u>Id.</u> at 1013

18       The Court further concludes, that the opposing parties have not demonstrated that the

19   balance of factors set forth in <u>In re Pacific Gas & Electric Co.</u> favors abstention. With regard to

20   the JCCP actions before the San Diego County Superior Court,[2] the Court concludes that the

21   balance of factors favors the exercise of jurisdiction by this Court. On September 27, 2005, the

22   non-debtor defendants removed 20 of the JCCP cases to the Southern District of California

23   Bankruptcy Court. With only a couple exceptions, the remaining JCCP actions have been filed

24   solely against the Debtors-in-Possession. Because of the automatic stay under the bankruptcy

25   code, those cases will remain stayed indefinitely pending confirmation of a plan by the bankruptcy

26

27      [2] The Court notes that although counsel representing the JCCP Plaintiffs' Coordinating

28   Committee appeared at the hearing, the Committee did not file a written opposition or abstention motion. No other Superior Court plaintiff filed a written opposition to the petition or motion for abstention.

05cv1802

1    court. The Kreutzer and Harris plaintiffs argue that transfer of the JCCP actions to this Court will

2    result in a monumental waste of judicial resources because much of the pretrial preparation of

3    these cases has been completed and they are simply awaiting trial. No trial will occur in those

4    cases, however, while the bankruptcy is pending. Therefore, the transfer of the actions to this

5    Court will not prejudice the rights of those plaintiffs. Furthermore, although the Kreutzer and

6    Harris plaintiffs argue that there are novel issues of California causation law to be resolved in these

7    cases, the Court believes these legal issues are not particularly difficult or unsettled. In addition,

8    the state law issues do not predominate over the bankruptcy issues. The PITWD proceedings

9    throughout the country are directly related to the bankruptcy case because the bankruptcy was

10    precipitated, in large part, by the tort claims. It is not feasible to sever the PITWD claims from the

11    core bankruptcy matters because the bankruptcy court cannot confirm a plan for administration of

12    the estate without considering the impact of these claims. The Court notes that the assets of

13    Debtor-in-Possession are pending sale, such that there will be a finite pool of money from which

14    claims can be paid. Transferring venue for trial to this Court will ensure that this pool can be fairly

15    distributed in accordance with the bankruptcy plan. The Court does not find that the initiation of

16    the bankruptcy proceedings constitutes forum shopping because the Debtors-in-Possession are

17    California corporations with their principal places of business within this District. Finally,

18    although there would be some burden on this Court associated with the transfer of venue under §

19    157(b)(5), that burden is largely ameliorated by leaving the pending MDL Actions in the Southern

20    District of New York. Therefore, upon consideration of all the factors, the Court concludes that

21    the balance tips strongly in favor of the exercise of jurisdiction by this Court under § 157(b)(5) as

22    to all of the JCCP Superior Court cases, and against abstention as requested by San Diego Superior

23    Court plaintiffs Harris and Kreutzer.

24        With regard to the Gyani case doctor defendants, these parties appear to raise valid

25    arguments regarding whether the malpractice claims against them should be severed from the MDL

26    proceeding and remanded to the originating Court. Those issues, however, need to be raised by

27    noticed motion to the appropriate court or to the Panel on Multidistrict Litigation that originally

28    ordered that the case be made part of the MDL Action. Because this Court is not ordering the

1   immediate transfer of the MDL Actions, the <u>Gyani</u> doctor defendants can proceed with such

2   motion in due course, prior to any final transfer of the case to this Court for trial.

3         With regard to the remaining 73 or so non-MDL, non-JCCP cases, the Court also finds it

4   appropriate to exercise jurisdiction under § 157(b)(5). There are currently PITWD cases pending

5   against the Debtors-in-Possession in the state and federal courts in Virginia, Texas, Pennsylvania,

6   Minnesota, Maryland, Washington, Missouri, Massachusetts, Florida, New Jersey, Ohio,

7   Oklahoma, Georgia, Illinois, Arkansas, Louisiana, Kansas, Connecticut, Utah, Mississippi,

8   Arizona, North Carolina, Alabama, and Nevada. The transfer of these cases under § 157(b)(5) will

9   promote the efficient administration of the bankruptcy estate by eliminating the need for Debtors-

10   in-Possession to litigate these claims throughout the country. In particular, although these cases

11   are currently under a stay imposed by Chief Bankruptcy Judge Hargrove, at the hearing before this,

12   Court there was some indication that there continues to be some ongoing issues in these

13   proceedings. Transfer of the cases to this Court, in the district in which the bankruptcy

14   proceedings are pending, will ensure that the interests of the PITWD claimants, and the Debtors-

15   in-Possession, and the other claimants of the bankruptcy estate, are fully and fairly protected.

16         In the "response" filed by the Plaintiffs' Coordinating Committee ("PCC") of the Ephedra

17   MDL Action, the PCC alternatively asks the Court to transfer all of the PITWD claims to the

18   United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1412.

19   Besides the fact that the "response" is in fact a grossly untimely motion for affirmative relief,

20   § 1412 also does not provide the relief sought by the PCC. Section 1412 provides that "[a] district

21   court may transfer a case or proceeding under title 11 to a district court for another district, in the

22   interest of justice or for the convenience of the parties." As an initial matter, § 1412 allows only

23   the court in which a suit is pending to transfer such case to another court. <u>A.H. Robins Co.</u>, 788

24   F.2d at 1011. In particular, it is ordinarily for the bankruptcy court to determine whether such a

25   transfer of venue is appropriate. <u>Id.</u>; see also <u>Calumet Nat'l Bank v. Levine</u>, 179 B.R. 117, 121

26   (N.D. Ind. 1995). Because the other cases that the PCC urges the Court to transfer under § 1412

27   are not currently before this Court, this Court lacks jurisdiction to transfer them to the S.D. New

28   York. In addition, PITWD claims form a special class within the realm of bankruptcy law, and

05cv1802

1 § 157(b)(5) is the proper section governing the determination of venue as to such claims. <u>Id</u>.

2 Under § 157(b)(5), this Court can order that PITWD claims be tried only in this Court or in the

3 court in which the claim arose. The Southern District of New York, as an MDL transferee court,

4 does not fit in either of those categories.

5 <div align="center">***Conclusion***</div>

6    For the reasons set forth herein, the Debtors-in-Possession's petition under 28 U.S.C.

7 § 157(b)(5) is GRANTED. Pursuant to § 157(b)(5), the Court orders that this is the appropriate

8 venue for trial of PITWD cases against the Debtors-in-Possession. Counsel for the Debtors-in-

9 Possession shall forthwith submit a proposed order to the Court providing for the immediate

10 transfer of venue all of the non-MDL Ephedra Actions against them to this Court. Upon receipt of

11 the case files by the Clerk of the Court, a new case number shall be assigned to each case. Such

12 cases shall thereafter be assigned according to the low number rule, S.D. Cal. Local Civil Rule

13 40.1(h). The MDL Actions shall remain in the United States District Court for the Southern

14 District of New York until such time, if any, that trial of the actions becomes appropriate. Trial

15 shall take place in the Southern District of California. All requests for relief regarding pretrial

16 management of non-MDL Actions are denied without prejudice.

17 **IT IS SO ORDERED.**

18

19 Dated: _Nov. 2, 2005_

20                                    HON. IRMA E. GONZALEZ, Chief Judge
                                     United States District Court
21                                    Southern District of California

22 cc:    Magistrate Judge Brooks
         Counsel of Record
23

24

25

26

27

28

<div align="center">- 9 -</div>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# ATTACHMENT 4

27
28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

728842.2                                    7

NOTICE OF 28 U.S.C. § 157(b)(5) TRANSFER TO UNITED STATES DISTRICT COURT

05 DEC -5 PM 2: 35

DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

In re

METABOLIFE INTERNATIONAL, INC.
and ALPINE HEALTH PRODUCTS, LLC,

              Debtors/Petitioners,

CASE NO. 05cv1802-IEG(RBB)

Supplemental Order Regarding
Transfer of Cases Pursuant to
28 U.S.C. § 157(b)(5)

On November 3, 2005, the Court granted the Debtors-in-Possession's petition under 28 U.S.C. § 157(b)(5) and ordered that this Court is the appropriate venue for trial of personal injury tort and wrongful death cases against the Debtors-in-Possession. Debtors-in-Possession have provided the Court with a list identifying all Ephedra Actions which were not part of the MDL proceeding as of the date of the filing of the Metabolife and Alpine Health bankruptcy petitions on June 30, 2005. Those actions are identified in the attached list labeled Exhibit A. Debtors-in-Possession have also identified 24 of those actions which were transferred to the MDL following the filing of the bankruptcy petitions and prior to this Court's November 3, 2005 order. Those actions are identified in the attached list labeled Exhibit B. Finally, Debtors-in-Possession have identified those remaining cases that are part of the Ephedra MDL Action in the Southern District of New York.

Based upon the Court's November 3, 2005 order, and to effect transfer of the relevant cases, the Court hereby orders as follows:

- 1 -

31

ENTERED ON 12/6/05    05cv1802

1.    Each of the non-MDL Ephedra Actions, as identified on Exhibit A hereto shall be transferred forthwith to this Court, with the exception of those cases listed on Exhibit B, which were transferred to the MDL prior to the entry of the Court's November 3, 2005 order. Counsel for the Debtors-in-Possession shall take such action as is necessary to transfer venue of the identified non-MDL Ephedra Actions to this Court.

2.    The record for each of the transferred actions shall be transmitted directly to the Clerk of Court, United States District Court for the Southern District of California, 880 Front Street, Room 4293, San Diego, CA 92101. Upon receipt of the case files by the Clerk of the Court, a new case number shall be assigned to each action. The Clerk of Court shall directly assign such cases District Judge Barry Ted Moskowitz and Magistrate Judge Jan M. Adler as related to Case No. 02cv1671-BTM(JMA).

3.    All MDL Actions, as identified in the attached lists labeled Exhibits B and C, shall remain in the United States District Court for the Southern District of New York until such time, if any, that trial of the actions becomes appropriate. Counsel for the Debtors-in-Posession, however, shall forthwith provide notice of the Court's November 3, 2005 order to counsel for plaintiffs in the MDL Action.

The Clerk shall terminate this case.

**IT IS SO ORDERED.**

Dated: _12/2/05_

_____
HON. IRMA E. GONZALEZ, Chief Judge
United States District Court
Southern District of California

cc:    Judge Moskowitz
       Magistrate Judge Brooks
       Magistrate Judge Adler
       Counsel of Record

05cv1802

## Non-MDL Ephedra Actions
### As of Petition Date

| Plaintiff | Jurisdiction* | Civil Action No. |
|---|---|---|
| Anderson, Tony | W.D. Wash. (Tacoma) | 3:05-cv-05438-JKA |
| Armbrister, Terrill | Bankr. S.D. Cal. | Adv. 05-90421 |
| Bagley, Terri | Bankr. S.D. Cal. | Adv. 05-90378 |
| Baity, Joseph | D. Minn. | 0:05-cv-00936 |
| Berckman, Phillip Shane | JCCP, Sup. Ct.; San Diego County, California | Unavailable |
| Berry, Steven | JCCP, Sup. Ct.; San Diego County, California | 4360-00088 |
| Bierig, Collette | JCCP, Sup. Ct.; San Diego County, California | 4360-00083 |
| Bolds, Marvin | JCCP, Sup. Ct.; San Diego County, California | 4360-00110 |
| Bonnette, J. | JCCP, Sup. Ct.; San Diego County, California | 4360-00029 |
| Bonnette, Robert | JCCP, Sup. Ct.; San Diego County, California | 4360-00002 |
| Bower, Barbara | Bankr. S.D. Cal. | Adv. 05-90424 |
| Braner, Gloria | Bankr. S.D. Cal. | Adv. 05-90425 |
| Brenton, Ashleigh | JCCP, Sup. Ct.; San Diego County, California | 4360-00003 |
| Bridges, Jeff | S.D. Tex. (Houston) | 4:03-cv-03847 |
| Broadus, Ronnie | JCCP, Sup. Ct.; San Diego County, California | 4360-00038 |
| Brock, Jacqueline | Bankr. S.D. Cal. | Adv. 05-90414 |
| Brown, Connie | S.D. Cal. | 05-cv-1300 |
| Brown, David | JCCP, Sup. Ct.; San Diego County, California | 4360-00050 |
| Brown, Debra | S.D. Tex. | 4:03-cv-05313 |
| Brown, Kathleen | W.D. Mo. | 05-481-cv-W-FJG |
| Brown, Samantha | JCCP, Sup. Ct.; San Diego County, California | 4360-00030 |
| Bupte, Gerald | S.D. Tex. (Galveston) | 3:05-cv-00518 |
| Byrne, Daniel | E.D. Mo. | 1:05-cv-00076CCDP |
| Cain, John Robert | DNJ (Trenton) | 3:04-cv-00686-GEB |
| Callahan, Jill | JCCP, Sup. Ct.; San Diego County, California | 4360-00055 |
| Camera, Kimberly | JCCP, Sup. Ct.; San Diego County, California | 4360-00031 |
| Carss, Patty | JCCP, Sup. Ct.; San Diego County, California | 4360-00053 |
| Carter, James | W.D. Mo. (Kansas City) | 4:05-cv-00527-FJG |

**Exhibit A**

1 of 6

636920

| Plaintiff | Jurisdiction* | Civil Action No. |
|---|---|---|
| Casillas, Lilia | JCCP, Sup. Ct.; San Diego County, California | 4360-00074 |
| Cate, Charles | JCCP, Sup. Ct.; San Diego County, California | 4360-00051 |
| Chalvire, Grace | JCCP, Sup. Ct.; San Diego County, California | 4360-00032 |
| Chaney, Dennis | Bankr. S.D. Cal. | Adv. 05-90416 |
| Clark, Max | S.D. Tex. (Houston) | 4:05-cv-03351 |
| Colbert, Aisha | JCCP, Sup. Ct.; San Diego County, California | 4360-00089 |
| Corrasco, Angie | JCCP, Sup. Ct.; San Diego County, California | Unavailable |
| Crisp, Dorothy | S.D. Tex. (Houston) | 4:04-cv-02226 |
| Cunningham, Olivia | Cir. Ct.; St. Louis City, Missouri | Unavailable |
| Davis, Wendy | Bankr. S.D. Cal. | Adv. 05-90415 |
| Dean, Jack E. | JCCP, Sup. Ct.; San Diego County, California | 4360-00105 |
| Deaver, Michelle | JCCP, Sup. Ct.; San Diego County, California | 4360-00028 |
| Doll, Kim | JCCP, Sup. Ct.; San Diego County, California | 4360-00056 |
| Doucette, Eugene | Bankr. S.D. Cal. | Adv. 05-90428 |
| Dropp, Theodore | Cook County, Illinois | 03-L-8635 |
| Durbin, Mark | W.D. Mo. (Kansas City) | 4:05-cv-00482-DW |
| Durham, Travis | Bankr. S.D. Cal. | Adv. 05-90426 |
| Dye, Lewis | JCCP, Sup. Ct.; San Diego County, California | 4360-00005 |
| Ealy, Tyrescia | Pulaski County, Arkansas | CV-04-1195 |
| Emm, Mary | Sup. Ct.; San Diego, California | GIC831450 |
| Emmert, Janet | JCCP, Sup. Ct.; San Diego County, California | 4360-00058 |
| Foley, Susan | S.D. Fla. | 05-CV-80588 |
| Fontenot, Justin | JCCP, Sup. Ct.; San Diego County, California | 4360-00097 |
| Foster, Edward | N.D. Ill. | 05C 4759 |
| Fox, David | JCCP, Sup. Ct.; San Diego County, California | 4360-00081 |
| Franklin, Judy | Bankr. S.D. Cal. | Adv. 05-90429 |
| Friddle, Dee Dee | Bankr. S.D. Cal. | Adv. 05-90412 |
| Fuss, Sherry | E.D. Pa. | 2:05-cv-5151-LDD |
| Gawlak, Catherine | Cir. Ct.; 1st Jud. Dist.; Santa Rosa, Florida | 04000395CA |
| Gentry, Nona | Bankr. S.D. Cal. | Adv. 05-90418 |
| Green, Monica | JCCP, Sup. Ct.; San Diego County, California | Unavailable |
| Green, William | S.D.S.C. (Columbia) | 3:05-cv-02226-MDL |
| Hamm, Richard Douglas | JCCP, Sup. Ct.; San Diego County, California | Unavailable |

**Exhibit A**

| Plaintiff | Jurisdiction* | Civil Action No. |
|---|---|---|
| Hawkins, John | Bankr. S.D. Ill. | Adv. 05-03281 |
| Hollingsworth, Michelle | Sup. Ct.; San Diego, California | GIC820375 |
| Holster, Angela | Santa Rosa, Florida | 57-2002-CA-000148 |
| Howard, Stephen | D. Mass. | 1:05-cv-10872-DPW |
| Hunt, John | JCCP, Sup. Ct.; San Diego County, California | 4360-00071 |
| Hutchinson, Robert | Bankr. S.D. Cal. | Adv. 05-90419 |
| Jackson, Shelly | Bankr. S.D. Cal. | Adv. 05-90420 |
| Jarrett, Linda | Cir. Ct.; St. Louis County, Missouri | 04CC-004894 J CV |
| Jenkins, Opal | Bankr. E.D. Ark. (Helena Division) | Adv. 2:05-ap-01265 |
| Johnson, Jennifer | JCCP, Sup. Ct.; San Diego County, California | 4360-00006 |
| Johnson, Sandra | JCCP, Sup. Ct.; San Diego County, California | 4360-00100 |
| Johnson, Tina | Hillsborough County, Florida | 01-01-2145 |
| Karsky, Gloria | D. Minn. | 0:05-cv-00935-JMR-FLN |
| Keister, Diane | N.D. Ill. | 1:05-cv-02876 |
| Kern, Cynthia | Cir. Ct.; St. Louis County, Missouri | 05CC-000111 L CV |
| King, Charlene | JCCP, Sup. Ct.; San Diego County, California | 4360-00070 |
| King, Felecia | JCCP, Sup. Ct.; San Diego County, California | 4360-00108 |
| Kreutzer, Jerome | JCCP, Sup. Ct.; San Diego County, California | 4360-00001 |
| Kuchefski, Lydia | JCCP, Sup. Ct.; San Diego County, California | 4360-00027 |
| Kujat, Donald | Bankr. S.D. Cal. | Adv. 05-90427 |
| Lane, Richard | S.D. Fla. | 05-CV-60828 |
| Lanier, Monique | JCCP, Sup. Ct.; San Diego County, California | 4360-00063 |
| LeCamu, Gary | 113th Jud. Dist. Ct.; Harris County, Texas | 2003-16665 |
| Lee, Germelita | JCCP, Sup. Ct.; San Diego County, California | 4360-00098 |
| LeGrande, Candice | 10th Jud. Dist. Ct.; Galveston County, Texas | 03-CV-0748 |
| Lewis, Leatrice | W.D. Tex. (San Antonio) | 05-CV-948 |
| Linnell, Linda | JCCP, Sup. Ct.; San Diego County, California | 4360-00086 |
| Litten, Gregory | JCCP, Sup. Ct.; San Diego County, California | Unavailable |
| Llewellyn, Linda | Bankr. S.D. Cal. | Adv. 05-90411 |
| Longoria, Kelly | 17th Jud. Dist. Ct.; Tarrant County, Texas | 017-200288-03 |
| Lopez, Martha | JCCP, Sup. Ct.; San Diego County, California | 4166 |
| Loser, Otto | E.D.N.Y. | 1:05-cv-04587 |
| Lujan, Emily | Bankr. D. N.M. | Adv. 05-1212 |

**Exhibit A**

| Plaintiff | Jurisdiction* | Civil Action No. |
|---|---|---|
| Maloney, Joann | Bankr. S.D. Cal. | Adv. 05-90422 |
| Markowski, King | N.D. Ohio (Cleveland) | 1:05-cv-01651-DAP |
| Martin, Gerald | W.D. Mo. | 5:05-cv-06050-ODS |
| Martin, Michelle | N.D. Ill. | 1:05-cv-03481 |
| Martinez, Gloria | JCCP, Sup. Ct.; San Diego County, California | 4360-00007 |
| Marty, Charlene | W.D. Mo. | 4:2005-cv-00461 |
| Mason, Pamela | E.D. Mo. | 4:05-cv-00913-DJS |
| Maxwell, Melissa | JCCP, Sup. Ct.; San Diego County, California | 4360-00048 |
| McAllister, Rhea | S.D. Tex. | 4:04-cv-02191 |
| McClain, Beverly | JCCP, Sup. Ct.; San Diego County, California | 4360-00049 |
| McClain, Johnny | N.D. Ala. | 2:01-cv-01801-WMA |
| McMeekin, Jason | S.D. Texas (Galveston) | 3:05-cv-00519 |
| Meadors, Audrey | JCCP, Sup. Ct.; San Diego County, California | 4360-00078 |
| Mejia, Ana | JCCP, Sup. Ct.; San Diego County, California | 4360- |
| Miles, Judith | W.D. Wash. (Seattle) | 2:03-cv-00225-BJR |
| Miller, Benita | E.D. Pa. | 2:05-cv-05153-MMB |
| Mireles, Kristen | JCCP, Sup. Ct.; San Diego County, California | 4360-00085 |
| Mitchell, Falayan | W.D. Ark. | 5:05-cv-05103-RTD |
| Morris, Dora | Bankr. S.D. Cal. | Adv. 05-90417 |
| Morris, Joyce | Jud. Dist. Ct.; Harris County, Texas | 2003-30290 |
| Moser, Bobby | N.D. Tex. (Fort Worth) | 4:2005-cv-00616 |
| Mullins, Patrick | N.D. Ill. | 1:05-cv-05579 |
| Naranjo, Ruben | JCCP, Sup. Ct.; San Diego County, California | 4360-00034 |
| Naugle, Patricia | Bankr. S.D. Cal. | Adv. 05-90413 |
| Neal, Marshall / Barbara | JCCP, Sup. Ct.; San Diego County, California | 4360-00102 |
| Neely, Hollis | W.D. Pa. | 2:05-cv-1350 |
| Norman, Sylvia | W.D. Mo. (Kansas City) | 4:05-cv-00483-ODS |
| Outlaw, Katonya | 20th Cir. Ct.; St. Clair County, Illinois | 05-L-28 |
| Overstreet, Phillip | N.D. Tex. | 3:05-1923 |
| Patterson, Pamela | E.D. Mo. (St. Louis) | 4:05-cv-00783-JCH |
| Paul, Duane | JCCP, Sup. Ct.; San Diego County, California | 4360-00084 |
| Perkins, Millicent | 3rd Jud. Cir. Ct.; Madison County, Illinois | 2004 L 001310 |
| Perlingiere, Vincent | Cir. Ct.; Sebastian County, Arkansas | CV 04-802 |

**Exhibit A**

| Plaintiff | Jurisdiction* | Civil Action No. |
|---|---|---|
| Petty, Tonya | Monroe County, Mississippi | CV-02-514-BM |
| Pitts, Diane | JCCP, Sup. Ct.; San Diego County, California | 4360- |
| Polys, Karen | W.D. Mo. (Jefferson City) | 2:05-cv-04158-NKL |
| Porea, Selket | Parish of Orleans, Louisiana | 2000-6723 |
| Pringle, Shannon | 157th Jud. Dist. Ct.; Harris County, Texas | 2003-36345 |
| Raines, Ronald | Cir. Ct.; Pinellas County, Florida | 05-2532-CI-20 |
| Reynoso, Lydia | JCCP, Sup. Ct. San Diego County, California | 4360-00077 |
| Richards, Melissa | 14th Jud. Dist. Ct.; Dallas County, Texas | 03-05551-A |
| Rodriguez, Ruby | JCCP, Sup. Ct.; San Diego County, California | 4360-00008 |
| Sailer, Joseph | Santa Rosa County, Florida | 04-299-CA |
| Salser, Joseph | JCCP, Sup. Ct.; San Diego County, California | 4360-00101 |
| Santiago, Jose | 280th Jud. Dist. Ct.; Harris County, Texas | 2003-30849 |
| Scheffert, Marol | W.D. Ark. (Fayetteville) | 5:05-cv-05104-RTD |
| Scholwinski, Kimberly | 221st Jud. Dist. Ct.; Montgomery County, Texas | 02-11-07633-CV |
| Schultz, Sheila | Cook County, Illinois | 03L-9428 |
| Scott, Joan | JCCP, Sup. Ct.; San Diego County, California | 4360-00075 |
| Scrivener, Kevin | W.D. Mo. (Kansas City) | 4:05-cv-00462-FJG |
| Sheard, Michelle | JCCP, Sup. Ct.; San Diego County, California | 4360- |
| Shepherd, John | Cir. Ct.; Escambia County, Florida | 2004 CA 002238 "C" |
| Sides, Cynthia | 15th Jud. Dist. Ct., Palm Beach County, Florida | 2003-CA-006003 AG |
| Simmons, Bonnie | St. Clair County, Illinois | 04-L-0039 |
| Smith, Carol | Bankr. S.D. Cal. | Adv. 05-90423 |
| Smith, Dawn | D. Minn. | 0:05-cv-00937-JRT-FLN |
| Starks, Katherine | JCCP, Sup. Ct.; San Diego County, California | 4360-00021 |
| Strother, Scott | Independence County, Arkansas | CV-2004-294-4 |
| Suarez, Ana | Jud. Dist. Ct.; Harris County, Texas | 2004-19220 |
| Summer, Renee | JCCP, Sup. Ct.; San Diego County, California | 4360-00099 |
| Tatro-Romero, Christine | JCCP, Sup. Ct.; San Diego County, California | 4360-00009 |
| Taylor, Linda | 4th Jud. Dist. Ct.; Duval County, Florida | 04-CA-008537 |
| Thomas, Paul | JCCP, Sup. Ct.; San Diego County, California | 4360-00096 |
| Thompson, Linda | W.D. Mo. (St. Joseph) | 5:05-cv-06051-HFS |
| Thompson, Linda | W.D. Ark. (Fayetteville) | 5:05-cv-05102-RTD |
| Tims, Thomas | Drew County, Arkansas | CV-2004-0211-5 |

**Exhibit A**

| Plaintiff | Jurisdiction* | Civil Action No. |
|---|---|---|
| Tometta, Josephine | JCCP, Sup. Ct.; San Diego County, California | 4360-00010 |
| Tyler, Cindy | E.D. Pa. (Philadelphia) | 2:05-cv-02539-LS |
| Vertigans, Peter | JCCP, Sup. Ct.; San Diego County, California | 4360-00037 |
| Wallen, Donald | W.D. Ark. (Fayetteville) | 5:05-cv-05105-RTD |
| Warnecker, Micki | W.D. Mo. | 4:05-cv-00488-SOW |
| Watkins, Kathleen | Cir. Ct.; St. Louis County, Missouri | 04CC-002553 I CV |
| Watters, Sandra | S.D. Ohio (Cincinnati) | 1:05-cv-00444-MHW |
| Watters, Sherri | S.D. Ohio | 1:05-CV444 |
| Webb, Beverly | D. Kan. (Kansas City) | 2:05-cv-02216-KHV-DJW |
| Welty, Rebecca | JCCP, Sup. Ct.; San Diego County, California | 4360-00025 |
| Whitfield, Derrell | Dist. of Nevada | 3:04-569 |
| Williams, Jerome | Parish of Orleans, Louisiana | 2003-05595 |
| Wittneben, Constance H. | JCCP, Sup. Ct.; San Diego County, California | 4360-00104 |
| Wolter, Colleen | JCCP, Sup. Ct.; San Diego County, California | 4360-00036 |
| Wyrick, Teri & Randy | JCCP, Sup. Ct.; San Diego County, California | 4360-00022 |
|  |  |  |

* Current jurisdiction and court to be notified. Certain of these actions were pending in state court and were removed primarily by nondebtor defendants.

Due to incomplete information, this list may exclude an action that was pending on the Petition Date but was subsequently dismissed as to all parties, or include such action without noting the subsequent dismissal.

**Exhibit A**

## Ephedra Actions Transferred to MDL Postpetition
### As of 12/01/05

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Conditional Transfer Order No. | Date Conditional Transfer Order Issued | Effective Date of Transfer Order | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|---|---|---|
| Baity, Joseph | MDL; S.D.N.Y. | 1:05-cv-06333-JSR | 20 | 06/22/05 | 07/08/05 | D. Minn. | 0:05-cv-00936 |
| Karsky, Gloria | MDL; S.D.N.Y. | 1:05-cv-06332-JSR | 20 | 06/22/05 | 07/08/05 | D. Minn. | 0:05-cv-00935-JMR-FLN |
| Smith, Dawn | MDL; S.D.N.Y. | 1:05-cv-06334-JSR | 20 | 06/22/05 | 07/08/05 | D. Minn. | 0:05-cv-00937-JRT-FLN |
| Byrne, Daniel | MDL; S.D.N.Y. | 1:05-cv-066681-JSR | 21 | 06/28/05 | 07/14/05 | E.D. Mo. | 1:05-cv-000076CCDP |
| Durbin, Mark | MDL; S.D.N.Y. | 1:05-cv-06686-JSR | 21 | 06/28/05 | 07/14/05 | W.D. Mo. (Kansas City) | 4:05-cv-00482-DW |
| Martin, Gerald | MDL; S.D.N.Y. | 1:05-cv-06688-JSR | 21 | 06/28/05 | 07/14/05 | W.D. Mo. | 5:05-cv-06050-ODS |
| Norman, Sylvia | MDL; S.D.N.Y. | 1:05-cv-06687-JSR | 21 | 06/28/05 | 07/14/05 | W.D. Mo. (Kansas City) | 4:05-cv-00483-ODS |
| Marty, Charlene | MDL; S.D.N.Y. | 1:05-cv-06836-JSR | 22 | 07/07/05 | 07/25/05 | W.D. Mo. | 4:2005-cv-00461 |
| Mitchell, Falayan | MDL; S.D.N.Y. | 1:05-cv-06830-JSR | 22 | 07/07/05 | 07/25/05 | W.D. Ark. | 5:05-cv-05103-RTD |
| Polys, Karen | MDL; S.D.N.Y. | 1:05-cv-06834-JSR | 22 | 07/07/05 | 07/25/05 | W.D. Mo. (Jefferson City) | 2:05-cv-04158-NKL |
| Scheffert, Marol | MDL; S.D.N.Y. | 1:05-cv-08831-JSR | 22 | 07/07/05 | 07/25/05 | W.D. Ark. (Fayetteville) | 5:05-cv-05104-RTD |
| Scrivener, Kevin | MDL; S.D.N.Y. | 1:05-cv-06837-JSR | 22 | 07/07/05 | 07/25/05 | W.D. Mo. (Kansas City) | 4:05-cv-00462-FJG |
| Thompson, Linda | MDL; S.D.N.Y. | 1:05-cv-06839-JSR | 22 | 07/07/05 | 07/25/05 | W.D. Ark. (Fayetteville) | 5:05-cv-05102-RTD |
| Wallen, Donald | MDL; S.D.N.Y. | 1:05-cv-06832-JSR | 22 | 07/07/05 | 07/25/05 | W.D. Ark. (Fayetteville) | 5:05-cv-05105-RTD |
| Patterson, Pamela | MDL; S.D.N.Y. | 1:05-cv-07218-JSR | 25 | 07/21/05 | 08/08/05 | E.D. Mo. (St. Louis) | 4:05-cv-00783-JCH |
| Green, William | MDL; S.D.N.Y. | 1:05-cv-08402-JSR | 28 | 08/26/05 | 09/13/05 | S.D.S.C. (Columbia) | 3:05-cv-02226-MDL |

657161

**Exhibit B**

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Conditional Transfer Order No. | Date Conditional Transfer Order Issued | Effective Date of Transfer Order | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|---|---|---|
| Anderson, Tony | MDL: S.D.N.Y. | 1:05-cv-09061-JSR | 29 | 09/16/05 | 10/04/05 | W.D. Wash. (Tacoma) | 3:05-cv-05438-JKA |
| Brown, Debra | MDL: S.D.N.Y. | 1:04-cv-04279-JSR | 29 | 09/16/05 | 10/04/05 | S.D. Tex. | 4:03-cv-05313 |
| Foley, Susan | MDL: S.D.N.Y. | 1:05-cv-09055-JSR | 29 | 09/16/05 | 10/04/05 | S.D. Fla. | 05-CV-60588 |
| Lane, Richard | MDL: S.D.N.Y. | 1:05-cv-09054-JSR | 29 | 09/16/05 | 10/04/05 | S.D. Fla. | 05-CV-60828 |
| Markowski, King | MDL: S.D.N.Y. | 1:05-cv-09060-JSR | 29 | 09/16/05 | 10/04/05 | N.D. Ohio (Cleveland) | 1:05-cv-01651-DAP |
| Martin, Michelle | MDL: S.D.N.Y. | 1:05-cv-09056-JSR | 29 | 09/16/05 | 10/04/05 | N.D. Ill. | 1:05-cv-03481 |
| Warnecker, Micki | MDL: S.D.N.Y. | 1:05-cv-09058-JSR | 29 | 09/18/05 | 10/04/05 | W.D. Mo. | 4:05-cv-00488-SOW |
| Clark, Max | MDL: S.D.N.Y. | N/A | 31 | 10/18/2005 | 11/3/2005 | S.D. Tex. | 4:05-3351 |

2 of 2

637161

**Exhibit B**

## MDL Ephedra Actions
## As of Petition Date

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
| Alaniz, Rosemary | MDL; S.D.N.Y. | 1:04-cv-04279-JSR | S.D. Tex. (Houston) | 4:03-cv-05316 |
| Alexander, Cicley | MDL; S.D.N.Y. | 1:05-cv-03026-JSR | E.D. Va. | 2:05cv00006 |
| Allen, Ronnie | MDL; S.D.N.Y. | 1:05-cv-02476-JSR | S.D. Tex. (Houston) | H-04-3659 |
| Anderson, Jacquelyn | MDL; S.D.N.Y. | 1:05-cv-00148-JSR | S.D. Miss. | 5:04-cv-00259 |
| Atwood, Channin | MDL; S.D.N.Y. | 1:05-cv-05986-JSR | E.D. Pa. | 2:05-cv-01151 |
| Ball, Teresa | MDL; S.D.N.Y. | 1:05-cv-03889-JSR | N.D. Ga. | 1:05-cv-00383 |
| Bartus, Louis | MDL; S.D.N.Y. | 1:04-cv-04275-JSR | S.D. Tex. (Houston) | 4:03-cv-03000 |
| Belew, Teresa | MDL; S.D.N.Y. | 1:05-cv-01020-JSR | N.D. Tex. (Fort Worth) | 4:04-cv-00821 |
| Bell, Bessie | MDL; S.D.N.Y. | 1:05-cv-01003-JSR | N.D. Ala. (Southern) | 2:04-cv-03000 |
| Bishop, Robert | MDL; S.D.N.Y. | 1:05-cv-05135-JSR | D. Md. (Baltimore) | 1:05-cv-00849 |
| Blevins, Mary | MDL; S.D.N.Y. | 1:05-cv-04716-JSR | E.D. Wash. | 2:05-cv-00037 |
| Bogart, James | MDL; S.D.N.Y. | 1:05-cv-02478-JSR | N.D. Okla. | 4:04-cv-00715 |
| Brandt, Joel | MDL; S.D.N.Y. | 1:05-cv-05978-JSR | D. Minn. | 0:05-cv-00480 |
| Brucato, Alicia | MDL; S.D.N.Y. | 1:05-cv-05976-JSR | D. Mass. (Boston) | 1:05-cv-10870 |
| Bryant, Jami | MDL; S.D.N.Y. | 1:05-cv-04711-JSR | E.D. Tex. (Beaumont) | 1:05-cv-0213 |
| Budwig, Laurence | MDL; S.D.N.Y. | 1:05-cv-05968-JSR | S.D. Cal. | 05-cv-847 |
| Bunger, Donna | MDL; S.D.N.Y. | 1:05-cv-04715-JSR | S.D. Tex. (McAllen Div.) | M-05-087 |
| Bunting, Marcia | MDL; S.D.N.Y. | 1:04-cv-09708-JSR | D.N.J. | 3:04-cv-04008 |
| Burney, William | MDL; S.D.N.Y. | 1:04-cv-04224-JSR | S.D. Fla. | 03-cv-62012 |
| Burton, Jennifer | MDL; S.D.N.Y. | 1:04-cv-04219-JSR | S.D. Cal. | 03-cv-00526 |
| Burton, William | MDL; S.D.N.Y. | 1:04-cv-06815-JSR | N.D. Ala. | CV-07-JEO-0574-S |

537137

1 of 9

**Exhibit C**

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
| Busby, Shannon | MDL; S.D.N.Y. | 1:05-cv-00144-JSR | S.D. Miss. (Southern) | 1:04-cv-00754 |
| Cadet, Denise | MDL; S.D.N.Y. | 1:04-cv-04222-JSR | S.D. Fla. (Fort Lauderdale) | 03-60612 |
| Cagle, Hope | MDL; S.D.N.Y. | 1:05-cv-02994-JSR | W.D. Ark. (Fort Smith) | 2:05-cv-02011-JLH |
| Carr, Wanda | MDL; S.D.N.Y. | 1:04-cv-06944-JSR | N.D. Miss. (Delta Div.) | 2:03-cv-00265-MPM |
| Carsey, Roger | MDL; S.D.N.Y. | 1:05-cv-03906-JSR | S.D. Ohio (Columbus) | 2:05-cv-00133-JLG-TPK |
| Carter, Michael | MDL; S.D.N.Y. | 1:04-cv-04284-JSR | W.D. Va. (Danville) | 4:03-cv-00090-nkm-mfu |
| Castagne, Betty | MDL; S.D.N.Y. | 1:04-cv-04284-JSR | D. Mont. (Billings) | 1:04-cv-00129-RWA |
| Chapman, John | MDL; S.D.N.Y. | 1:05-cv-03001-JSR | E.D. Mich. (Detroit) | 2:04-cv-73841-RHC-RSW |
| Chezam, Cheryl | MDL; S.D.N.Y. | 1:04-cv-07363-JSR | N.D. Okla. (Tulsa) | 4:04-cv-00563-CVE-FHM |
| Ciocca, Dominica | MDL; S.D.N.Y. | 1:04-cv-05678-JSR | S.D.N.Y. | 1:04-cv-05678-JSR |
| Collins, Patricia | MDL; S.D.N.Y. | 1:05-cv-00154-JSR | S.D. Tex. (Houston) | 4:04-cv-3709 |
| Connolly, Karin | MDL; S.D.N.Y. | 1:04-cv-06833-JSR | S.D. Tex. (Houston) | 1:04-cv-00245-HJW |
| Crawford, Aubrey | MDL; S.D.N.Y. | 1:05-cv-04058-JSR | N.D. Ga. (Newnan) | 3:04-cv-00092-JTC |
| Crisp, Dorothy | MDL; S.D.N.Y. | 1:04-cv-07639-JSR | S.D. Tex. (Houston) | 4:04-cv-02095 |
| Davenport, David | MDL; S.D.N.Y. | 1:04-cv-07632-JSR | D. Minn. | 0:04-cv-02915-DWF-JSM |
| DeBlasis, Jacalyn | MDL; S.D.N.Y. | 1:04-cv-08208-JSR | S.D. Ohio (Columbus) | 2:04-cv-00542-ALM-NMK |
| Delk, Louis | MDL; S.D.N.Y. | 1:04-cv-06840-JSR | N.D. Tex. (Dallas) | 3:04-cv-00692 |
| Deiva, Nicole | MDL; S.D.N.Y. | 1:05-cv-05981-JSR | D.N.J. | 1:05-cv-02135-JEI-JBR |
| Deng, Xiuhui | MDL; S.D.N.Y. | 1:05-cv-03027-JSR | W.D. Wash. (Seattle) | 2:05-cv-00170-MJP |
| Dodson, Carol | MDL; S.D.N.Y. | 1:04-cv-04265-JSR | E.D. Tex. (Beaumont) | 1:03-cv-0636 |
| Drewing, Stella | MDL; S.D.N.Y. | 1:04-cv-04274-JSR | S.D. Tex. (Galveston) | 3:03-cv-00700 |
| Dunham, Barbara | MDL; S.D.N.Y. | 1:05-cv-06821-JSR | D. Kan. (Kansas City) | 2:04-cv-02131-GTV-JPO |
| Edwards, Bobby | MDL; S.D.N.Y. | 1:04-cv-04264-JSR | E.D. Tex. (Beaumont) | 1:03-cv-00584-HC |
| Ehling, Deborah | MDL; S.D.N.Y. | 1:05-cv-05984-JSR | S.D. Ohio (Columbus) | 2:05-cv-00307-MHW-NMK |

Exhibit C

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
| Emmons, Elaine | MDL; S.D.N.Y. | 1:05-cv-00145-JSR | S.D. Miss. (Southern) | 1:04-cv-00759-LG-RHW |
| Estedes, Susie | MDL; S.D.N.Y. | 1:05-cv-05972-JSR | E.D. La. (New Orleans) | 05-1670 |
| Evers, M. Timothy | MDL; S.D.N.Y. | 1:05-cv-00157-JSR | S.D. Tex. (Houston) | H-04-3973 |
| Farmer, Janice | MDL; S.D.N.Y. | 1:04-cv-08206-JSR | S.D. Miss. (Southern) | 1:04-cv-00680-LG |
| Ferrell, Horace J. | MDL; S.D.N.Y. | 1:04-cv-04231-JSR | N.D. Ill. (Chicago) | 1:04-cv-01581 |
| Floro, Lauren | MDL; S.D.N.Y. | 1:05-cv-03896-JSR | D. Mass. (Boston) | 1:05-cv-10048-REK |
| Foretich, Shirley | MDL; S.D.N.Y. | 1:05-cv-04713-JSR | N.D. Tex. (Fort Worth) | 4:05-cv-00155 |
| Foster, Kathy | MDL; S.D.N.Y. | 1:05-cv-01023-JSR | W.D. Tex. (Austin) | 04-cv-689 |
| Foussadier, Erika | MDL; S.D.N.Y. | 1:05-cv-04714-JSR | S.D. Tex. (Houston) | 4:05-cv-00937 |
| Freeman, Deborah | MDL; S.D.N.Y. | 1:05-cv-03905-JSR | N.D. Ohio (Cleveland) | 1:05-cv-00171-SO |
| Gaston, Charlene | MDL; S.D.N.Y. | 1:04-cv-03565-JSR | S.D.N.Y. | 1:04-cv-03565-JSR |
| Geist, Richard | MDL; S.D.N.Y. | 1:04-cv-04243-JSR | E.D. Mo. (Hannibal) | 2:04-cv-00011-DJS |
| Glen, Marsha | MDL; S.D.N.Y. | 1:04-cv-06823-JSR | E.D. La. (New Orleans) | 2:04-cv-01414-HGB [Consolidated w/ 2:00-cv-3513] |
| Glinn, Michael | MDL; S.D.N.Y. | 1:05-cv-03000-JSR | D. Kan. (Kansas City) | 2:04-cv-02602-KHV-DJW |
| Graves, Brenda | MDL; S.D.N.Y. | 1:05-cv-03881-JSR | N.D. Ala. (Middle) | 4:05-cv-00210-RBP |
| Gyani, Gupreet | MDL; S.D.N.Y. | 1:05-cv-02367-JSR | S.D.N.Y. | 1:05-2367 |
| Haberer, Sonja | MDL; S.D.N.Y. | 1:04-cv-04217-JSR | S.D. Cal. | 03-cv-524 |
| Hague, Alexander | MDL; S.D.N.Y. | 1:04-cv-05478-JSR | S.D. Tex. (Houston) | 4:03-cv-00215 |
| Hale, Terrice | MDL; S.D.N.Y. | 1:04-cv-05468-JSR | D. Kan. (Topeka) | 5:03-cv-04153-SAC-KG |
| Hart, Phyliss | MDL; S.D.N.Y. | 1:05-cv-03907-JSR | S.D. Tex. (Galveston) | 3:05-cv-00059 |
| Hayes, Joyce | MDL; S.D.N.Y. | 1:05-cv-01014-JSR | W.D. Mo. (St. Joseph) | 5:04-cv-06079-ODS |
| Hoeft, Danielle | MDL; S.D.N.Y. | 1:05-cv-04697-JSR | D. Minn. | 0:05-cv-00479-JNE-SRN |
| Hollerbach, Patricia | MDL; S.D.N.Y. | 1:04-cv-09709-JSR | D.N.J. | 3:04-cv-04117-GEB (Nutraquest case) |
| Holmer, Debbie K. | MDL; S.D.N.Y. | 1:05-cv-02477-JSR | W.D. Wash. (Seattle) | 2:04-cv-02294-JCC |

Exhibit C

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
| Hudson, Barbara | MDL; S.D.N.Y. | 1:05-cv-00143-JSR | N.D. Miss. (Eastern Division) | 1:04-cv-00317-GHD-JAD |
| Iungerich, Tammy | MDL; S.D.N.Y. | 1:04-cv-06824-JSR | W.D. Mich. (Kalamazoo) | 4:04-cv-00033-WAM |
| Jackson, Sheila | MDL; S.D.N.Y. | 1:04-cv-04277-JSR | S.D. Tex. (Houston) | 4:03-cv-03898 |
| Jarreau, Vicky | MDL; S.D.N.Y. | 1:04-cv-06828-JSR | S.D. Miss. (Jackson) | 3:04-cv-00171-HTW |
| Jones, Carolyn | MDL; S.D.N.Y. | 1:05-cv-04709-JSR | W.D.N.Y. (Rochester) | 6:05-cv-06081-CJS |
| Jones, Dorothy | MDL; S.D.N.Y. | 1:05-cv-03900-JSR | N.D. Miss. (Greenville) | 4:05-cv-00041-WAP-EMB |
| Kalman, Joann | MDL; S.D.N.Y. | 1:05-cv-05983-JSR | N.D. Ohio (Cleveland) | 1:05-cv-00919-KMO |
| Kasko, Richard | MDL; S.D.N.Y. | 1:04-cv-04261-JSR | E.D. Tex. (Beaumont) | 1:03-cv-00534-TH |
| King, Beverly | MDL; S.D.N.Y. | 1:05-cv-05966-JSR | N.D. Ala. | 2:04-cv-03468 WMA |
| Kintyhtt, Bernard | MDL; S.D.N.Y. | 1:04-cv-07633-JSR | D. Minn. | 0:04-cv-03089-DWF-JSN |
| Kress, Terry | MDL; S.D.N.Y. | 1:05-cv-03882-JSR | S.D. Cal. | 05-cv-218 |
| Kundrat, Robert | MDL; S.D.N.Y. | 1:04-cv-04249-JSR | N.D. Ohio | 1:03-cv-02231-DAP |
| Kutz, Jacqueline | MDL; S.D.N.Y. | 1:05-cv-02999-JSR | S.D. Ill. | 3:04-cv-00974-WDS-CJP |
| La Rosa, Tracey | MDL; S.D.N.Y. | 1:05-cv-01004-JSR | W.D. Ark. | 5:04-cv-05293-RTD |
| Lain, Courtney | MDL; S.D.N.Y. | 1:05-cv-02475-JSR | E.D. Tex. | 5:2004-cv-00275 |
| Lang, Joshua | MDL; S.D.N.Y. | 1:05-cv-02472-JSR | M.D. Ga. | 5:04-cv-00420-WDO |
| Langston, Larry | MDL; S.D.N.Y. | 1:04-cv-04212-JSR | N.D. Ala. | 2:02-cv-02352 LSC |
| Lebrun, Leonard | MDL; S.D.N.Y. | 1:05-cv-02995-JSR | D. Ariz. | CV 04 2668 |
| Lewicki, Francine | MDL; S.D.N.Y. | 1:05-cv-03883-JSR | D. Conn. | 3:05-cv-00278-JCH |
| Lewis, Bruce | MDL; S.D.N.Y. | 1:05-cv-01022-JSR | S.D. Tex. | 4:04-cv-04146 |
| Longoria, Leo | MDL; S.D.N.Y. | 1:04-cv-08317-JSR | Bankr. S.D. Tex. (McAllen) | 04-07011 (Adv. Proc.) |
| Lott, Karen | MDL; S.D.N.Y. | 1:04-cv-06834-JSR | S.D. Ohio | 2:04-cv-00062-EAS-NMK |
| Louis, Esther | MDL; S.D.N.Y. | 1:05-cv-05974-JSR | E.D. La. | 2:05-cv-01674-MVL-DEK |
| Lozano, Juan | MDL; S.D.N.Y. | 1:04-cv-04282-JSR | S.D. Tex. | 7:03-cv-00370 |

Exhibit C

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
| Maddox, Sharon | MDL; S.D.N.Y. | 1:05-cv-03014-JSR | W.D. Mo. | 4:04-cv-01161-FJG |
| Marlow, Joanne | MDL; S.D.N.Y. | 1:04-cv-02887-JSR | S.D. Cal. | 3:2001-cv-02306 |
| Marshall, Robert | MDL; S.D.N.Y. | 1:04-cv-04276-JSR | S.D. Tex. | 4:03-cv-03058 |
| Mauldin, Linda | MDL; S.D.N.Y. | 1:04-cv-06827-JSR | S.D. Miss. | 2:04-cv-00124-WHB |
| Mayfield-Fleming, Ellen | MDL; S.D.N.Y. | 1:05-cv-00142-JSR | E.D. Mich. | 2:04-cv-73842-AJT |
| Mazola, Rhea | MDL; S.D.N.Y. | 1:04-cv-05471-JSR | D. Minn. | 0:03-cv-05777-JNE-RLE |
| McClure, Cheryl | MDL; S.D.N.Y. | 1:04-cv-09357-JSR | N.D. Okla. | 4:04-cv-00716-JOE-SAJ |
| McCollom, Scott | MDL; S.D.N.Y. | 1:05-cv-04702-JSR | W.D. Mo. | 4:05-cv-00232-SOW |
| McGuire, Peggy | MDL; S.D.N.Y. | 1:04-cv-05476-JSR | E.D. Tex. | 1:04-cv-00132-RHC |
| Missino, Rebecca | MDL; S.D.N.Y. | 1:05-cv-05975-JSR | E.D. La. | 2:05-cv-01675-MVL-ALC |
| Morgan, Chad | MDL; S.D.N.Y. | 1:05-cv-03015-JSR | W.D. Mo. | 4:05-cv-00067-HFS |
| Morgan, Jaclyn | MDL; S.D.N.Y. | 1:04-cv-04233-JSR | N.D. Ill. | 1:04-cv-01589 |
| Morrissey, Darla | MDL; S.D.N.Y. | 1:05-cv-03892-JSR | N.D. Ill. | 3:05-cv-50027 |
| Motley, Charles | MDL; S.D.N.Y. | 1:05-cv-01013-JSR | W.D. Mo. | 4:04-cv-00784-DW |
| Murray, Roy | MDL; S.D.N.Y. | 1:04-cv-06817-JSR | S.D. Ala. | 1:03-cv-00826-BHC |
| Nash, Steven | MDL; S.D.N.Y. | 1:05-cv-04701-JSR | W.D. Mo. (Kansas City) | 4:04-cv-00207-ODS |
| Nelsen, Michelle | MDL; S.D.N.Y. | 1:05-cv-03023-JSR | D. Utah (Central) | 2:04-cv-01194-TS |
| Nichols, Cheryl | MDL; S.D.N.Y. | 1:04-cv-09352-JSR | W.D. Mo. (Kansas City) | 4:04-cv-00782-HFS |
| Nix, Diane | MDL; S.D.N.Y. | 1:05-cv-03902-JSR | S.D. Miss. (Hattiesburg) | 2:05-cv-00049-KS-JMR |
| Novosel, Nancy | MDL; S.D.N.Y. | 1:05-cv-04700-JSR | D. Minn. | 0:05-cv-00543-PAM-RLE |
| Oppenheim, James | MDL; S.D.N.Y. | 1:05-cv-03891-JSR | N.D. Ill. (Chicago) | 1:05-cv-00622 |
| Ortegon, Claudia | MDL; S.D.N.Y. | 1:04-cv-04281-JSR | S.D. Tex. (McAllen Div.) | 7:03-cv-00167 |
| Parks, Johnny | MDL; S.D.N.Y. | 1:05-cv-04703-JSR | W.D. Mo. (Kansas City) | 4:05-cv-00233-DW |
| Parks, Morris J. | MDL; S.D.N.Y. | 1:05-cv-01021-JSR | S.D. Tex. (Galveston) | 3:04-cv-00556 |

**Exhibit C**

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
| Parsley, Lugene | MDL: S.D.N.Y. | 1:03-cv-09266-JSR | Circ. Ct., Illinois (State Court Case) | 03-L-537 |
| Patterson, Henry | MDL: S.D.N.Y. | 1:05-cv-03901-JSR | S.D. Miss. (Southern) | 1:05-cv-00081-LF-RHW |
| Pawlowski, Conrad | MDL: S.D.N.Y. | 1:04-cv-09351-JSR | E.D. Mich. (Detroit) | 2:04-cv-72239-RHC-RSW |
| Pettis, Thomas | MDL: S.D.N.Y. | 1:04-cv-07625-JSR | S.D. Ala. (Mobile) | 1:04-cv-00432-CG-M |
| Portillo, Gerald | MDL: S.D.N.Y. | 1:04-cv-04239-JSR | D. Kan. (Kansas City) | 2:04-cv-2032-KHV-DJW |
| Quaile, Audrey | MDL: S.D.N.Y. | 1:05-cv-01009-JSR | D. Kan. (Kansas City) | 2:04-cv-02345-KHV-JPO |
| Ramey, Debbie | MDL: S.D.N.Y. | 1:04-cv-04218-JSR | S.D. Cal. | 03-cv-0525-BTM-RBB |
| Ramirez, Amber | MDL: S.D.N.Y. | 1:05-cv-00155-JSR | S.D. Tex. (Houston) | H-04-3721 |
| Randle, Margaret | MDL: S.D.N.Y. | 1:05-cv-01012-JSR | E.D. Mo. (St. Louis) | 4:04-cv-01540-FRB |
| Rather, Fred | MDL: S.D.N.Y. | 1:04-cv-08306-JSR | S.D. Tex. (Galveston) | 3:04-cv-00309 |
| Reynolds, Cynthia | MDL: S.D.N.Y. | 1:05-cv-03897-JSR | E.D. Mo. (Eastern Division) | 4:05-cv-00179-CAS |
| Rhome, Nancy | MDL: S.D.N.Y. | 1:04-cv-08555-JSR | W.D. Pa. (Pittsburgh) | 2:02-cv-01461-JFC |
| Richardson, Brandon | MDL: S.D.N.Y. | 1:04-cv-06844-JSR | W.D. Wash. (Tacoma) | 3:04-cv-05252-RJB |
| Riordan, Donald | MDL: S.D.N.Y. | 1:04-cv-07626-JSR | W.D. Ark. (Fayetteville) | 5:04-cv-05152-RTD |
| Roaf, Derek | MDL: S.D.N.Y. | 1:05-cv-00159-JSR | E.D. Wis. (Milwaukee) | 2:04-cv-00907-TJC |
| Robertson, Rhealene | MDL: S.D.N.Y. | 1:05-cv-03013-JSR | E.D. Mo. (St. Louis) | 4:04-cv-01823-FRB |
| Romancik, Genevieve | MDL: S.D.N.Y. | 1:04-cv-04283-JSR | W.D. Tex. (El Paso) | 03-cv-278 |
| Ross, Mearlean | MDL: S.D.N.Y. | 1:05-cv-00146-JSR | S.D. Miss. (Jackson) | 3:04-cv-00821-HTW-JCS |
| Rowe, Duane | MDL: S.D.N.Y. | 1:04-cv-04253-JSR | E.D. Pa. (Philadelphia) | 2:03-cv-043646-MMB |
| Rubio, Melissa | MDL: S.D.N.Y. | 1:05-cv-05967-JSR | D. Ariz. (Phoenix) | 2:05-cv-00569-SMM |
| Rutherford, Ken | MDL: S.D.N.Y. | 1:05-cv-00150-JSR | S.D. Ohio (Cincinnati) | 1:04-cv-00545-SSB-TSH |
| Schlafhauser, Shelfi | MDL: S.D.N.Y. | 1:04-cv-02891-JSR | W.D. Pa. (Pittsburgh) | 2:02-cv-01450-DSC |
| Schmidt, Mark | MDL: S.D.N.Y. | 1:04-cv-04220-JSR | S.D. Cal. | 03-cv-730 |
| Schrader, Rebecca | MDL: S.D.N.Y. | 1:04-cv-04270-JSR | E.D. Tex. (Lufkin) | 9:03-cv-00318-TH |

**Exhibit C**

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
| Shupe , Terry | MDL; S.D.N.Y. | 1:04-cv-07640-JSR | S.D. Tex. (Houston) | 4:04-cv-02525 |
| Sinegal, Sandra | MDL; S.D.N.Y. | 1:04-cv-02892-JSR | E.D. Tex. (Beaumont) | 1:03-cv-00092-HC |
| Singleton, Marion | MDL; S.D.N.Y. | 1:04-cv-04260-JSR | E.D. Tex. (Beaumont) | 1:03-cv-00533-HC |
| Skinner, Rosie | MDL; S.D.N.Y. | 1:05-cv-00156-JSR | S.D. Tex. (Houston) | 4:04-cv-03723 |
| Snyder, Lisa | MDL; S.D.N.Y. | 1:05-cv-00139-JSR | S.D. Ind. (Indianapolis) | 1:04-cv-01609-LJM-WTL |
| Surratt, Christopher | MDL; S.D.N.Y. | 1:05-cv-01017-JSR | W.D.N.C. (Asheville) | 1:04-cv-00232 |
| Talavera, Irene | MDL; S.D.N.Y. | 1:04-cv-06820-JSR | N.D. Ill. (Chicago) | 1:04-cv-01629 |
| Thibodaux, Flossie | MDL; S.D.N.Y. | 1:04-cv-04250-JSR | N.D., Ohio (Cleveland) | 1:04-cv-00266-DAP |
| Thomas, James | MDL; S.D.N.Y. | 1:04-cv-07628-JSR | S.D. Ill. (East St. Louis) | 3:04-cv-00439-GPM-CJP |
| Thomas, June | MDL; S.D.N.Y. | 1:04-cv-07501-JSR | S.D.N.Y. | 1:04-cv-07501-JSR |
| Thuemau, Mark | MDL; S.D.N.Y. | 1:04-cv-07634-JSR | E.D. Mo. (St. Louis) | 4:04-cv-00693-HEA |
| Tiskevich, James | MDL; S.D.N.Y. | 1:04-cv-06772-JSR | N.D. Ill. (Chicago) | 1:04-cv-01591 |
| Todd, Barbara | MDL; S.D.N.Y. | 1:05-cv-03899-JSR | N.D. Miss. (Delta Division) | 2:05-cv-00046-WAP-EMB |
| Townsend, Gary | MDL; S.D.N.Y. | 1:04-cv-02896-JSR | N.D. Tex. (Dallas) | 3:03-cv-01353 |
| Troupe, Antoinette | MDL; S.D.N.Y. | 1:04-cv-04244-JSR; 1:04-cv-04891-JSR | E.D. Mo. (St. Louis) | 4:04-cv-00232-SNL |
| Troutman, Alison | MDL; S.D.N.Y. | 1:04-cv-07629-JSR | S.D. Ind. (Indianapolis) | 1:04-cv-00875-RLY-TAB |
| Tutka, Kathleen | MDL; S.D.N.Y. | 1:04-cv-06816-JSR | N.D. Ala. (Northeastern) | 5:04-cv-00431-CLS |
| Upson, Dianna | MDL; S.D.N.Y. | 1:04-cv-04214-JSR | N.D. Ala. (Western) | 7:03-cv-01034-KOB |
| Van Buren, Gregory A. | MDL; S.D.N.Y. | 1:04-cv-08209-JSR | N.D. Tex. (Dallas) | 3:04-cv-01508 |
| Vasquez, Sergio | MDL; S.D.N.Y. | 1:05-cv-01019-JSR | N.D. Tex. (Forth Worth) | 4:04-cv-00756 |
| Vaughn, Dennis | MDL; S.D.N.Y. | 1:04-cv-04263-JSR | E.D. Tex. (Beaumont) | 1:03-cv-00562-RC |
| Violette, Damon | MDL; S.D.N.Y. | 1:04-cv-04251-JSR | D. Or. (Portland) | 3:04-cv-00187-AS |
| Vnencak, James | MDL; S.D.N.Y. | 1:04-cv-06829-JSR | D.N.J. (Newark) | 2:04-cv-00501-HAA-GDH |
| Waltman, Michael | MDL; S.D.N.Y. | 1:05-cv-04705-JSR | S.D. Miss. (Hattiesburg) | 2:05-cv-00083-KS-JMR |

**Exhibit C**

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
| Weltman, Willie | MDL; S.D.N.Y. | 1:04-cv-06818-JSR | S.D. Ala. (Mobile) | 1:04-cv-00080-CG-B |
| Walton, Rosie | MDL; S.D.N.Y. | 1:05-cv-03903-JSR | S.D. Miss. (Western) | 5:05-cv-00023-DCB-JCS |
| Washington, Cheryl | MDL; S.D.N.Y. | 1:05-cv-05973-JSR | E.D. La. (New Orleans) | 2:05-cv-01673-LMA-JCW |
| Watkins, Edward | MDL; S.D.N.Y. | 1:05-cv-01010-JSR | D. Md. (Baltimore) | 1:04-cv-03849-SMN |
| Watson, Charles | MDL; S.D.N.Y. | 1:04-cv-04278-JSR | S.D. Tex. (Houston) | 4:03-cv-043357 |
| Watson, William | MDL; S.D.N.Y. | 1:05-cv-04693-JSR | N.D. Ala. (Northeastern) | 5:05-cv-00298-SLB |
| Weber, Diane | MDL; S.D.N.Y. | 1:04-cv-04248-JSR | W.D.N.Y. (Rochester) | 6:03-cv-06063-MAT-JWF |
| Weeks, Cynthia | MDL; S.D.N.Y. | 1:04-cv-04221-JSR | S.D. Cal. (San Diego) | 3-cv-731 |
| Weimer, Terry | MDL; S.D.N.Y. | 1:05-cv-04698-JSR | D. Minn. | 0:05-cv-00481-JRT-FLN |
| Wellman, Linda | MDL; S.D.N.Y. | 1:04-cv-04273-JSR | S.D. Tex. (Galveston) | 3:03-cv-00574 |
| Wells, Richard | MDL; S.D.N.Y. | 1:04-cv-08204-JSR | D. Minn. | 0:04-cv-03446-MJD-JGL |
| Westfall, Willard | MDL; S.D.N.Y. | 1:04-cv-04255-JSR | E.D. Pa. (Philadelphia) | 2:04-cv-01117-SD |
| Wigginton, Elizabeth | MDL; S.D.N.Y. | 1:04-cv-05466-JSR | S.D. Ill. (East St. Louis) | 3:03-cv-00384-DRH-CJP |
| Wilfong, Saylor | MDL; S.D.N.Y. | 1:05-cv-00160-JSR | N.D.W. Va. (Clarksburg) | 1:04-cv-205 |
| Williams, Sharon | MDL; S.D.N.Y. | 1:04-cv-07638-JSR | M.D. Tenn. (Nashville) | 3:04-cv-00662 |
| Winsor, George | MDL; S.D.N.Y. | 1:04-cv-02890-JSR | D. Mass. (Boston) | 1:02-cv-10387-JLT |
| Wolf, Judith | MDL; S.D.N.Y. | 1:05-cv-03012-JSR | E.D. Mo. (St. Louis) | 4:04-cv-01822-CAS |
| Wood, Jerry | MDL; S.D.N.Y. | 1:04-cv-04245-JSR | E.D. Mo. (St. Louis) | 4:04-cv-00233-DJS |
| Wright, Paul | MDL; S.D.N.Y. | 1:04-cv-04035-JSR | M.D. Tenn. (Nashville) | 3:03-cv-00809 |
| Wright, Robert | MDL; S.D.N.Y. | 1:05-cv-05969-JSR | M.D. Fla. (Tampa) | 8:05-cv-00665-EAK-MAP |
| Yarwood, Douglas | MDL; S.D.N.Y. | 1:04-cv-06825-JSR | E.D. Mo. (St. Louis) | 4:04-cv-00133-ERW |
| | | | | |

Due to incomplete information, this list may exclude an action that was pending on the Petition Date but was subsequently dismissed as to all parties, or include such action without noting the subsequent dismissal.

Exhibit C

| Plaintiff | MDL-1598 | Civil Action No. (S.D.N.Y.) | Transferring Court | Civil Action No. (Transferring Court) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

637157

**Exhibit C**



CT System

**Service of Process Transmittal Form**

Los Angeles, California

**04/15/2004**

**Via Federal Express (Overnight)**

**TO:** Gary T Pay General Counsel
METABOLIFE INTERNATIONAL, INC.
5643 Copley Drive
San Diego, CA  92111-7903

RECEIVED
APR 1 6 2004
By_____

**RE:    PROCESS SERVED IN CALIFORNIA**

**FOR**        METABOLIFE INTERNATIONAL, INC. Domestic State: Ca

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| 1. TITLE OF ACTION: | *Joseph Saiter vs Metabolife International, Inc, et al* |
| 2. DOCUMENT(S) SERVED: | Summons |
| 3. COURT: | Circuit Court, Santa Rosa County, Florida <br> Case Number 04299CA |
| 4. NATURE OF ACTION: | Summons served pertaining to the above entitled matter. |
| 5. ON WHOM PROCESS WAS SERVED: | CT Corporation System, Los Angeles, California |
| 6. DATE AND HOUR OF SERVICE: | By *Process server* on 04/15/2004 at 13:50 |
| 7. APPEARANCE OR ANSWER DUE: | Within 20 days |
| 8. ATTORNEY(S): | Thomas F. Gonzalez/J. Nixon Daniel, III/John F. Windham <br> (850) 432-2451 <br> Beggs & Lane <br> 501 Commendencia Street <br> P. O. Box Box 12950 <br> Pensacola, FL  32591-2950 |

**9. REMARKS:**
          i-Note sent 04/15/2004 to AHICKS@METABOLIFE.COM

| | | | |
|---|---|---|---|
| **CC:** | Ashley Hicks Paralegal <br> METABOLIFE INTERNATIONAL, INC. <br> 5643 Copley Drive <br> San Diego, CA  92111-7903 | **SIGNED** | CT Corporation System |
| | | **PER** | Jere J. Keprios /MS |
| | | **ADDRESS** | 818 West Seventh Street <br> Los Angeles, CA  90017 <br> SOP WS 0006231270 |

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

APR 1 5 2004

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR SANTA ROSA COUNTY FLORIDA

Case Number:  04000299CA

PLAINTIFF              vs          DEFENDANT

SAITER JOSEPH                      METABOLIFE INTERNATIONAL INC
                                   C/O REG AGENT CT CORP SYSTEM

S U M M O N S

Served _____

Date _____ Time_____ am/pm

Server signature _____

Server name _____ ID# _____
Court issuing ID_____

THE STATE OF FLORIDA:
GREETINGS:

    YOU ARE HEREBY COMMANDED to serve this summons and a copy of the com-
plaint or petition in the above-styled case upon the defendant:

        METABOLIFE INTERNATIONAL INC
        C/O REG AGENT CT CORP SYSTEM

    Each defendant is hereby required to serve written defenses to said
complaint or petition on plaintiff's attorney whose address is:

        WINDHAM JOHN F
        BEGGS & LANE
        P O BOX 12950
        PENSACOLA, FL  32576,

within twenty days after service of this summons upon that defendant, exclu-
sive of the day of service, and to file the original of said written defenses
with the Clerk of Court either before service on Plaintiff's attorney or
immediately thereafter.  If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or
petition.

WITNESS my hand and seal of said Court on Tue. Apr. 06, 2004.

                        MARY M JOHNSON
                        Clerk of Circuit Court

(Court Seal)                  By: _____
                        Deputy Clerk

 CT System

**Service of Process Transmittal Form**

Los Angeles, California

**04/15/2004**

**Via Federal Express (Overnight)**

TO:  Gary T Pay General Counsel
     METABOLIFE INTERNATIONAL, INC.
     5643 Copley Drive
     San Diego, CA 92111-7903



RE:  **PROCESS SERVED IN CALIFORNIA**

FOR     METABOLIFE INTERNATIONAL, INC. Domestic State: Ca

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:          Joseph Saiter vs Metabolife International, Inc, et al

2. DOCUMENT(S) SERVED:       Complaint

3. COURT:                    Circuit Court, Santa Rosa County, Florida
                             Case Number 04299CA

4. NATURE OF ACTION:         Complaint for alleged negligence resulting in personal injuries.

5. ON WHOM PROCESS WAS SERVED:   CT Corporation System, Los Angeles, California

6. DATE AND HOUR OF SERVICE:     By Process server on 04/14/2004 at 13:20

7. APPEARANCE OR ANSWER DUE:     None shown

8. ATTORNEY(S):          Thomas F. Gonzalez/J. Nixon Daniel, III/John F. Windham
                         (850) 432-2451
                         Beggs & Lane
                         501 Commendencia Street
                         P. O. Box Box 12950
                         Pensacola, FL 32591-2950

9. REMARKS:          Note no Summons served.
                     i-Note sent 04/15/2004 to AHICKS@METABOLIFE.COM

CC:   Ashley Hicks Paralegal            SIGNED    CT Corporation System
      METABOLIFE INTERNATIONAL, INC.
      5643 Copley Drive                 PER       Jere J. Keprios /MS
      San Diego, CA 92111-7903          ADDRESS   818 West Seventh Street
                                                  Los Angeles, CA 90017
                                                  SOP WS 0006230045

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference
for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any
information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the
appropriate action.

4/14/04

CT System

Service of Process Transmittal Form

Los Angeles, California

04/15/2004

Via Federal Express (Overnight)

TO: Gary T Pay General Counsel
METABOLIFE INTERNATIONAL, INC.
5643 Copley Drive
San Diego, CA 92111-7903

RECEIVED
APR 16 2004
By_____

RE:    **PROCESS SERVED IN CALIFORNIA**

FOR    METABOLIFE INTERNATIONAL, INC. Domestic State: Ca

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. **TITLE OF ACTION:**    Joseph Saiter vs Metabolife International, Inc, et al

2. **DOCUMENT(S) SERVED:**    Summons

3. **COURT:**    Circuit Court, Santa Rosa County, Florida
Case Number 04299CA

4. **NATURE OF ACTION:**    Summons served pertaining to the above entitled matter.

5. **ON WHOM PROCESS WAS SERVED:**    CT Corporation System, Los Angeles, California

6. **DATE AND HOUR OF SERVICE:**    By Process server on 04/15/2004 at 13:50

7. **APPEARANCE OR ANSWER DUE:**    Within 20 days

8. **ATTORNEY(S):**    Thomas F. Gonzalez/J. Nixon Daniel, III/John F. Windham
(850) 432-2451
Beggs & Lane
501 Commendencia Street
P. O. Box Box 12950
Pensacola, FL 32591-2950

9. **REMARKS:**
i-Note sent 04/15/2004 to AHICKS@METABOLIFE.COM

CC:    Ashley Hicks Paralegal
METABOLIFE INTERNATIONAL, INC.
5643 Copley Drive
San Diego, CA 92111-7903

SIGNED    CT Corporation System

PER    Jere J. Keprios /MS

ADDRESS    818 West Seventh Street
Los Angeles, CA 90017
SOP WS 0006231270

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

APR 1 5 2004

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR SANTA ROSA COUNTY FLORIDA

Case Number:  04000299CA

PLAINTIFF          VS          DEFENDANT

SAITER JOSEPH                  METABOLIFE INTERNATIONAL INC
                               C/O REG AGENT CT CORP SYSTEM

S U M M O N S

Served _____

Date _____ Time _____ am/pm

Server signature _____

Server name _____ ID# _____
Court issuing ID _____

THE STATE OF FLORIDA:
GREETINGS:

     YOU ARE HEREBY COMMANDED to serve this summons and a copy of the com-
plaint or petition in the above-styled case upon the defendant:

          METABOLIFE INTERNATIONAL INC
          C/O REG AGENT CT CORP SYSTEM

     Each defendant is hereby required to serve written defenses to said
complaint or petition on plaintiff's attorney whose address is:

          WINDHAM JOHN F
          BEGGS & LANE
          P O BOX 12950
          PENSACOLA, FL  32576,

within twenty days after service of this summons upon that defendant, exclu-
sive of the day of service, and to file the original of said written defenses
with the Clerk of Court either before service on Plaintiff's attorney or
immediately thereafter.  If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or
petition.

WITNESS my hand and seal of said Court on Tue. Apr. 06, 2004.

                              MARY M JOHNSON
                              Clerk of Circuit Court

(Court Seal)               By: _____
                              Deputy Clerk


CT System

Service of Process Transmittal Form

Los Angeles, California

**04/15/2004**

**Via Federal Express (Overnight)**

TO: Gary T Pay General Counsel
METABOLIFE INTERNATIONAL, INC.
5643 Copley Drive
San Diego, CA 92111-7903


RECEIVED
APR 1 6 2004
By_____

RE: **PROCESS SERVED IN CALIFORNIA**

FOR    METABOLIFE INTERNATIONAL, INC. Domestic State: Ca

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:    Joseph Saiter vs Metabolife International, Inc, et al

2. DOCUMENT(S) SERVED:   Complaint

3. COURT:    Circuit Court, Santa Rosa County, Florida
Case Number 04299CA

4. NATURE OF ACTION:    Complaint for alleged negligence resulting in personal injuries.

5. ON WHOM PROCESS WAS SERVED:    CT Corporation System, Los Angeles, California

6. DATE AND HOUR OF SERVICE:    By Process server on 04/14/2004 at 13:20

7. APPEARANCE OR ANSWER DUE:    None shown

8. ATTORNEY(S):    Thomas F. Gonzalez/J. Nixon Daniel, III/John F. Windham
(850) 432-2451
Beggs & Lane
501 Commendencia Street
P. O. Box Box 12950
Pensacola, FL 32591-2950

9. REMARKS:    Note no Summons served.
i-Note sent 04/15/2004 to AHICKS@METABOLIFE.COM

CC:    Ashley Hicks Paralegal
METABOLIFE INTERNATIONAL, INC.
5643 Copley Drive
San Diego, CA 92111-7903

SIGNED    CT Corporation System

PER    Jere J. Keprios /MS

ADDRESS    818 West Seventh Street
Los Angeles, CA 90017
SOP WS 0006230045

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER

        Plaintiff,

v.

                               CASE NO.: 04-299CA

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.,

        Defendants.



_____

## COMPLAINT

_____

       COME NOW the Plaintiff, JOSEPH SAITER by and through his undersigned attorneys,

and sues the Defendants, METABOLIFE INTERNATIONAL, INC., THE CHEMINS

COMPANY, INC., DIXIE HEALTH OF PENSACOLA, INC., d/b/a SMOOTHIE KING, and

SMOOTHIE KING FRANCHISES, INC.:

### IDENTITY OF THE PARTIES AND JURISDICTION

       1.    This Court has jurisdiction over the parties and subject matter of this action in

that:

       (a)    At all times material to this action, Plaintiff, JOSEPH SAITER, was a resident of

Santa Rosa County, Florida.

       (b)    At all times herein mentioned, defendant, THE CHEMINS COMPANY, INC.

was and is a corporation organized and existing under the laws of the State of Colorado and

qualified to do business in the State of Florida.

       (c)    At all times alleged herein, defendants were engaged in the business of licensing,

manufacturing, distributing, and/or selling, either directly or indirectly, through third parties or

related entities, a non-prescription nutritional/dietary supplement for sale to, and use by, members of the general public, and as a part of their business, said defendants and each of them, manufactured a purported nutritional/dietary supplement under the proprietary name, Metabolife 356. Plaintiff alleges on information and belief that defendants do business in the State of Florida and at all times relevant hereto they developed, manufactured, and sold in interstate commerce, the aforementioned dietary supplement.

(d)     At all times material to this action, defendants solicited business, engaged in a persistent course of conduct and derived substantial revenue from goods used or consumed or services rendered in Santa Rosa County, Florida and expected or reasonably should have expected their actions to have consequences in Santa Rosa County, Florida and that they would derive substantial revenue from interstate or international commerce involving Santa Rosa County, Florida.

(e)     Defendants METABOLIFE INTERNATIONAL, INC., and THE CHEMINS COMPANY manufactured a product known as Metabolife 356 which it knew and intended or should have known would be supplied to businesses and sold to consumers in Santa Rosa County, Florida.

(f)     METABOLIFE INTERNATIONAL, INC., and THE CHEMINS COMPANY, distributed Metabolife 356 throughout the state of Florida and specifically sold Metabolife 356 to defendant, DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING.

(g)     At all times herein mentioned, defendant, DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING was a for-profit corporation organized in the state of Florida, with its' principal place of business at 203 Gulf Breeze Parkway, Suite B, Gulf Breeze, Florida. DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING, was owned and operated by

Daniel (aka "Danny") K. Johnson, formerly of 4660 Anchor Lane, Pensacola, FL, 32514. Mr.

Johnson is believed to currently reside at 1715 Lake Street, Lake Charles, Louisiana, 70601.

DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING no longer operates a

Smoothie King franchise in Gulf Breeze but has relocated to 1680 Airport Blvd., Suite 900,

Pensacola, FL 32504. DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING may

be served with the summons and complaint through their registered agent, Mary Robetson, 3205

East Olive Road, Apt 145, Pensacola, Florida, 32514.

      (h)     SMOOTHIE KING FRANCHISES, INC., is a foreign, for profit corporation

authorized to do business in the state of Florida as Smoothie King Home of the Muscle Punch

Franchises, Inc. SMOOTHIE KING FRANCHISES, INC., had and has its headquarters and

principal place of business at 2400 Veterans Memorial Blvd., Suite 110, Kenner, LA 70062.

They may be served with the summons and complaint in Florida by service upon their registered

agent, Corporate Research Solutions, Inc., 1333 N. Duval Street., Tallahassee, Florida 32303.

SMOOTHIE KING FRANCHISES, INC., was engaged in a joint venture relationship with

DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING, insofar as the two

defendants shared in the profits realized from the sale of Metabolife 356 to consumers in

Pensacola, Florida including Joseph Saiter. Plaintiff does not have a copy of the documents

forming the basis of the joint venture relationship between these two defendants, however,

Plaintiff believes that these documents are in the sole and exclusive possession of the defendants

and Plaintiff intends to seek same through discovery.

      (i)     In early 2000, Plaintiff, JOSEPH SAITER purchased a bottle of Metabolife 356,

in pill form, from DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING, in Gulf

Breeze Florida.



(j)    This is an action for damages in excess of the minimum jurisdictional amount of this Court.

<center>FACTUAL BACKGROUND</center>

<center>FACTS COMMON TO ALL COUNTS</center>

2.    For the many months preceding April 16, 2000, Defendants undertook to formulate, produce, manufacture, market, sell, and distribute the product called Metabolife 356, as an advanced weight loss formula and dietary supplement. Defendants claimed to consumers, including JOSEPH SAITER that Metabolife 356 was comprised of "natural herbs." Metabolife 356 was touted as an "herbal formula to enhance your diet and provide energy." Defendants claimed that Metabolife 356 was "independently laboratory tested for safety." Through its labeling and marketing efforts Defendants represented that Metabolife 356 was an all natural, safe and effective way to lose weight quickly while increasing energy. This effort by Defendant, Metabolife, was joined by the involvement of Defendant, Chemins, who in the form of a joint venture relationship with Metabolife, agreed to engineer, produce and manufacture the ingredients of Metabolife 356, so that such product could then be distributed, marketed and sold to the consumers of Florida including JOSEPH SAITER. Plaintiff does not have a copy of the documents forming the basis of the joint venture relationship between, Metabolife and Chemins, however, Plaintiff believes that these documents are in the sole and exclusive possession of Metabolife and Chemins and Plaintiff intends to seek same through discovery.

3.    As part of the Metabolife 356 manufacturing process, Defendant, Metabolife and Chemins, processed Ephedra alkaloids or Ephedrine with the other ingredients making up Metabolife 356. Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine is known to present health hazards including causing cardiovascular,

<center>4</center>

cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients unreasonably dangerous. Metabolife 356 was placed in the stream of commerce containing, Guarana (Caffeine), and Ma Huang Extract (ephedra). This effort by Defendant, Metabolife, was joined by the involvement of Defendant, Chemins, who in the form of a joint venture relationship with Metabolife, agreed to engineer, produce and manufacture the ingredients of Metabolife 356, so that such product could then be distributed, marketed and sold to the consumers of Florida including Joseph Saiter. Plaintiff does not have a copy of the documents forming the basis of the joint venture relationship between, Metabolife and Chemins, however, Plaintiffs believe that these documents are in the sole and exclusive possession of Metabolife and Chemins and Plaintiff intends to seek same through discovery. For the purposes of this complaint and litigation plaintiff will use the terms ephedrine, ephedra, ephedra alkaloids and ma huang to describe the primary active ingredient in Metabolife 356.

4.      In marketing the product to the Florida consumers including JOSEPH SAITER, Defendants intentionally failed to mention in their marketing literature, advertisements, and product labels that their product was inherently dangerous. Rather, Defendants purposely emphasized in their marketing labels that their product was comprised of "natural herbs" combined in an "herbal formula to enhance your diet and provide energy" and claimed that their product was "independently laboratory tested for safety" in order that their profit projections and their returns to their shareholders were maximized. JOSEPH SAITER read and relied upon these claims contained on the Metabolife 356 label to his detriment. Plaintiff is no longer in possession of his Metabolife 356 bottle and its attached label containing the warranties, representations and warnings which are referenced and incorporated in this Complaint. Plaintiff

reserves the right to amend this Complaint to attach a copy of this material if found. In the interim or in the event plaintiff is unable to locate the bottle and label, Plaintiff asserts on information and belief that this label or the substance thereof is in the sole and exclusive possession of Metabolife International, Inc., and plaintiff will seek same through discovery.

5.    Despite their superior knowledge concerning the dangers of ephedra, alone or in combination with other active ingredients, Defendants intentionally failed to make any changes in their representations, labels, and/or marketing schemes in order to alert consumers of the known dangers of the ephedra containing product, Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss. These actions by Defendants were false and misleading and allowed the continuation of purchases by ultimate users and subsequent harm to numerous persons including JOSEPH SAITER. JOSEPH SAITER read and relied to his detriment upon the representations made in the product literature including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained on the bottle.

6.    Defendants, directly or indirectly, negligently or defectively, made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, marketed, advertised, and/or sold Metabolife 356 in the State of Florida.

7.    Defendants had control of the design, assembly, packaging, marketing, advertising, manufacturing, labeling, testing, promoting, distributing, and selling of Metabolife 356.

8.    At all times material hereto, Defendants either knew or should have known that the supplement Ephedra or Ephedrine was causally related to and associated with myocardial infarction.

9.    Although Defendants knew or should have known of the dangerous propensities of the product, Defendants continued to allow and permit the product to be advertised, promoted, and sold without adequate warning of these dangerous propensities.

10.    In the months prior to April 16, 2000, JOSEPH SAITER read and relied upon the representations made in these materials regarding the safety and effectiveness of Metabolife 356. These materials failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

11.    As a result of claims made by defendants, regarding the safety and effectiveness of Metabolife 356, JOSEPH SAITER purchased Metabolife 356 as a supplement for a weight loss and fitness program.

12.    At the time of and subsequent to purchase JOSEPH SAITER read the label on the bottle including the warnings and use instructions.    Thereafter, JOSEPH SAITER began ingesting Metabolife 356 on a daily basis in accord with the use instructions. JOSEPH SAITER consumed the Metabolife 356 product in accordance with the package instructions on a regular basis until April 16, 2000.

13.    By April 16, 2000, JOSEPH SAITER was not consuming any medication or other pills apart from his consumption of Metabolife 356. On or about April 16, 2000, Plaintiff, JOSEPH SAITER, visited Tennessee.

14.    On the morning of April 17, 2000, JOSEPH SAITER suffered a myocardial infarction or as it is commonly called, a heart attack.    The heart attack and related injuries, physical and mental impairment, medical care and disability were caused by Plaintiff, JOSEPH SAITER's ingestion of Metabolife 356.

7

15.   Defendants either knew or should have known that the Metabolife 356 product it marketed, distributed and sold contained Ephedra or Ephedrine, and that such supplement was causally related to and associated with stroke, heart attack and death.   At all relevant times defendants produced and sold ephedra containing products under its own name and as such had special knowledge of the dangers represented by ephedra containing products.  The inclusion of ephedra and caffeine in this formula constituted a design defect that was unreasonably dangerous.  Ephedra has a stimulating effect on the human body, particularly the brain, heart and blood vessels:  Ephedra is a sympathomimetic amine and is known to increase heart rate, raise blood pressure by constricting blood vessels, dilate the bronchial tubes and affect brain function. Caffeine, which, like ephedrine, is an alkaloid, and the other constituents of Metabolife 356, increase the stimulant effect of ephedra alkaloids making them more dangerous by increasing the likelihood of severe adverse effects such as the myocardial infarction suffered by Joseph Saiter.

16.   Although defendants knew or should have known of these dangerous propensities of Metabolife 356, defendants continued to allow and permit the product to be advertised, promoted and sold without adequate warnings of these dangerous propensities.

17.   JOSEPH SAITER's myocardial infarction and the associated permanent injuries were caused by his ingestion of the ephedra containing product, Metabolife 356.

18.   Metabolife was defectively designed.  The specific defect is/was the inclusion in the formula of Ephedra Alkaloids, Caffeine and other ingredients that alone or in combination posed significant health dangers to the intended consumers:  At all times material hereto, Defendants either knew or should have known that the supplement Ephedra or Ephedrine was causally related to and associated with serious adverse events including stroke, heart attack and the myocardial infarction suffered by Joseph Saiter. The inclusion of ephedra and caffeine in this

formula constituted a design defect that was unreasonably dangerous. Ephedra has a stimulating effect on the human body, particularly the brain, heart and blood vessels. Ephedra is a sympathomimetic amine and is known to increase heart rate, raise blood pressure by constricting blood vessels, dilate the bronchial tubes and affect brain function. Caffeine, which, like ephedrine, is an alkaloid, and the other constituents of Metabolife, increase the stimulant effect of ephedra alkaloids making them more dangerous by increasing the likelihood of severe adverse effects such as the myocardial infarction suffered by Joseph Saiter.

<u>COUNT I</u>

<u>STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT, METABOLIFE INTERNATIONAL, INC. (DEFECTIVE DESIGN)</u>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

19.    At all times material to this action, Defendant engaged in the business of selling, distributing, supplying, manufacturing, marketing and promoting its dietary supplement Metabolife 356, which is defective and unreasonably dangerous to consumers, including JOSEPH SAITER.

20.    At all times material to this action Metabolife 356 was sold, distributed, supplied, manufactured, marketed and/or promoted by Defendant; Metabolife 356 was expected to reach, and did reach, consumers in the State of Florida, including Plaintiff, without substantial difference between the condition in which it was manufactured and sold.

9

21.    At all times material to this action, Metabolife 356, was sold, marketed, distributed, supplied, manufactured and/or promoted by Defendant in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce.

22.    The product was defective and unreasonably dangerous in one or more of the following particulars:

(a)    When placed in the stream of commerce, the supplement contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting JOSEPH SAITER, to risks which exceeded the benefits of the product;

(b)    When placed in the stream of commerce, the supplement was defective in design and formulation, thereby making the use of the supplement more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the underlying condition for which the supplement was purchased.

(c)    The supplement was insufficiently and inadequately tested.

(d)    The supplement caused harmful side effects which outweighed potential utility;

(e)    The supplement was not accompanied by adequate instructions and/or warnings to apprise consumers, including Plaintiff, of the full nature or extent of the risks and side effects associated with the use of Metabolife 356, thereby rendering Defendants liable to Plaintiff, individually and collectively.

(f)    The supplement was not manufactured with adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery with each pill.

(g)    Defendant placed Metabolife 356 in the stream of commerce when it knew or should have known that Metabolife 356 would be used in conjunction with other products on



the market including products containing caffeine, aspirin and other over the counter pain medications, and that substantial risk of harm was posed to consumers utilizing Metabolife 356 either alone or in conjunction with other products.

23.     Defendant failed to provide a reasonably safe alternative formulation of Metabolife 356 when Defendant knew or should have known that other dietary supplements were available and existing in the market which could safely offer the consumer a weight loss option without subjecting them to the risk to which Metabolife 356 subjected the consumer.

24.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.     Bodily injury and any resulting pain and suffering;

b.     Mental anguish;

c.     Disability and physical impairment;

d.     Loss of capacity for the enjoyment of life;

e.     Lost wages in the past and impaired earning capacity;

f.     Inconvenience;

g.     Medical expenses, past and future;

h.     Costs of suit incurred herein;

i.     Pre-judgment interest as provided by law; and

j.     Such other and further relief as the Court may deem just and proper.

## COUNT II

## STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT, METABOLIFE INTERNATIONAL, INC. (FAILURE TO WARN)

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

25.     Metabolife 356 was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including JOSEPH SAITER, of the dangerous risks and reactions associated with utilization of Metabolife 356. JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

26.     JOSEPH SAITER used Metabolife 356 for its intended purposes.

27.     JOSEPH SAITER could not have discovered any defects in the product through the exercise of reasonable care or diligence.

28.     Defendant is a manufacturer of a dietary supplement, and is held to the level of knowledge of an expert in the field.

29.     The warnings given by Defendant were not accurate, thorough, clear or unambiguous.

30.     Defendant had a continuing duty to warn JOSEPH SAITER of the dangers associated with the use of Metabolife 356.

31.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

12

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

<u>COUNT III</u>

<u>NEGLIGENCE OF DEFENDANT, METABOLIFE INTERNATIONAL, INC.</u>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

32.    Defendant, directly or indirectly, negligently and/or defectively made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, promoted, marketed, advertised, and/or sold Metabolife 356.

33.    At all times material to this action, Defendants had a duty to any/all consumers including JOSEPH SAITER, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distributing, promoting and selling of Metabolife 356.



34.    Defendant breached the duty owed to JOSEPH SAITER, and acted negligently in its actions and representations toward JOSEPH SAITER, including, but not limited to, the following:

(a)    Failed to include adequate warnings with the supplement that would alert consumers to the potential risk and serious side effects of Metabolife 356.

(b)    Failed to adequately and properly test the supplement before placing Metabolife 356 on the market.

(c)    Failed to conduct sufficient testing on the supplement which, if properly performed, would have shown that Metabolife 356 has serious side effects.

(d)    Failed to conduct sufficient testing of Metabolife 356 to eliminate non-uniform and non-standard delivery of the ingredients with each pill.

(e)    Failed to promulgate, adopt and implement adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery.

(f)    Failed to adequately warn JOSEPH SAITER, that use of Metabolife 356 carried a risk of organ damage including stroke.

(g)    Failed to warn Plaintiff that use of the product carried a risk of disabling conditions.

(h)    Failed to provide adequate after-marketing warnings or instructions after Defendant knew or should have known of the significant risks associated with the use of Metabolife 356.

35.    Despite Defendant knowing or having reason to know that Metabolife 356 caused unreasonably dangerous risks and serious side effects of which the Plaintiff could not and would

not be aware, Defendant nevertheless advertised, marketed, sold and distributed the supplement knowing that there were safer methods and alternatives to the treatment of obesity.

36.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.     Bodily injury and any resulting pain and suffering;

b.     Mental anguish;

c.     Disability and physical impairment;

d.     Loss of capacity for the enjoyment of life;

e.     Lost wages in the past and impaired earning capacity;

f.     Inconvenience;

g.     Medical expenses, past and future;

h.     Costs of suit incurred herein;

i.     Pre-judgment interest as provided by law; and

j.     Such other and further relief as the Court may deem just and proper.

## COUNT IV

### FRAUD AND MISREPRESENTATION OF DEFENDANT,

### METABOLIFE INTERNATIONAL, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

37.     Defendant fraudulently, intentionally and/or negligently misrepresented, in its advertising and labeling to JOSEPH SAITER, and the general public, the safety and

15

effectiveness of Metabolife 356 and/or fraudulently, intentionally or negligently concealed material, adverse information regarding the safety and effectiveness of Metabolife 356. These representations were placed on the product label and other advertising material read and relied on by JOSEPH SAITER in the several months preceding his stroke. JOSEPH SAITER read and relied upon these representations to his detriment. A sample of this adverse information available to Defendant includes, but is not limited to:

  a.  There were 926 cases of possible ma huang toxicity reported to the Food and Drug Administration between 1995-1997. In 37 patients (23 women and 14 men) use of ma huang was temporally related to stroke (in 16), myocardial infarction (in 10), or sudden death (in 11). Autopsies performed in 7 of the 11 patients who experienced sudden death showed a normal heart in 1, coronary atherosclerosis in 3, and cardiomyopathies in 3. In 36 of the 37 patients, use of ma huang was reported to be within the manufacturers' dosing guidelines. They concluded that: (1) ma huang use is temporally related to stroke, myocardial infarction, and sudden death; (2) underlying heart or vascular disease is not a prerequisite for ma huang-related adverse events; and (3) the cardiovascular toxic effects associated with ma huang were not limited to massive doses.

  b.  Defendant knew or should have known that one of the components of ephedra alkaloids is norephedrine, also known as phenylpropanolamine (PPA). Defendant knew or should have known that a Yale University study indicated that PPA increases the risk of hemorrhagic stroke (bleeding into the brain or into tissue surrounding the brain) in women. Defendant knew or should have known that Metabolife 356 had norephedrine (PPA) in the product and still continued to market the product and placed consumers at risk.

16

c.     Defendant knew or should have known that Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine was known to present health hazards including causing cardiovascular, cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients inherently dangerous.   Metabolife 356 was placed in the stream of commerce containing Guarana Extract (caffeine) and Ma Huang Extract (Ephedra).

38.    Defendant's misrepresentations in its marketing scheme, advertising and labeling were communicated with the intent that the representations reach Plaintiff.  Despite their superior knowledge concerning the dangers of ephedra, alone or in combination with other active ingredients, Defendants intentionally failed to make any changes in its representations, labels, and/or marketing schemes in order to alert consumers of the known dangers of Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss.   These actions by Defendants were false and misleading and allowed the continuation of purchases by ultimate users and subsequent harm to numerous persons including JOSEPH SAITER.  JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein and described herein.

39.    Defendant knew or should have known that the representations regarding the safety and efficacy of Metabolife 356 were false.

40.    Defendant, in its advertising and labeling, made representations on its label and in advertisements and/or actively concealed information, such as that specified above, pertinent to the supplement with the intention and specific desire that the Plaintiff and the consuming public would rely on the misrepresentation and purchase Metabolife 356 as a treatment for obesity.

17

41.     Defendant, in its advertising and labeling, negligently concealed this material, adverse information regarding the safety and effectiveness of its product.

42.     Defendant made representations, in its advertising and labeling, and actively concealed adverse information at a time when Defendant knew or should have known that Metabolife 356 had defects, dangers and characteristics that were other than what Defendant had represented to the consuming public.  These representations were made in an effort to market Metabolife 356 as a safe, natural means of weight loss despite Defendants knowledge regarding serious adverse consequences that had been reported regarding ephedra ingestion.

43.     The misrepresentations and/or act of concealment by Defendant includes, but is not limited to, the following:

(a)     Defendant misrepresented, in its advertising and labeling, that there had been clinical research studies proving the effectiveness and lack of harm of the supplement.

(b)     Defendant knew that there had been insufficient or inadequate testing of the supplement when Defendant marketed, promoted and sold Metabolife 356 as if it were fully and adequately tested.

(c)     Defendant failed to undertake sufficient studies regarding the safety and efficacy of the use of Metabolife 356 with other products including products containing caffeine.

44.     Despite knowing that there was insufficient and inadequate testing of Metabolife 356, Defendant, in its advertising and labeling, marketed, promoted and/or sold Metabolife 356 as if it were fully and adequately tested.

45.     Defendant, in its advertising and labeling, failed to advise JOSEPH SAITER, and others that prior studies, research, reports and/or testing connected and linked Metabolife 356's ingredient Ephedra or Ephedrine either alone or in combination with other products such as

18

caffeine, to serious adverse reactions and events over and above what other dietary supplements caused.

46.     Defendant misrepresented and/or actively concealed information that Metabolife 356 usage was associated with stroke, heart attack and death.

47.     The misrepresentations and/or act of concealment by Defendant was perpetuated directly and indirectly by Defendant and its sales representatives, employees, distributors, agents, retailers and/or detail persons.

48.     The misrepresentations and/or acts of concealment by Defendant constitute a continuing tort.

49.     Defendant continued to advertise and market and sell Metabolife 356 as a safe, more effective weight loss dietary supplement than the other supplements on the market. The representations made by Defendant were false and misleading and allowed the continuation of the sale of Metabolife 356 to other consumers, and subsequent harm to numerous patients, including JOSEPH SAITER.

50.     Through Defendant's advertising, labeling and representations, Defendant continued to misrepresent potential risks and complications associated with the use of Metabolife 356.

51.     Defendant misrepresented the safety and efficacy of Metabolife 356 in its labeling, advertising, promotional materials and other marketing efforts.

52.     JOSEPH SAITER justifiably relied on the representations and/or act of concealment of Defendant to his own detriment.

53.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

## COUNT V

## STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT,

## CHEMINS COMPANY, INC., (DEFECTIVE DESIGN)

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

54.    At all times material to this action, Defendant engaged in the business of selling, distributing, supplying, manufacturing, marketing and promoting its dietary supplement Metabolife 356, which is defective and unreasonably dangerous to consumers, including JOSEPH SAITER.

55.    At all times material to this action Metabolife 356 was sold, distributed, supplied, manufactured, marketed and/or promoted by Defendant; Metabolife 356 was expected to reach,

and did reach, consumers in the State of Florida, including Plaintiff, without substantial difference between the condition in which it was manufactured and sold.

56.    At all times material to this action, Metabolife 356, was sold, marketed, distributed, supplied, manufactured and/or promoted by Defendant in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce.

57.    The product was defective and unreasonably dangerous in one or more of the following particulars:

(a)    When placed in the stream of commerce, the supplement contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting JOSEPH SAITER, to risks which exceeded the benefits of the product;

(b)    When placed in the stream of commerce, the supplement was defective in design and formulation, thereby making the use of the supplement more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the underlying condition for which the supplement was prescribed.

(c)    The supplement was insufficiently and inadequately tested.

(d)    The supplement caused harmful side effects which outweighed potential utility;

(e)    The supplement was not accompanied by adequate instructions and/or warnings to apprise consumers, including Plaintiff, of the full nature or extent of the risks and side effects associated with the use of Metabolife 356, thereby rendering Defendants liable to Plaintiff, individually and collectively.

(f)    The supplement was not manufactured with adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery with each pill.

(g)    Defendant placed Metabolife 356 in the stream of commerce when it knew or should have known that Metabolife 356 would be used in conjunction with other products on the market including products containing caffeine, and that substantial risk of harm was posed to consumers utilizing Metabolife 356 either alone or in conjunction with other products.

58.    Defendant failed to provide a reasonably safe alternative formulation of Metabolife 356 when Defendants knew or should have known that other dietary supplements were available and existing in the market which could safely offer the consumer a weight loss option without subjecting them to the risk to which Metabolife 356 subjected the consumer.

59.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

## COUNT VI

## STRICT PRODUCTS LIABILITY AS AGAINST

## DEFENDANT, CHEMINS COMPANY, INC., (FAILURE TO WARN)

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

60.     Metabolife 356 was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including JOSEPH SAITER, of the dangerous risks and reactions associated with utilization of Metabolife 356. JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

61.     JOSEPH SAITER used Metabolife 356 for its intended purposes.

62.     JOSEPH SAITER could not have discovered any defects in the product through the exercise of reasonable care or diligence.

63.     Defendant is a manufacturer of a dietary supplement, and is held to the level of knowledge of an expert in the field.

64.     The warnings given by Defendant were not accurate, thorough, clear or unambiguous.

65.     Defendant had a continuing duty to warn JOSEPH SAITER, of the dangers associated with the use of Metabolife 356.

66.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.



WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.      Bodily injury and any resulting pain and suffering;

b.      Mental anguish;

c.      Disability and physical impairment;

d.      Loss of capacity for the enjoyment of life;

e.      Lost wages in the past and impaired earning capacity;

f.       Inconvenience;

g.      Medical expenses, past and future;

h.      Costs of suit incurred herein;

i.      Pre-judgment interest as provided by law; and

j.      Such other and further relief as the Court may deem just and proper.

## COUNT VII

## NEGLIGENCE OF DEFENDANT, CHEMINS COMPANY, INC.,

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

67.      Defendant, directly or indirectly, negligently and/or defectively made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, promoted, marketed, advertised, and/or sold Metabolife 356.

68.      At all times material to this action, Defendants had a duty to any/all consumers including JOSEPH SAITER, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distributing, promoting and selling of Metabolife 356.

69.    Defendant breached the duty owed to JOSEPH SAITER, and acted negligently in

its actions and representations toward JOSEPH SAITER, including, but not limited to, the

following:

(a)    Failed to include adequate warnings with the supplement that would alert

consumers to the potential risk and serious side effects of Metabolife 356.

(b)    Failed to adequately and properly test the supplement before placing

Metabolife 356 on the market.

(c)    Failed to conduct sufficient testing on the supplement which, if properly

performed, would have shown that Metabolife 356 has serious side effects.

(d)    Failed to conduct sufficient testing of Metabolife 356 to eliminate non-

uniform and non-standard delivery of the ingredients with each pill.

(e)    Failed to promulgate, adopt and implement adequate protocol, procedure

and/or safeguards to assure uniform and standardized delivery.

(f)    Failed to adequately warn JOSEPH SAITER, that use of Metabolife 356

carried a risk of organ damage including stroke, heart attack and death.

(g)    Failed to warn Plaintiff that use of the product carried a risk of disabling

conditions.

(h)    Failed to provide adequate after-marketing warnings or instructions after

Defendant knew or should have known of the significant risks associated with the use of

Metabolife 356.

70.    Despite Defendant knowing or having reason to know that Metabolife 356 caused

unreasonably dangerous risks and serious side effects of which the Plaintiff could not and would



not be aware, Defendant nevertheless advertised, marketed, sold and distributed the supplement knowing that there were safer methods and alternatives to the treatment of obesity.

71.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

<div align="center">

### COUNT VIII

### FRAUD AND MISREPRESENTATION OF

### DEFENDANT, CHEMINS COMPANY, INC.,

</div>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

72.    Defendant fraudulently, intentionally and/or negligently misrepresented, in its advertising and labeling to JOSEPH SAITER, and the general public, the safety and

<div align="center">

26

</div>



effectiveness of Metabolife 356 and/or fraudulently, intentionally or negligently concealed material, adverse information regarding the safety and effectiveness of Metabolife 356. These representations were placed on the product label and other advertising material read and relied on by JOSEPH SAITER in the several months preceding his stroke. JOSEPH SAITER read and relied upon these representations to his detriment. A sample of this adverse information available to Defendant includes, but is not limited to:

a.    There were 926 cases of possible ma huang toxicity reported to the Food and Drug Administration between 1995-1997. In 37 patients (23 women and 14 men) use of ma huang was temporally related to stroke (in 16), myocardial infarction (in 10), or sudden death (in 11). Autopsies performed in 7 of the 11 patients who experienced sudden death showed a normal heart in 1, coronary atherosclerosis in 3, and cardiomyopathies in 3. In 36 of the 37 patients, use of ma huang was reported to be within the manufacturers' dosing guidelines. They concluded that: (1) ma huang use is temporally related to stroke, myocardial infarction, and sudden death; (2) underlying heart or vascular disease is not a prerequisite for ma huang-related adverse events; and (3) the cardiovascular toxic effects associated with ma huang were not limited to massive doses.

b.    Defendant knew or should have known that one of the components of ephedra alkaloids is norephedrine, also known as phenylpropanolamine (PPA). Defendant knew or should have known that a Yale University study indicated that PPA increases the risk of hemorrhagic stroke (bleeding into the brain or into tissue surrounding the brain) in women. Defendant knew or should have known that Metabolife 356 had norephedrine (PPA) in the product and still continued to market the product and placed consumers at risk.

c.    Defendant knew or should have known that Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine was known to present health hazards including causing cardiovascular, cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients inherently dangerous. Metabolife 356 was placed in the stream of commerce containing Guarana Extract (Caffeine), and Ma Huang Extract (Ephedra).

73.    Defendant's misrepresentations in its marketing scheme, advertising and labeling were communicated with the intent that the representations reach Plaintiff. Despite their superior knowledge concerning the dangers of ephedra, alone or in combination with other active ingredients, Defendants intentionally failed to make any changes in its representations, labels, and/or marketing schemes in order to alert consumers of the known dangers of Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss. These actions by Defendants were false and misleading and allowed the continuation of purchases by ultimate users and subsequent harm to numerous persons including JOSEPH SAITER. JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein and described herein.

74.    Defendant knew or should have known that the representations regarding the safety and efficacy of Metabolife 356 were false.

·75.    Defendant, in its advertising and labeling, made representations on its label and in advertisements and/or actively concealed information, such as that specified above, pertinent to the supplement with the intention and specific desire that the Plaintiff and the consuming public would rely on the misrepresentation and purchase Metabolife 356 as a treatment for obesity.

28

76.    Defendant, in its advertising and labeling, negligently concealed this material, adverse information regarding the safety and effectiveness of its product.

77.    Defendant made representations, in its advertising and labeling, and actively concealed adverse information at a time when Defendant knew or should have known that Metabolife 356 had defects, dangers and characteristics that were other than what Defendant had represented to the consuming public. These representations were made in an effort to market Metabolife 356 as a safe, natural means of weight loss despite Defendants knowledge regarding serious adverse consequences that had been reported regarding ephedra ingestion.

78.    The misrepresentations and/or act of concealment by Defendant includes, but is not limited to, the following:

(a)    Defendant misrepresented, in its advertising and labeling, that there had been clinical research studies proving the effectiveness and lack of harm of the supplement.

(b)    Defendant knew that there had been insufficient or inadequate testing of the supplement when Defendant marketed, promoted and sold Metabolife 356 as if it were fully and adequately tested.

(c)    Defendant failed to undertake sufficient studies regarding the safety and efficacy of the use of Metabolife 356 with other products including products containing caffeine.

79.    Despite knowing that there was insufficient and inadequate testing of Metabolife 356, Defendant, in its advertising and labeling, marketed, promoted and/or sold Metabolife 356 as if it were fully and adequately tested.

80.    Defendant, in its advertising and labeling, failed to advise JOSEPH SAITER, and others that prior studies, research, reports and/or testing connected and linked Metabolife 356's ingredient Ephedra or Ephedrine either alone or in combination with other products such as



caffeine, to serious adverse reactions and events over and above what other dietary supplements caused.

81.     Defendant misrepresented and/or actively concealed information that Metabolife 356 usage was associated with stroke, heart attack and death.

82.     The misrepresentations and/or act of concealment by Defendant was perpetuated directly and indirectly by Defendant and its sales representatives, employees, distributors, agents, retailers and/or detail persons.

83.     The misrepresentations and/or acts of concealment by Defendant constitute a continuing tort.

84.     Defendant continued to advertise and market and sell Metabolife 356 as a safe, more effective weight loss dietary supplement than the other supplements on the market. The representations made by Defendant were false and misleading and allowed the continuation of the sale of Metabolife 356 to other consumers, and subsequent harm to numerous patients, including JOSEPH SAITER.

85.     Through Defendant's advertising, labeling and representations, Defendant continued to misrepresent potential risks and complications associated with the use of Metabolife 356.

86.     Defendant misrepresented the safety and efficacy of Metabolife 356 in its labeling, advertising, promotional materials and other marketing efforts.

87.     JOSEPH SAITER justifiably relied on the representations and/or act of concealment of Defendant to his own detriment.

88.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

<p style="text-align:center">COUNT IX</p>

<p style="text-align:center">STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT,</p>

<p style="text-align:center">DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING,</p>

<p style="text-align:center">(DEFECTIVE DESIGN)</p>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

89.    At all times material to this action, Defendant engaged in the business of selling, distributing, supplying, marketing and promoting the dietary supplement Metabolife 356, which is defective and unreasonably dangerous to consumers, including JOSEPH SAITER.

90.    At all times material to this action Metabolife 356 was sold, distributed, supplied, marketed and/or promoted by Defendant; Metabolife 356 was expected to reach, and did reach,



consumers in the State of Florida, including Plaintiff, without substantial difference between the condition in which it was manufactured and sold.

91.    At all times material to this action, Metabolife 356, was sold, marketed, distributed, supplied, and/or promoted by Defendant in a defective and unreasonably dangerous condition.

92.    The product was defective and unreasonably dangerous in one or more of the following particulars:

(a)    When placed in the stream of commerce, and when received and sold by this defendant, the supplement contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting JOSEPH SAITER, to risks which exceeded the benefits of the product;

(b)    When placed in the stream of commerce, and when received and sold by this defendant, the supplement was defective in design and formulation, thereby making the use of the supplement more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the underlying condition for which the supplement was prescribed.

(c)    The supplement was insufficiently and inadequately tested.

(d)    The supplement caused harmful side effects which outweighed potential utility;

(e)    The supplement was not accompanied by adequate instructions and/or warnings to apprise consumers, including Plaintiff, of the full nature or extent of the risks and side effects associated with the use of Metabolife 356, thereby rendering Defendant liable to Plaintiff, individually and collectively.

32

(f)    The supplement was not manufactured with adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery with each pill.

(g)    Defendant placed Metabolife 356 in the stream of commerce when it knew or should have known that Metabolife 356 would be used in conjunction with other products on the market including products containing caffeine, and that substantial risk of harm was posed to consumers utilizing Metabolife 356 either alone or in conjunction with other products.

93.    Defendant failed to provide a reasonably safe alternative formulation of Metabolife 356 when Defendant knew or should have known that other dietary supplements were available and existing in the market which could safely offer the consumer a weight loss option without subjecting them to the risk to which Metabolife 356 subjected the consumer.

94.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

## COUNT X

## STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT, DIXIE HEALTH OF

## PENSACOLA, INC d/b/a SMOOTHIE KING (FAILURE TO WARN)

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

95.    Metabolife 356 was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including JOSEPH SAITER, of the dangerous risks and reactions associated with consuming Metabolife 356. JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

96.    JOSEPH SAITER used Metabolife 356 for its intended purposes.

97.    JOSEPH SAITER could not have discovered any defects in the product through the exercise of reasonable care or diligence.

98.    The warnings given by Defendant were not accurate, thorough, clear or unambiguous.

99.    Defendant had a continuing duty to warn JOSEPH SAITER, of the dangers associated with the use of Metabolife 356.

100.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

## COUNT XI

## NEGLIGENCE OF DEFENDANT, DIXIE HEALTH OF

## PENSACOLA, INC d/b/a SMOOTHIE KING

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

101.    Defendant, directly or indirectly, negligently and/or defectively distributed, promoted, marketed, advertised, and/or sold Metabolife 356 in the State of Florida.

102.    At all times material to this action, Defendants had a duty to any/all consumers including JOSEPH SAITER, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distributing, promoting and selling of Metabolife 356.

103.    Defendant breached the duty owed to JOSEPH SAITER, and acted negligently in its actions and representations toward JOSEPH SAITER, including, but not limited to, the following:



(a)    Failed to include adequate warnings at the point of sale that would alert consumers to the potential risk and serious side effects of Metabolife 356.

(b)    Failed to adequately and properly test the supplement or ensure that it was tested before placing Metabolife 356 on the market.

(c)    Failed to conduct sufficient testing on the supplement which, if properly performed, would have shown that Metabolife 356 has serious side effects.

(d)    Failed to conduct sufficient testing of Metabolife 356 to eliminate non-uniform and non-standard delivery of the ingredients with each pill.

(e)    Failed to promulgate, adopt and implement adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery.

(f)    Failed to adequately warn JOSEPH SAITER, that use of Metabolife 356 carried a risk of organ damage including stroke, heart attack and death.

(g)    Failed to warn Plaintiff that use of the product carried a risk of disabling conditions.

(h)    Failed to provide adequate after-marketing warnings or instructions after Defendant knew or should have known of the significant risks associated with the use of Metabolife 356.

104.    Despite Defendant knowing or having reason to know that Metabolife 356 caused unreasonably dangerous risks and serious side effects of which the Plaintiff could not and would not be aware, Defendant nevertheless advertised, marketed, sold and distributed the supplement knowing that there were safer methods and alternatives to the treatment of obesity.

105.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.     Bodily injury and any resulting pain and suffering;

b.     Mental anguish;

c.     Disability and physical impairment;

d.     Loss of capacity for the enjoyment of life;

e.     Lost wages in the past and impaired earning capacity;

f.     Inconvenience;

g.     Medical expenses, past and future;

h.     Costs of suit incurred herein;

i.     Pre-judgment interest as provided by law; and

j.     Such other and further relief as the Court may deem just and proper.

## COUNT XII

## FRAUD AND MISREPRESENTATION OF DEFENDANT,

## DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

106.    Defendant fraudulently, intentionally and/or negligently misrepresented, in its display of the Metabolife 356 label upon its shelves the safety and effectiveness of Metabolife 356 and/or fraudulently, intentionally or negligently concealed material, adverse information regarding the safety and effectiveness of Metabolife 356.  A sample of this adverse information available to Defendant includes, but is not limited to:

37

a.    There were 926 cases of possible ma huang toxicity reported to the Food and Drug Administration between 1995-1997. In 37 patients (23 women and 14 men) use of ma huang was temporally related to stroke (in 16), myocardial infarction (in 10), or sudden death (in 11). Autopsies performed in 7 of the 11 patients who experienced sudden death showed a normal heart in 1, coronary atherosclerosis in 3, and cardiomyopathies in 3. In 36 of the 37 patients, use of ma huang was reported to be within the manufacturers' dosing guidelines. They concluded that: (1) ma huang use is temporally related to stroke, myocardial infarction, and sudden death; (2) underlying heart or vascular disease is not a prerequisite for ma huang-related adverse events; and (3) the cardiovascular toxic effects associated with ma huang were not limited to massive doses.

b.    Defendant knew or should have known that one of the components of ephedra alkaloids is norephedrine, also known as phenylpropanolamine (PPA). Defendant knew or should have known that a Yale University study indicated that PPA increases the risk of hemorrhagic stroke (bleeding into the brain or into tissue surrounding the brain) in women. Defendant knew or should have known that Metabolife 356 had norephedrine (PPA) in the product and still continued to market the product and placed consumers at risk.

c.    Defendant knew or should have known that Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine was known to present health hazards including causing cardiovascular, cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients inherently dangerous.    Metabolife 356 was placed in the stream of commerce containing Guarana Extract (Caffeine) and Ma Huang Extract (Ephedra).



107.    Defendant's display of the claims made on the Metabolife 356 label were communicated with the intent that the representations reach Plaintiff. Despite their knowledge concerning the dangers of ephedra, alone or in combination with other active ingredients, Defendants intentionally failed to make any changes in its display in order to alert consumers of the known dangers of Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss. These actions by Defendant were false and misleading and allowed the continuation of purchases by JOSEPH SAITER and subsequent harm to JOSEPH SAITER. JOSEPH SAITER read and relied to his detriment upon the representations made on the label and by the Smoothie King Franchises, Inc. employee.

108.    Defendant knew or should have known that the representations regarding the safety and efficacy of Metabolife 356 were false.

109.    Defendant, in its display of the Metabolife 356 label and statements made by its employee made misrepresentations and/or actively concealed information, such as that specified above, pertinent to the supplement with the intention and specific desire that the Plaintiff and the consuming public would rely on the misrepresentation and purchase Metabolife 356 as a treatment for obesity.

110.    Defendant, in its display of the Metabolife 356 label, negligently concealed this material, adverse information regarding the safety and effectiveness of its product.

111.    Defendant made representations, in its display of the Metabolife 356 label, and actively concealed adverse information at a time when Defendant knew or should have known that Metabolife 356 had defects, dangers and characteristics that were other than what Defendant had represented to the consuming public. These representations were made in an effort to market

39



Metabolife 356 as a safe, natural means of weight loss despite Defendants knowledge regarding serious adverse consequences that had been reported regarding ephedra ingestion.

112.    The misrepresentations and/or act of concealment by Defendant includes, but is not limited to, the following:

(a)    Defendant misrepresented, in displaying the Metabolife 356 label and through the oral statements of its employee, that there had been clinical research studies proving the effectiveness and lack of harm of the supplement.

(b)    Defendant knew that there had been insufficient or inadequate testing of the supplement when Defendant displayed, promoted and sold Metabolife 356 as if it were fully and adequately tested.

(c)    Defendant failed to undertake sufficient studies regarding the safety and efficacy of the use of Metabolife 356 with other products including products containing caffeine.

(d)    JOSEPH SAITER read and relied upon the representations made on the label and in advertisements regarding the safety and effectiveness of Metabolife 356. These advertisements failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

113.    Despite knowing that there was insufficient and inadequate testing of Metabolife 356, Defendant, in displaying the claims made on the Metabolife 356 label, promoted and/or sold Metabolife 356 as if it were fully and adequately tested.

114.    Defendant failed to advise JOSEPH SAITER, and others that prior studies, research, reports and/or testing connected and linked Metabolife 356's ingredient Ephedra or Ephedrine either alone or in combination with other products such as caffeine, to serious adverse reactions and events over and above what other dietary supplements caused.

40

115. Defendant misrepresented and/or actively concealed information that Metabolife 356 usage was associated with stroke, heart attack and death.

116. The misrepresentations and/or act of concealment by Defendant was perpetuated directly and indirectly by Defendant and its sales representatives, employees, distributors, agents, retailers and/or detail persons. Defendant was responsible for ensuring that its retail stores and its employees convey to the consumers accurate and complete information regarding the products sold at those stores.

117. The misrepresentations and/or acts of concealment by Defendant constitute a continuing tort.

118. Defendant continued to display and sell Metabolife 356 as a safe, more effective weight loss dietary supplement than the other supplements on the market. The representations made by Defendant were false and misleading and allowed the continuation of the sale of Metabolife 356 to other consumers, and subsequent harm to numerous consumers, including JOSEPH SAITER.

119. Through Defendant's display of the Metabolife 356 label Defendant continued to misrepresent potential risks and complications associated with the use of Metabolife 356.

120. Defendant misrepresented the safety and efficacy of Metabolife 356 in its labeling, advertising, promotional materials and other marketing efforts.

121. JOSEPH SAITER justifiably relied on the representations and/or act of concealment of Defendant to his own detriment.

122. As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

<div align="center">

### COUNT XIII

### BREACH OF EXPRESS AND/OR IMPLIED WARRANTY BY DEFENDANT, DIXIE

### HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING

</div>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

123.    At the time and place of the sale of Metabolife 356, Defendant expressly represented and warranted that the product was safe, and impliedly warranted that the product was reasonably fit for its intended purpose, and was of marketable quality. In fact, however, the product was unfit and unsafe for ingestion by users. The express warranty for Metabolife 356, in effect at the time of purchase, was made in advertising materials and on the product packaging label. JOSEPH SAITER read and relied to his detriment upon the representations made in the

marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

124.    JOSEPH SAITER read and relied upon the representations made on the label, in brochures and in advertisements regarding the safety and effectiveness of Metabolife 356. These representations failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

125.    At the time and place of the sale of Metabolife 356, the product was not reasonably fit or safe for its intended purpose and, therefore, was not of marketable quality, and constituted potentially an extreme hazard and danger to persons using said product. Defendant breached these warranties by failing to warn of known or readily ascertainable risks associated with Metabolife 356.

126.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.     Pre-judgment interest as provided by law; and

j.     Such other and further relief as the Court may deem just and proper.

## COUNT XIV

## STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT,

## SMOOTHIE KING FRANCHISES, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

127.    At all times material to this action, Defendant engaged in the business of selling, distributing, supplying, marketing and promoting the dietary supplement Metabolife 356, which is defective and unreasonably dangerous to consumers, including JOSEPH SAITER.

128.    At all times material to this action Metabolife 356 was sold, distributed, supplied, marketed and/or promoted by Defendant; Metabolife 356 was expected to reach, and did reach, consumers in the State of Florida, including Plaintiff, without substantial difference between the condition in which it was manufactured and sold.

129.    At all times material to this action, Metabolife 356, was sold, marketed, distributed, supplied, and/or promoted by Defendant in a defective and unreasonably dangerous condition.

130.    The product was defective and unreasonably dangerous in one or more of the following particulars:

(a)     When placed in the stream of commerce, and when received and sold by this defendant, the supplement contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting JOSEPH SAITER, to risks which exceeded the benefits of the product;

44

(b)    When placed in the stream of commerce, and when received and sold by this defendant, the supplement was defective in design and formulation, thereby making the use of the supplement more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the underlying condition for which the supplement was prescribed.

(c)    The supplement was insufficiently and inadequately tested.

(d)    The supplement caused harmful side effects which outweighed potential utility;

(e)    The supplement was not accompanied by adequate instructions and/or warnings to apprise consumers, including Plaintiff, of the full nature or extent of the risks and side effects associated with the use of Metabolife 356, thereby rendering Defendant liable to Plaintiff, individually and collectively.

(f)    The supplement was not manufactured with adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery with each pill.

(g)    Defendant placed Metabolife 356 in the stream of commerce when it knew or should have known that Metabolife 356 would be used in conjunction with other products on the market including products containing caffeine, and that substantial risk of harm was posed to consumers utilizing Metabolife 356 either alone or in conjunction with other products.

131.    Defendant failed to provide a reasonably safe alternative formulation of Metabolife 356 when Defendant knew or should have known that other dietary supplements were available and existing in the market which could safely offer the



consumer a weight loss option without subjecting them to the risk to which Metabolife

356 subjected the consumer.

132.    As a direct and proximate result of the defective condition of the product,

JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of

them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

## COUNT XV

## STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT, SMOOTHIE

## KING FRANCHISES, INC. (FAILURE TO WARN)

Plaintiff re-alleges and incorporates herein by reference each and every factual

allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

133.   Metabolife 356 was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including JOSEPH SAITER, of the dangerous risks and reactions associated with consuming Metabolife 356.   JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

134.   JOSEPH SAITER used Metabolife 356 for its intended purposes.

135.   JOSEPH SAITER could not have discovered any defects in the product through the exercise of reasonable care or diligence.

136.   The warnings given by Defendant were not accurate, thorough, clear or unambiguous.

137.   Defendant had a continuing duty to warn JOSEPH SAITER, of the dangers associated with the use of Metabolife 356.

138.   As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.      Inconvenience;

g.      Medical expenses, past and future;

h.      Costs of suit incurred herein;

i.      Pre-judgment interest as provided by law; and

j.      Such other and further relief as the Court may deem just and proper.

## COUNT XVI

## NEGLIGENCE OF DEFENDANT, SMOOTHIE KING FRANCHISES, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

139.    Defendant, directly or indirectly, negligently and/or defectively distributed, promoted, marketed, advertised, and/or sold Metabolife 356 in the State of Florida.

140.    At all times material to this action, Defendants had a duty to any/all consumers including JOSEPH SAITER, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distributing, promoting and selling of Metabolife 356.

141.    Defendant breached the duty owed to JOSEPH SAITER, and acted negligently in its actions and representations toward JOSEPH SAITER, including, but not limited to, the following:

(a)     Failed to include adequate warnings at the point of sale that would alert consumers to the potential risk and serious side effects of Metabolife 356.

(b)     Failed to adequately and properly test the supplement or ensure that it was tested before placing Metabolife 356 on the market.

(c)    Failed to conduct sufficient testing on the supplement which, if properly performed, would have shown that Metabolife 356 has serious side effects.

(d)    Failed to conduct sufficient testing of Metabolife 356 to eliminate non-uniform and non-standard delivery of the ingredients with each pill.

(e)    Failed to promulgate, adopt and implement adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery.

(f)    Failed to adequately warn JOSEPH SAITER, that use of Metabolife 356 carried a risk of organ damage including stroke, heart attack and death.

(g)    Failed to warn Plaintiff that use of the product carried a risk of disabling conditions.

(h)    Failed to provide adequate after-marketing warnings or instructions after Defendant knew or should have known of the significant risks associated with the use of Metabolife 356.

142.    Despite Defendant knowing or having reason to know that Metabolife 356 caused unreasonably dangerous risks and serious side effects of which the Plaintiff could not and would not be aware, Defendant nevertheless advertised, marketed, sold and distributed the supplement knowing that there were safer methods and alternatives to the treatment of obesity.

143.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

49

b.      Mental anguish;

c.      Disability and physical impairment;

d.      Loss of capacity for the enjoyment of life;

e.      Lost wages in the past and impaired earning capacity;

f.       Inconvenience;

g.      Medical expenses, past and future;

h.      Costs of suit incurred herein;

i.       Pre-judgment interest as provided by law; and

j.       Such other and further relief as the Court may deem just and proper.

## COUNT XVII

## FRAUD AND MISREPRESENTATION OF DEFENDANT,

## SMOOTHIE KING FRANCHISES, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

144.    Defendant fraudulently, intentionally and/or negligently misrepresented, in its display of the Metabolife 356 label upon its shelves the safety and effectiveness of Metabolife 356 and/or fraudulently, intentionally or negligently concealed material, adverse information regarding the safety and effectiveness of Metabolife 356. A sample of this adverse information available to Defendant includes, but is not limited to:

a.      There were 926 cases of possible ma huang toxicity reported to the Food and Drug Administration between 1995-1997. In 37 patients (23 women and 14 men) use of ma huang was temporally related to stroke (in 16), myocardial infarction (in 10), or sudden death (in 11). Autopsies performed in 7 of the 11 patients who experienced

sudden death showed a normal heart in 1, coronary atherosclerosis in 3, and cardiomyopathies in 3. In 36 of the 37 patients, use of ma huang was reported to be within the manufacturers' dosing guidelines. They concluded that: (1) ma huang use is temporally related to stroke, myocardial infarction, and sudden death; (2) underlying heart or vascular disease is not a prerequisite for ma huang-related adverse events; and (3) the cardiovascular toxic effects associated with ma huang were not limited to massive doses.

     b.    Defendant knew or should have known that one of the components of ephedra alkaloids is norephedrine, also known as phenylpropanolamine (PPA). Defendant knew or should have known that a Yale University study indicated that PPA increases the risk of hemorrhagic stroke (bleeding into the brain or into tissue surrounding the brain) in women. Defendant knew or should have known that Metabolife 356 had norephedrine (PPA) in the product and still continued to market the product and placed consumers at risk.

     c.    Defendant knew or should have known that Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine was known to present health hazards including causing cardiovascular, cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients inherently dangerous.  Metabolife 356 was placed in the stream of commerce containing Guarana Extract (Caffeine) and Ma Huang Extract (Ephedra).

     145.    Defendant's display of the claims made on the Metabolife 356 label were communicated with the intent that the representations reach Plaintiff.  Despite their knowledge concerning the dangers of ephedra, alone or in combination with other active

51



ingredients, Defendants intentionally failed to make any changes in its display in order to alert consumers of the known dangers of Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss. These actions by Defendant were false and misleading and allowed the continuation of purchases by JOSEPH SAITER and subsequent harm to JOSEPH SAITER. JOSEPH SAITER read and relied to his detriment upon the representations made on the label.

146.    Defendant knew or should have known that the representations regarding the safety and efficacy of Metabolife 356 were false.

147.    Defendant, in its display of the Metabolife 356 label and statements made by its employee made misrepresentations and/or actively concealed information, such as that specified above, pertinent to the supplement with the intention and specific desire that the Plaintiff and the consuming public would rely on the misrepresentation and purchase Metabolife 356 as a treatment for obesity.

148.    Defendant, in its display of the Metabolife 356 label, negligently concealed this material, adverse information regarding the safety and effectiveness of its product.

149.    Defendant made representations, in its display of the Metabolife 356 label, and actively concealed adverse information at a time when Defendant knew or should have known that Metabolife 356 had defects, dangers and characteristics that were other than what Defendant had represented to the consuming public. These representations were made in an effort to market Metabolife 356 as a safe, natural means of weight loss despite Defendants knowledge regarding serious adverse consequences that had been reported regarding ephedra ingestion.

150.    The misrepresentations and/or act of concealment by Defendant includes, but is not limited to, the following:

(a)    Defendant misrepresented, in displaying the Metabolife 356 label and through the oral statements of its employee, that there had been clinical research studies proving the effectiveness and lack of harm of the supplement.

(b)    Defendant knew that there had been insufficient or inadequate testing of the supplement when Defendant displayed, promoted and sold Metabolife 356 as if it were fully and adequately tested.

(c)    Defendant failed to undertake sufficient studies regarding the safety and efficacy of the use of Metabolife 356 with other products including products containing caffeine.

(d)    JOSEPH SAITER read and relied upon the representations made on the label and in advertisements regarding the safety and effectiveness of Metabolife 356. These advertisements failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

151.    Despite knowing that there was insufficient and inadequate testing of Metabolife 356, Defendant, in displaying the claims made on the Metabolife 356 label, promoted and/or sold Metabolife 356 as if it were fully and adequately tested.

152.    Defendant failed to advise JOSEPH SAITER, and others that prior studies, research, reports and/or testing connected and linked Metabolife 356's ingredient Ephedra or Ephedrine either alone or in combination with other products such as caffeine, to serious adverse reactions and events over and above what other dietary supplements caused.

153.    Defendant misrepresented and/or actively concealed information that Metabolife 356 usage was associated with stroke, heart attack and death.

154.    The misrepresentations and/or act of concealment by Defendant was perpetuated directly and indirectly by Defendant and its sales representatives, employees, distributors, agents, retailers and/or detail persons.    Defendant was responsible for ensuring that its retail stores and its employees convey to the consumers accurate and complete information regarding the products sold at those stores.

155.    The misrepresentations and/or acts of concealment by Defendant constitute a continuing tort.

156.    Defendant continued to display and sell Metabolife 356 as a safe, more effective weight loss dietary supplement than the other supplements on the market.    The representations made by Defendant were false and misleading and allowed the continuation of the sale of Metabolife 356 to other consumers, and subsequent harm to numerous consumers, including JOSEPH SAITER.

157.    Through Defendant's display of the Metabolife 356 label Defendant continued to misrepresent potential risks and complications associated with the use of Metabolife 356.

158.    Defendant misrepresented the safety and efficacy of Metabolife 356 in its labeling, advertising, promotional materials and other marketing efforts.

159.    JOSEPH SAITER justifiably relied on the representations and/or act of concealment of Defendant to his own detriment.

160.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

## COUNT XVIII

## BREACH OF EXPRESS AND/OR IMPLIED WARRANTY BY DEFENDANT, SMOOTHIE KING FRANCHISES, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

161.    At the time and place of the sale of Metabolife 356, Defendant expressly represented and warranted that the product was safe, and impliedly warranted that the product was reasonably fit for its intended purpose, and was of marketable quality.  In fact, however, the product was unfit and unsafe for ingestion by users.  The express warranty for Metabolife 356, in effect at the time of purchase, was made in advertising materials and on the product packaging label.  JOSEPH SAITER read and relied to his

detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

162.     JOSEPH SAITER read and relied upon the representations made on the label, in brochures and in advertisements regarding the safety and effectiveness of Metabolife 356. These representations failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

163.     At the time and place of the sale of Metabolife 356, the product was not reasonably fit or safe for its intended purpose and, therefore, was not of marketable quality, and constituted potentially an extreme hazard and danger to persons using said product. Defendant breached these warranties by failing to warn of known or readily ascertainable risks associated with Metabolife 356.

164.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.     Bodily injury and any resulting pain and suffering;

b.     Mental anguish;

c.     Disability and physical impairment;

d.     Loss of capacity for the enjoyment of life;

e.     Lost wages in the past and impaired earning capacity;

f.      Inconvenience;

g.     Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

THOMAS F. GONZALEZ
Florida Bar No.: 0173878
J. NIXON DANIEL, III
Florida Bar No.: 228761
JOHN F. WINDHAM
Florida Bar No.: 203394
BEGGS & LANE
501 Commendencia Street
Post Office Box 12950
Pensacola, Florida 32591-2950
(850) 432-2451
Fax: 469-3330/1
TIM OBRIEN, ESQUIRE
FL Bar #0007552
Levin, Papantonio, Thomas, Mitchell,
Echsner & Proctor, P.A.
Post Office Box 12308 (32581)
316 S. Baylen Street (32501)
Pensacola, FL 32581
850-435-7079 (phone)
850-436-6130 (fax)

# IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,

      Plaintiff,                              CASE NO.: 04-000299-CA

vs.

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.

      Defendants.
_____/

## DEFENDANT, METABOLIFE INTERNATIONAL, INC.'S, ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant, METABOLIFE INTERNATIONAL, INC. (hereinafter "Metabolife"), by and through its undersigned counsel and pursuant to Fla. R. Civ. P. 1.110, hereby answers Plaintiff's First Amended Complaint ("Complaint") and states in response thereto as follows:

1.      Defendant admits for jurisdictional purposes only that Plaintiff seeks damages in excess of the jurisdictional threshold of the Court, exclusive of interest and costs.

2.      Defendant denies, severally, all remaining material allegations of Plaintiff's Complaint including all inferences therefrom and demands strict proof thereof.

### DEFENSES AND AFFIRMATIVE DEFENSES

By way of defense and affirmative defense, Defendant states the following:

### FIRST DEFENSE

Plaintiff's claims are barred by the applicable statutes of limitations.

1

## SECOND DEFENSE

Plaintiff's Complaint fails to state a cause of action for strict liability (defective design), strict liability (failure to warn), negligence, and fraud and misrepresentation.

## THIRD DEFENSE

The alleged damages were proximately caused by the intentional or negligent acts or omissions of Plaintiff, Joseph Saiter ("Saiter"), or third parties over whom Defendant had no control, whom Defendant will identify with as much particularity as is feasible as discovery progresses and in sufficient time to allow Plaintiff to respond and/or file amended pleadings. Thus, Plaintiff's claims should be barred or proportionately reduced by the negligence or intentional acts of Saiter and/or such third parties.

## FOURTH DEFENSE

The product was not used for its intended purpose and therefore, Defendant is not liable for Plaintiff's damages.

## FIFTH DEFENSE

That the injuries and damages complained of in Plaintiff's Complaint were legally and proximately caused by and arose out of risks of which Saiter had knowledge and understanding and voluntarily assumed. Therefore, Plaintiff's claims should be barred or proportionately reduced by that amount of risk which Saiter had knowledge of and voluntarily assumed.

## SIXTH DEFENSE

Saiter is and was, at all times material hereto, a sophisticated user of the subject product. Therefore, Plaintiff's claims should be barred or proportionately reduced.

## SEVENTH DEFENSE

The Plaintiff failed and/or refused to reasonably mitigate his damages, if any, thus barring or proportionately reducing Plaintiff's recovery, if any.

## EIGHTH DEFENSE

Saiter did not exercise ordinary care, caution or prudence for his own safety or protection, and the resultant injuries and/or damages, if any, sustained by Plaintiff was proximately contributed to and caused by said carelessness and negligence, thus barring or diminishing Plaintiff's recovery.

## NINTH DEFENSE

The subject product was altered after if left Defendant's possession and/or control.

## TENTH DEFENSE

Adequate warnings were provided to consumers of the subject product, including Saiter. Further, the warnings provided adequately warned consumers of particular risks that were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

## ELEVENTH DEFENSE

Plaintiff's allegations are barred by the doctrine of federal preemption.

## TWELFTH DEFENSE

Plaintiff's damages, if any, were proximately caused by the unauthorized, unreasonable, or unforeseeable use of the subject product by Saiter, thus barring or diminishing Plaintiff's recovery.

3

## THIRTEENTH DEFENSE

Saiter voluntarily assumed the risk of the activities alleged in the Complaint, and the resultant damages, if any, sustained by Saiter were proximately caused or contributed to by such voluntary assumption of the risk.

## FOURTEENTH DEFENSE

Saiter, by his own conduct or otherwise, has waived any claim for relief or claims that he may have against Defendant, or is estopped, due to unclean hands, laches or otherwise, to assert any wrongful conduct on the part of the Defendant.

## FIFTEENTH DEFENSE

Metabolife International, Inc. manufactured, developed, produced, and/or distributed its product in full compliance with any and all governmental regulations and/or specifications.

## SIXTEENTH DEFENSE

Saiter and/or other persons without Defendant's knowledge and/or approval, redesigned, modified, altered and used the subject product, contrary to instructions, warnings, and the custom and practice of the industry, so as to substantially change the character of the subject product. If the subject product is defective in any way, which defectiveness is specifically denied, then such defectiveness resulted solely from the redesign, modification, alteration, use or other changes therein and not from any act or omission of the Defendant. Therefore, any such defect, if any, so created by Saiter and/or other persons or parties, was the sole proximate cause of the injuries and/or damages, if any, allegedly suffered by Plaintiff.

4

## SEVENTEENTH DEFENSE

Any injuries or damages suffered by Plaintiff, the existence of which are specifically denied, are the direct and proximate result of Saiter's particular, idiosyncratic, peculiar or unforeseeable susceptibility to the subject product, which reaction was not the result of any conduct or omission on the part of Defendant, nor the result of any defect in the subject product manufactured, developed, produced, and/or distributed by the Defendant.

## EIGHTEENTH DEFENSE

In light of all relevant factors, the benefits of the design of the product alleged to have caused injury to Saiter, outweigh the risk and danger, if any, inherent in the design of said product.

## NINETEENTH DEFENSE

The subject product, when manufactured, developed, produced, and/or distributed, conformed to the then current applicable industry standards and state of the art, and because the then current state of the art medical, scientific, and industrial knowledge, art and practice were such that the Defendant did not and could not know that the product might pose a risk of harm when used in a normal and foreseeable manner.

## TWENTIETH DEFENSE

Defendant alleges that in the event Plaintiff establishes that any use of the subject product was a proximate cause of any injury to Saiter, which Defendant specifically denies, then said use would have been so minimal as to be insufficient to establish within a reasonable degree of medical probability that the subject product was the proximate cause of Saiter's alleged injuries.

5

### TWENTY-FIRST DEFENSE

The state of technical or scientific knowledge regarding the subject product and its design or manufacture, at all times material hereto, was such that Defendant neither knew, nor reasonably should have known, that the subject product posed any risk of harm to Saiter if such product was used properly.

### TWENTY-SECOND DEFENSE

Plaintiff's action is barred by prior and/or pending class action cases of which Saiter is a putative member and is therefore bound by those cases including, but not limited to Francella Perez et. al. v. Metabolife Int'l, Inc., Case No. 02-22850-CIV Huck/Turnoff and by Florida's prohibition against claims splitting.

### TWENTY-THIRD DEFENSE

That pursuant to Section 768.76, Florida Statutes, Defendant is entitled to a set-off from any recovery against it to the extent of the value of all benefits paid or payable to or on behalf of Plaintiff from any collateral source.

### TWENTY-FOURTH DEFENSE

Defendant alleges that the provisions of Section 768.81, Florida Statutes, are applicable and thereby diminish Plaintiff's recovery against the Defendant by that percentage of negligence attributable to Saiter.  Defendant's liability shall be limited to their percentage of responsibility for Plaintiff's damages, if any, and not on the basis of the doctrine of joint and several liability, and that Defendant's percentage of responsibility shall be further limited by that percentage of responsibility attributable to third parties.

6

## TWENTY-FIFTH DEFENSE

Defendant claims as a set-off, any monies received by Plaintiff through settlement, judgment or agreement between the Plaintiffs and any party or non-party to this action.

## TWENTY-SIXTH DEFENSE

The subject product, Metabolife 356, is not unreasonably dangerous as a matter of law.

## TWENTY-SEVENTH DEFENSE

If the subject product is dangerous in any way, which dangerousness is specifically denied, then such dangerousness was open and obvious to Saiter.

## TWENTY-EIGHTH DEFENSE

Plaintiff's alleged injuries are the result of a pre-existing medical condition, and accordingly, Plaintiff is barred from recovery.

## DEMAND FOR JURY TRIAL

Defendant demands trial by jury on all issues so triable.

## RESERVATION OF DEFENSES

Defendant reserves the right to assert all other affirmative defenses that become known to it throughout the course of discovery of this cause.

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via U.S. Mail on May 14th, 2004 to: Thomas F. Gonzalez, Esq., 501 Commendencia Street, P.O. Box 12950, Pensacola, Florida 32591-2950; and Tim O'Brien, Esq., 316 Baylen Street, Post Office Box 12308, Pensacola, Florida 32581.

RONALD E. CABANISS, ESQUIRE
Florida Bar No. 208159
LARRY D. SMITH, ESQUIRE
Florida Bar No. 442331
JASON P. HERMAN, ESQUIRE
Florida Bar No. 149357
CABANISS SMITH TOOLE & WIGGINS, PL
485 North Keller Road, Suite 401
P.O. Box 945401 (32794-5401)
Maitland, Florida 32751
Telephone: 407/246-1800
Facsimile: 407/246-1895
Attorneys for Metabolife International, Inc.

IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,                          )
                                        )
              Plaintiff,                )
                                        )
vs.                                     )        Case No.: 04-000299CA
                                        )
METABOLIFE INTERNATIONAL, INC.          )
THE CHEMINS·COMPANY,·INC. and           )
DIXIE HEALTH OF PENSACOLA, INC.         )
d/b/a SMOOTHIE KING, SMOOTHIE KING       )
FRANCHISES, INC.                        )
                                        )
              Defendants.               )
_____/

## ANSWER OF SMOOTHIE KING FRANCHISES, INC.

Defendant, Smoothie King Franchises, Inc. ("Defendant"), answers the First Amended Complaint and states as follows:

1.     Defendant admits the allegations of subpart (j) of paragraph 1 for jurisdictional purposes only.

2.     As to paragraph 1(h), Defendant admits that it is a foreign, for profit corporation. Defendant denies the remaining allegations of paragraph 1(h).

3.     Defendant is without knowledge of, and therefore denies, the allegations of paragraphs 1 (a)-(g), 1(i), 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18.

4.     The following allegations do not make any claim for relief against this answering Defendant and no response thereto is required: Count I (paragraphs 19-24); Count II (paragraphs 25-31); Count III (paragraphs 32-36); Count IV (paragraphs 37 – 53); Count V (paragraphs 54-59); Count VI (paragraphs 60-66); Count VII (paragraphs 67-71); and, Count VIII (paragraphs

72-88). To the extent any of the foregoing Counts and paragraphs purport to make allegations against this answering Defendant, those allegations are denied.

5.    The following allegations do not make any claim for relief against this answering Defendant and no response thereto is required Count IX (paragraphs 89-94); Count X (paragraphs 95-100); Count XI (paragraphs 101-105); Count XII (paragraphs 106-122); and, Count XIII (paragraphs 123-126). To the extent any of the foregoing Counts and paragraphs purport to make allegations against this answering Defendant, those allegations are denied. Defendant specifically avers that it was not engaged in a "joint venture relationship" with Dixie Health of Pensacola, Inc. d/b/a Smoothie King as alleged by Plaintiff.

6.    Even though Count XII, and all numbered paragraphs, pertain solely to another named defendant., this answering Defendant further denies the allegations of Count XII, paragraph 107 in total and specifically denies any allegations whereby Plaintiff seeks to impose liability on this answering Defendant by Plaintiff's reference to an unnamed Smoothie King Franchises, Inc. employee.

7.    Defendant denies the allegations of Count XIV (paragraphs 127-132); Count XV (paragraphs 133-138); Count XVI (paragraphs 139-143); Count XVII (paragraphs 144-160); and, Count XVIII (161-164) and demands strict proof thereof.

8.    To the extent Plaintiff incorporates additional numbered paragraphs into any and all causes of action without enumerating same, Defendant incorporates its responses as above to paragraphs 1-18.

9.    Defendant denies that Plaintiff may demand a jury trial because Plaintiff waived said right. See Fla.R.Civ.P. 1.430.

## AFFIRMATIVE DEFENSES

10.   Plaintiff's First Amended Complaint fails to state a cause of action against this answering Defendant upon which relief can be granted on all counts.

11.   The injuries and damages claimed by Plaintiff were caused, in whole or in part, by the actions or omissions of others for whose conduct this answering Defendant is not responsible.  In addition to other named Defendants, this answering Defendant affirmatively suggests the manufacturer of the product and/or distributor of the product as parties responsible, in whole, or in part, for Plaintiff's claimed damages. § 768.81, Fla. Stat.  Defendant reserves the right to identify other parties and/or unnamed third parties as discovery proceeds, according to law, and as permitted by this Court.

12.   Defendant is entitled to a set-off from any recovery and to all benefits paid or payable to Plaintiff pursuant to § 768.76, Fla. Stat.

13.   Plaintiff's claims should be barred or reduced by a proportionate share because the damages and injuries, if any, were legally and proximately caused by and arose out of risks which Plaintiff had knowledge of, understanding of, and voluntarily assumed.

14.   Plaintiff failed or refused to mitigate his damages.

15.   Defendant did not know, and had no reasonable way of knowing, that the subject product posed any risk of harm to Plaintiff if said product was used properly.

16.   Plaintiff has waived, or is estopped from bringing his claims due to the doctrine of unclean hands, laches, and a failure to assert any wrongful conduct on the part of this answering Defendant.

17.   Plaintiff's alleged injuries, if any, are a result of a pre-existing condition and accordingly, Plaintiff is barred from recovery.

3

18.    Any statement allegedly made by the answering Defendant, or allegedly attributable to said Defendant, was one of mere opinion and/or promises of an indefinite matter, and as such, insufficient to show fraud.

19.    Plaintiff failed to investigate the truth of any statements or opinions which were mere "puffing" and therefore any statements or opinions attributable to the answering Defendant, to the extent identifiable in the First Amended Complaint, do not constitute fraudulent misrepresentations.

20.    Any statement or opinion attributable to the answering Defendant, to the extent identifiable in the First Amended Complaint, was one of opinion rather than one of fact, and therefore not actionable as a fraudulent misrepresentation.

21.    Plaintiff failed to plead fraud with sufficient particularity pursuant to Fla.R.Civ. P. 1.120(b) and this renders any claim of fraud invalid because Plaintiff did not identify who made a false statement, the substance of the false statement, the time frame in which it was made, and the context made, specifically attributable to the answering Defendant.

22.    Plaintiff failed to exercise ordinary care and is therefore contributorily and/or comparatively negligent.

23.    Plaintiff cannot show proof of a defective product and therefore has no cause of action.

24.    This answering Defendant is not a manufacturer, distributor, or retailer and cannot be held liable for any alleged product liability.

25.    This answering Defendant is not in the business of selling the alleged defective product and therefore cannot be held strictly liable.

4




26.    Due to a lack of privity between Plaintiff and the answering Defendant, Plaintiff's cause of action for breach of implied warranty cannot stand.

27.    Plaintiff's own misuse of the product eliminates and/or reduces by a proportionate share, any claim for damages for nonintentional torts.

28.    The damages, as alleged by Plaintiff, were the sole result of an intervening cause and thus Plaintiff's claim for breach of warranty cannot stand.  In the alternative, any alleged damage sustained by Plaintiff should be reduced by a proportionate share attributable to any intervening cause should the Court determine the intervening cause was not be the sole cause of Plaintiff's damages.

WHEREFORE, Defendant prays that Plaintiff take nothing by its action and that it go hence without day.

 

Fredrick H.L. McClure
Florida Bar No.:  147354
Christian C. Burden
Florida Bar No.:  0065129
**PIPER RUDNICK LLP**
101 East Kennedy Boulevard
Suite 2000
Tampa, Florida 33602
813/229-2111
FAX: 813/229-1447
Attorneys for Defendant Smoothie King
Franchises, Inc.

5



## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by depositing same in the United States mail, postage prepaid, to:

Thomas F. Gonzalez, Esq.
J. Nixon Daniel, III, Esq.
John F. Windham, Esq.
Beggs & Lane
501 Commendencia St.
P.O. Box 12950
Pensacola, FL 32591-2950

Tim O'Brien, Esq.
Levin, Papantonio, Thomas, Mitchell,
  Echsner & Proctor, P.A.
316 D. Baylen Street
Pensacola, FL 32501


Ronald E. Cabaniss, Esq.
Larry D. Smith, Esq.
Joseph P. Herman, Esq.
Cabaniss Smith Toole & Wiggins, PL
485 North Keller Road, Ste. 401
Maitland, FL 32751

on this 21st day of May, 2004.

_____
Attorney

~TampDocs:457265.v1

IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER

       Plaintiff,

v.                              CASE NO.:

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.,



       Defendants.

## FIRST AMENDED COMPLAINT

      COME NOW the Plaintiff, JOSEPH SAITER by and through his undersigned attorneys, and sues the Defendants, METABOLIFE INTERNATIONAL, INC., THE CHEMINS COMPANY, INC., DIXIE HEALTH OF PENSACOLA, INC., d/b/a SMOOTHIE KING, and SMOOTHIE KING FRANCHISES, INC.:

### IDENTITY OF THE PARTIES AND JURISDICTION

      1.    This Court has jurisdiction over the parties and subject matter of this action in that:

      (a)    At all times material to this action, Plaintiff, JOSEPH SAITER, was a resident of Santa Rosa County, Florida.

      (b)    At all times herein mentioned, defendant, THE CHEMINS COMPANY, INC. was and is a corporation organized and existing under the laws of the State of Colorado and qualified to do business in the State of Florida.

      (c)    At all times alleged herein, defendants were engaged in the business of licensing, manufacturing, distributing, and/or selling, either directly or indirectly, through third parties or

related entities, a non-prescription nutritional/dietary supplement for sale to, and use by, members of the general public, and as a part of their business, said defendants and each of them, manufactured a purported nutritional/dietary supplement under the proprietary name, Metabolife 356. Plaintiff alleges on information and belief that defendants do business in the State of Florida and at all times relevant hereto they developed, manufactured, and sold in interstate commerce, the aforementioned dietary supplement.

(d)   At all times material to this action, defendants solicited business, engaged in a persistent course of conduct and derived substantial revenue from goods used or consumed or services rendered in Santa Rosa County, Florida and expected or reasonably should have expected their actions to have consequences in Santa Rosa County, Florida and that they would derive substantial revenue from interstate or international commerce involving Santa Rosa County, Florida.

(e)   Defendants METABOLIFE INTERNATIONAL, INC., and THE CHEMINS COMPANY manufactured a product known as Metabolife 356 which it knew and intended or should have known would be supplied to businesses and sold to consumers in Santa Rosa County, Florida.

(f)   METABOLIFE INTERNATIONAL, INC., and THE CHEMINS COMPANY, distributed Metabolife 356 throughout the state of Florida and specifically sold Metabolife 356 to defendant, DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING.

(g)   At all times herein mentioned, defendant, DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING was a for-profit corporation organized in the state of Florida, with its' principal place of business at 203 Gulf Breeze Parkway, Suite B, Gulf Breeze, Florida. DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING, was owned and operated by

Daniel (aka "Danny") K. Johnson, formerly of 4660 Anchor Lane, Pensacola, FL, 32514. Mr. Johnson is believed to currently reside at 1715 Lake Street, Lake Charles, Louisiana, 70601. DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING no longer operates a Smoothie King franchise in Gulf Breeze but has relocated to 1680 Airport Blvd., Suite 900, Pensacola, FL 32504. DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING may be served with the summons and complaint through their registered agent, Mary Robetson, 3205 East Olive Road, Apt 145, Pensacola, Florida, 32514.

(h)      SMOOTHIE KING FRANCHISES, INC., is a foreign, for profit corporation authorized to do business in the state of Florida as Smoothie King Home of the Muscle Punch Franchises. Inc. SMOOTHIE KING FRANCHISES. INC., had and has its headquarters and principal place of business at 2400 Veterans Memorial Blvd., Suite 110, Kenner, LA 70062. They may be served with the summons and complaint in Florida by service upon their registered agent, Corporate Research Solutions. Inc., 1333 N. Duval Street., Tallahassee, Florida 32303. SMOOTHIE KING FRANCHISES, INC., was engaged in a joint venture relationship with DIXIE HEALTH OF PENSACOLA. INC d/b/a SMOOTHIE KING, insofar as the two defendants shared in the profits realized from the sale of Metabolife 356 to consumers in Pensacola, Florida including Joseph Saiter. Plaintiff does not have a copy of the documents forming the basis of the joint venture relationship between these two defendants, however, Plaintiff believes that these documents are in the sole and exclusive possession of the defendants and Plaintiff intends to seek same through discovery.

(i)      In early 2000, Plaintiff, JOSEPH SAITER purchased a bottle of Metabolife 356, in pill form, from DIXIE HEALTH OF PENSACOLA. INC d/b/a SMOOTHIE KING, in Gulf Breeze Florida.

(j)    This is an action for damages in excess of the minimum jurisdictional amount of
this Court.

## FACTUAL BACKGROUND

## FACTS COMMON TO ALL COUNTS

2.    For the many months preceding April 16, 2000, Defendants undertook to
formulate, produce, manufacture, market, sell, and distribute the product called Metabolife 356,
as an advanced weight loss formula and dietary supplement. Defendants claimed to consumers,
including JOSEPH SAITER that Metabolife 356 was comprised of "natural herbs." Metabolife
356 was touted as an "herbal formula to enhance your diet and provide energy." Defendants
claimed that Metabolife 356 was "independently laboratory tested for safety." Through its
labeling and marketing efforts Defendants represented that Metabolife 356 was an all natural,
safe and effective way to lose weight quickly while increasing energy. This effort by Defendant,
Metabolife, was joined by the involvement of Defendant, Chemins, who in the form of a joint
venture relationship with Metabolife, agreed to engineer, produce and manufacture the
ingredients of Metabolife 356, so that such product could then be distributed, marketed and sold
to the consumers of Florida including JOSEPH SAITER. Plaintiff does not have a copy of the
documents forming the basis of the joint venture relationship between, Metabolife and Chemins,
however, Plaintiff believes that these documents are in the sole and exclusive possession of
Metabolife and Chemins and Plaintiff intends to seek same through discovery.

3.    As part of the Metabolife 356 manufacturing process, Defendant, Metabolife and
Chemins, processed Ephedra alkaloids or Ephedrine with the other ingredients making up
Metabolife 356. Ephedra or Ephedrine, either alone or in combination with other ingredients
including caffeine is known to present health hazards including causing cardiovascular.

4

cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients unreasonably dangerous. Metabolife 356 was placed in the stream of commerce containing, Guarana (Caffeine), and Ma Huang Extract (ephedra). This effort by Defendant, Metabolife, was joined by the involvement of Defendant, Chemins, who in the form of a joint venture relationship with Metabolife, agreed to engineer, produce and manufacture the ingredients of Metabolife 356, so that such product could then be distributed, marketed and sold to the consumers of Florida including Joseph Saiter. Plaintiff does not have a copy of the documents forming the basis of the joint venture relationship between, Metabolife and Chemins, however, Plaintiffs believe that these documents are in the sole and exclusive possession of Metabolife and Chemins and Plaintiff intends to seek same through discovery. For the purposes of this complaint and litigation plaintiff will use the terms ephedrine, ephedra, ephedra alkaloids and ma huang to describe the primary active ingredient in Metabolife 356.

4.      In marketing the product to the Florida consumers including JOSEPH SAITER, Defendants intentionally failed to mention in their marketing literature, advertisements, and product labels that their product was inherently dangerous. Rather, Defendants purposely emphasized in their marketing labels that their product was comprised of "natural herbs" combined in an "herbal formula to enhance your diet and provide energy" and claimed that their product was "independently laboratory tested for safety" in order that their profit projections and their returns to their shareholders were maximized. JOSEPH SAITER read and relied upon these claims contained on the Metabolife 356 label to his detriment. Plaintiff is no longer in possession of his Metabolife 356 bottle and its attached label containing the warranties, representations and warnings which are referenced and incorporated in this Complaint. Plaintiff

5

reserves the right to amend this Complaint to attach a copy of this material if found. In the interim or in the event plaintiff is unable to locate the bottle and label, Plaintiff asserts on information and belief that this label or the substance thereof is in the sole and exclusive possession of Metabolife International, Inc., and plaintiff will seek same through discovery.

5.    Despite their superior knowledge concerning the dangers of ephedra, alone or in combination with other active ingredients, Defendants intentionally failed to make any changes in their representations, labels, and/or marketing schemes in order to alert consumers of the known dangers of the ephedra containing product, Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss. These actions by Defendants were false and misleading and allowed the continuation of purchases by ultimate users and subsequent harm to numerous persons including JOSEPH SAITER. JOSEPH SAITER read and relied to his detriment upon the representations made in the product literature including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained on the bottle.

6.    Defendants, directly or indirectly, negligently or defectively, made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, marketed, advertised, and/or sold Metabolife 356 in the State of Florida.

7.    Defendants had control of the design, assembly, packaging, marketing, advertising, manufacturing, labeling, testing, promoting, distributing, and selling of Metabolife 356.

8.    At all times material hereto, Defendants either knew or should have known that the supplement Ephedra or Ephedrine was causally related to and associated with myocardial infarction.

6

9.    Although Defendants knew or should have known of the dangerous propensities of the product, Defendants continued to allow and permit the product to be advertised, promoted, and sold without adequate warning of these dangerous propensities.

10.    In the months prior to April 16, 2000, JOSEPH SAITER read and relied upon the representations made in these materials regarding the safety and effectiveness of Metabolife 356. These materials failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

11.    As a result of claims made by defendants, regarding the safety and effectiveness of Metabolife 356, JOSEPH SAITER purchased Metabolife 356 as a supplement for a weight loss and fitness program.

12.    At the time of and subsequent to purchase JOSEPH SAITER read the label on the bottle including the warnings and use instructions. Thereafter, JOSEPH SAITER began ingesting Metabolife 356 on a daily basis in accord with the use instructions. JOSEPH SAITER consumed the Metabolife 356 product in accordance with the package instructions on a regular basis until April 16, 2000.

13.    By April 16, 2000, JOSEPH SAITER was not consuming any medication or other pills apart from his consumption of Metabolife 356. On or about April 16, 2000, Plaintiff, JOSEPH SAITER, visited Tennessee.

14.    On the morning of April 17, 2000, JOSEPH SAITER suffered a myocardial infarction or as it is commonly called, a heart attack. The heart attack and related injuries, physical and mental impairment, medical care and disability were caused by Plaintiff, JOSEPH SAITER's ingestion of Metabolife 356.

7

15.    Defendants either knew or should have known that the Metabolife 356 product it marketed, distributed and sold contained Ephedra or Ephedrine, and that such supplement was causally related to and associated with stroke, heart attack and death.  At all relevant times defendants produced and sold ephedra containing products under its own name and as such had special knowledge of the dangers represented by ephedra containing products.  The inclusion of ephedra and caffeine in this formula constituted a design defect that was unreasonably dangerous.  Ephedra has a stimulating effect on the human body, particularly the brain, heart and blood vessels.  Ephedra is a sympathomimetic amine and is known to increase heart rate, raise blood pressure by constricting blood vessels, dilate the bronchial tubes and affect brain function.  Caffeine, which, like ephedrine, is an alkaloid, and the other constituents of Metabolife 356, increase the stimulant effect of ephedra alkaloids making them more dangerous by increasing the likelihood of severe adverse effects such as the myocardial infarction suffered by Joseph Saiter.

16.    Although defendants knew or should have known of these dangerous propensities of Metabolife 356, defendants continued to allow and permit the product to be advertised, promoted and sold without adequate warnings of these dangerous propensities.

17.    JOSEPH SAITER's myocardial infarction and the associated permanent injuries were caused by his ingestion of the ephedra containing product, Metabolife 356.

18.    Metabolife was defectively designed.  The specific defect is/was the inclusion in the formula of Ephedra Alkaloids, Caffeine and other ingredients that alone or in combination posed significant health dangers to the intended consumers.  At all times material hereto, Defendants either knew or should have known that the supplement Ephedra or Ephedrine was causally related to and associated with serious adverse events including stroke, heart attack and the myocardial infarction suffered by Joseph Saiter. The inclusion of ephedra and caffeine in this

formula constituted a design defect that was unreasonably dangerous. Ephedra has a stimulating effect on the human body, particularly the brain, heart and blood vessels. Ephedra is a sympathomimetic amine and is known to increase heart rate, raise blood pressure by constricting blood vessels, dilate the bronchial tubes and affect brain function. Caffeine, which, like ephedrine, is an alkaloid, and the other constituents of Metabolife, increase the stimulant effect of ephedra alkaloids making them more dangerous by increasing the likelihood of severe adverse effects such as the myocardial infarction suffered by Joseph Saiter.

<div align="center">

### COUNT I

### STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT, METABOLIFE

### INTERNATIONAL, INC. (DEFECTIVE DESIGN)

</div>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

19.    At all times material to this action, Defendant engaged in the business of selling, distributing, supplying, manufacturing, marketing and promoting its dietary supplement Metabolife 356, which is defective and unreasonably dangerous to consumers, including JOSEPH SAITER.

20.    At all times material to this action Metabolife 356 was sold, distributed, supplied, manufactured, marketed and/or promoted by Defendant; Metabolife 356 was expected to reach, and did reach, consumers in the State of Florida, including Plaintiff, without substantial difference between the condition in which it was manufactured and sold.

<div align="center">

9

</div>

21.    At all times material to this action, Metabolife 356, was sold, marketed, distributed, supplied, manufactured and/or promoted by Defendant in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce.

22.    The product was defective and unreasonably dangerous in one or more of the following particulars:

(a)    When placed in the stream of commerce, the supplement contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting JOSEPH SAITER, to risks which exceeded the benefits of the product;

(b)    When placed in the stream of commerce, the supplement was defective in design and formulation, thereby making the use of the supplement more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the underlying condition for which the supplement was purchased.

(c)    The supplement was insufficiently and inadequately tested.

(d)    The supplement caused harmful side effects which outweighed potential utility;

(e)    The supplement was not accompanied by adequate instructions and/or warnings to apprise consumers, including Plaintiff, of the full nature or extent of the risks and side effects associated with the use of Metabolife 356, thereby rendering Defendants liable to Plaintiff, individually and collectively.

(f)    The supplement was not manufactured with adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery with each pill.

(g)    Defendant placed Metabolife 356 in the stream of commerce when it knew or should have known that Metabolife 356 would be used in conjunction with other products on

10

the market including products containing caffeine, aspirin and other over the counter pain medications, and that substantial risk of harm was posed to consumers utilizing Metabolife 356 either alone or in conjunction with other products.

23.     Defendant failed to provide a reasonably safe alternative formulation of Metabolife 356 when Defendant knew or should have known that other dietary supplements were available and existing in the market which could safely offer the consumer a weight loss option without subjecting them to the risk to which Metabolife 356 subjected the consumer.

24.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

    a.    Bodily injury and any resulting pain and suffering;

    b.    Mental anguish;

    c.    Disability and physical impairment;

    d.    Loss of capacity for the enjoyment of life;

    e.    Lost wages in the past and impaired earning capacity;

    f.     Inconvenience;

    g.    Medical expenses, past and future;

    h.    Costs of suit incurred herein;

    i.     Pre-judgment interest as provided by law; and

    j.     Such other and further relief as the Court may deem just and proper.

11

## COUNT II

## STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT, METABOLIFE

## INTERNATIONAL, INC. (FAILURE TO WARN)


Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

25.    Metabolife 356 was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including JOSEPH SAITER, of the dangerous risks and reactions associated with utilization of Metabolife 356. JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

26.    JOSEPH SAITER used Metabolife 356 for its intended purposes.

27.    JOSEPH SAITER could not have discovered any defects in the product through the exercise of reasonable care or diligence.

28.    Defendant is a manufacturer of a dietary supplement, and is held to the level of knowledge of an expert in the field.

29.    The warnings given by Defendant were not accurate, thorough, clear or unambiguous.

30.    Defendant had a continuing duty to warn JOSEPH SAITER of the dangers associated with the use of Metabolife 356.

31.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.      Bodily injury and any resulting pain and suffering;

b.      Mental anguish;

c.      Disability and physical impairment;

d.      Loss of capacity for the enjoyment of life;

e.      Lost wages in the past and impaired earning capacity;

f.      Inconvenience;

g.      Medical expenses, past and future;

h.      Costs of suit incurred herein;

i.      Pre-judgment interest as provided by law; and

j.      Such other and further relief as the Court may deem just and proper.

## COUNT III

## NEGLIGENCE OF DEFENDANT, METABOLIFE INTERNATIONAL, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

32.     Defendant, directly or indirectly, negligently and/or defectively made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, promoted, marketed, advertised, and/or sold Metabolife 356.

33.     At all times material to this action, Defendants had a duty to any/all consumers including JOSEPH SAITER, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distributing, promoting and selling of Metabolife 356.

34.     Defendant breached the duty owed to JOSEPH SAITER, and acted negligently in its actions and representations toward JOSEPH SAITER, including, but not limited to, the following:

(a)     Failed to include adequate warnings with the supplement that would alert consumers to the potential risk and serious side effects of Metabolife 356.

(b)     Failed to adequately and properly test the supplement before placing Metabolife 356 on the market.

(c)     Failed to conduct sufficient testing on the supplement which, if properly performed, would have shown that Metabolife 356 has serious side effects.

(d)     Failed to conduct sufficient testing of Metabolife 356 to eliminate non-uniform and non-standard delivery of the ingredients with each pill.

(e)     Failed to promulgate, adopt and implement adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery.

(f)     Failed to adequately warn JOSEPH SAITER, that use of Metabolife 356 carried a risk of organ damage including stroke.

(g)     Failed to warn Plaintiff that use of the product carried a risk of disabling conditions.

(h)     Failed to provide adequate after-marketing warnings or instructions after Defendant knew or should have known of the significant risks associated with the use of Metabolife 356.

35.     Despite Defendant knowing or having reason to know that Metabolife 356 caused unreasonably dangerous risks and serious side effects of which the Plaintiff could not and would

not be aware. Defendant nevertheless advertised, marketed, sold and distributed the supplement knowing that there were safer methods and alternatives to the treatment of obesity.

36.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.     Bodily injury and any resulting pain and suffering;

b.     Mental anguish;

c.     Disability and physical impairment;

d.     Loss of capacity for the enjoyment of life;

e.     Lost wages in the past and impaired earning capacity;

f.     Inconvenience;

g.     Medical expenses, past and future;

h.     Costs of suit incurred herein;

i.     Pre-judgment interest as provided by law; and

j.     Such other and further relief as the Court may deem just and proper.

## COUNT IV

## FRAUD AND MISREPRESENTATION OF DEFENDANT,

## METABOLIFE INTERNATIONAL, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

37.     Defendant fraudulently, intentionally and/or negligently misrepresented, in its advertising and labeling to JOSEPH SAITER, and the general public, the safety and

15



effectiveness of Metabolife 356 and/or fraudulently, intentionally or negligently concealed material, adverse information regarding the safety and effectiveness of Metabolife 356. These representations were placed on the product label and other advertising material read and relied on by JOSEPH SAITER in the several months preceding his stroke. JOSEPH SAITER read and relied upon these representations to his detriment. A sample of this adverse information available to Defendant includes, but is not limited to:

    a.    There were 926 cases of possible ma huang toxicity reported to the Food and Drug Administration between 1995-1997. In 37 patients (23 women and 14 men) use of ma huang was temporally related to stroke (in 16), myocardial infarction (in 10), or sudden death (in 11). Autopsies performed in 7 of the 11 patients who experienced sudden death showed a normal heart in 1, coronary atherosclerosis in 3, and cardiomyopathies in 3. In 36 of the 37 patients, use of ma huang was reported to be within the manufacturers' dosing guidelines. They concluded that: (1) ma huang use is temporally related to stroke, myocardial infarction, and sudden death; (2) underlying heart or vascular disease is not a prerequisite for ma huang-related adverse events; and (3) the cardiovascular toxic effects associated with ma huang were not limited to massive doses.

    b.    Defendant knew or should have known that one of the components of ephedra alkaloids is norephedrine, also known as phenylpropanolamine (PPA). Defendant knew or should have known that a Yale University study indicated that PPA increases the risk of hemorrhagic stroke (bleeding into the brain or into tissue surrounding the brain) in women. Defendant knew or should have known that Metabolife 356 had norephedrine (PPA) in the product and still continued to market the product and placed consumers at risk.



c.    Defendant knew or should have known that Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine was known to present health hazards including causing cardiovascular, cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients inherently dangerous.   Metabolife 356 was placed in the stream of commerce containing Guarana Extract (caffeine) and Ma Huang Extract (Ephedra).

38.    Defendant's misrepresentations in its marketing scheme, advertising and labeling were communicated with the intent that the representations reach Plaintiff.  Despite their superior knowledge concerning the dangers of ephedra, alone or in combination with other active ingredients, Defendants intentionally failed to make any changes in its representations, labels, and/or marketing schemes in order to alert consumers of the known dangers of Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss.  These actions by Defendants were false and misleading and allowed the continuation of purchases by ultimate users and subsequent harm to numerous persons including JOSEPH SAITER.  JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein and described herein.

39.    Defendant knew or should have known that the representations regarding the safety and efficacy of Metabolife 356 were false.

40.    Defendant, in its advertising and labeling, made representations on its label and in advertisements and/or actively concealed information, such as that specified above, pertinent to the supplement with the intention and specific desire that the Plaintiff and the consuming public would rely on the misrepresentation and purchase Metabolife 356 as a treatment for obesity.

17

41.    Defendant, in its advertising and labeling, negligently concealed this material, adverse information regarding the safety and effectiveness of its product.

42.    Defendant made representations, in its advertising and labeling, and actively concealed adverse information at a time when Defendant knew or should have known that Metabolife 356 had defects, dangers and characteristics that were other than what Defendant had represented to the consuming public. These representations were made in an effort to market Metabolife 356 as a safe, natural means of weight loss despite Defendants knowledge regarding serious adverse consequences that had been reported regarding ephedra ingestion.

43.    The misrepresentations and/or act of concealment by Defendant includes, but is not limited to, the following:

(a)    Defendant misrepresented, in its advertising and labeling, that there had been clinical research studies proving the effectiveness and lack of harm of the supplement.

(b)    Defendant knew that there had been insufficient or inadequate testing of the supplement when Defendant marketed, promoted and sold Metabolife 356 as if it were fully and adequately tested.

(c)    Defendant failed to undertake sufficient studies regarding the safety and efficacy of the use of Metabolife 356 with other products including products containing caffeine.

44.    Despite knowing that there was insufficient and inadequate testing of Metabolife 356, Defendant, in its advertising and labeling, marketed, promoted and/or sold Metabolife 356 as if it were fully and adequately tested.

45.    Defendant, in its advertising and labeling, failed to advise JOSEPH SATTER, and others that prior studies, research, reports and/or testing connected and linked Metabolife 356's ingredient Ephedra or Ephedrine either alone or in combination with other products such as

18

caffeine, to serious adverse reactions and events over and above what other dietary supplements caused.

46.      Defendant misrepresented and/or actively concealed information that Metabolife 356 usage was associated with stroke, heart attack and death.

47.      The misrepresentations and/or act of concealment by Defendant was perpetuated directly and indirectly by Defendant and its sales representatives, employees, distributors, agents, retailers and/or detail persons.

48.      The misrepresentations and/or acts of concealment by Defendant constitute a continuing tort.

49.      Defendant continued to advertise and market and sell Metabolife 356 as a safe, more effective weight loss dietary supplement than the other supplements on the market. The representations made by Defendant were false and misleading and allowed the continuation of the sale of Metabolife 356 to other consumers, and subsequent harm to numerous patients, including JOSEPH SAITER.

50.      Through Defendant's advertising, labeling and representations, Defendant continued to misrepresent potential risks and complications associated with the use of Metabolife 356.

51.      Defendant misrepresented the safety and efficacy of Metabolife 356 in its labeling, advertising, promotional materials and other marketing efforts.

52.      JOSEPH SAITER justifiably relied on the representations and/or act of concealment of Defendant to his own detriment.

53.      As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.     Bodily injury and any resulting pain and suffering;

b.     Mental anguish;

c.     Disability and physical impairment;

d.     Loss of capacity for the enjoyment of life;

e.     Lost wages in the past and impaired earning capacity;

f.     Inconvenience;

g.     Medical expenses, past and future;

h.     Costs of suit incurred herein;

i.     Pre-judgment interest as provided by law; and

j.     Such other and further relief as the Court may deem just and proper.

## COUNT V

## STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT,

## CHEMINS COMPANY, INC., (DEFECTIVE DESIGN)

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

54.     At all times material to this action, Defendant engaged in the business of selling, distributing, supplying, manufacturing, marketing and promoting its dietary supplement Metabolife 356, which is defective and unreasonably dangerous to consumers, including JOSEPH SAITER.

55.     At all times material to this action Metabolife 356 was sold, distributed, supplied, manufactured, marketed and/or promoted by Defendant; Metabolife 356 was expected to reach,

and did reach. consumers in the State 'of Florida. including Plaintiff, without substantial difference between the condition in which it was manufactured and sold.

56.    At all times material to this action. Metabolife 356. was sold, marketed. distributed. supplied, manufactured and/or promoted by Defendant in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce.

57.    The product was defective and unreasonably dangerous in one or more of the following particulars:

(a)    When placed in the stream of commerce, the supplement contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting JOSEPH SAITER, to risks which exceeded the benefits of the product;

(b)    When placed in the stream of commerce, the supplement was defective in design and formulation, thereby making the use of the supplement more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the underlying condition for which the supplement was prescribed.

(c)    The supplement was insufficiently and inadequately tested.

(d)    The supplement caused harmful side effects which outweighed potential utility;

(e)    The supplement was not accompanied by adequate instructions and/or warnings to apprise consumers. including Plaintiff. of the full nature or extent of the risks and side effects associated with the use of Metabolife 356, thereby rendering Defendants liable to Plaintiff, individually and collectively.

(f)    The supplement was not manufactured with adequate protocol. procedure and/or safeguards to assure uniform and standardized delivery with each pill.

21



(g)    Defendant placed Metabolife 356 in the stream of commerce when it knew or should have known that Metabolife 356 would be used in conjunction with other products on the market including products containing caffeine, and that substantial risk of harm was posed to consumers utilizing Metabolife 356 either alone or in conjunction with other products.

58.    Defendant failed to provide a reasonably safe alternative formulation of Metabolife 356 when Defendants knew or should have known that other dietary supplements were available and existing in the market which could safely offer the consumer a weight loss option without subjecting them to the risk to which Metabolife 356 subjected the consumer.

59.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.



## COUNT VI

## STRICT PRODUCTS LIABILITY AS AGAINST

## DEFENDANT, CHEMINS COMPANY, INC., (FAILURE TO WARN)

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

60.     Metabolife 356 was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including JOSEPH SAITER, of the dangerous risks and reactions associated with utilization of Metabolife 356. JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

61.     JOSEPH SAITER used Metabolife 356 for its intended purposes.

62.     JOSEPH SAITER could not have discovered any defects in the product through the exercise of reasonable care or diligence.

63.     Defendant is a manufacturer of a dietary supplement, and is held to the level of knowledge of an expert in the field.

64.     The warnings given by Defendant were not accurate, thorough, clear or unambiguous.

65.     Defendant had a continuing duty to warn JOSEPH SAITER, of the dangers associated with the use of Metabolife 356.

66.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

<div align="center">

## COUNT VII

### NEGLIGENCE OF DEFENDANT, CHEMINS COMPANY, INC.,

</div>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

67.    Defendant, directly or indirectly, negligently and/or defectively made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, promoted, marketed, advertised, and/or sold Metabolife 356.

68.    At all times material to this action, Defendants had a duty to any/all consumers including JOSEPH SAITER, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distributing, promoting and selling of Metabolife 356.

69.      Defendant breached the duty owed to JOSEPH SAITER, and acted negligently in
its actions and representations toward JOSEPH SAITER, including, but not limited to, the
following:

(a)      Failed to include adequate warnings with the supplement that would alert
consumers to the potential risk and serious side effects of Metabolife 356.

(b)      Failed to adequately and properly test the supplement before placing
Metabolife 356 on the market.

(c)      Failed to conduct sufficient testing on the supplement which, if properly
performed, would have shown that Metabolife 356 has serious side effects.

(d)      Failed to conduct sufficient testing of Metabolife 356 to eliminate non-
uniform and non-standard delivery of the ingredients with each pill.

(e)      Failed to promulgate, adopt and implement adequate protocol, procedure
and/or safeguards to assure uniform and standardized delivery.

(f)      Failed to adequately warn JOSEPH SAITER, that use of Metabolife 356
carried a risk of organ damage including stroke, heart attack and death.

(g)      Failed to warn Plaintiff that use of the product carried a risk of disabling
conditions.

(h)      Failed to provide adequate after-marketing warnings or instructions after
Defendant knew or should have known of the significant risks associated with the use of
Metabolife 356.

70.      Despite Defendant knowing or having reason to know that Metabolife 356 caused
unreasonably dangerous risks and serious side effects of which the Plaintiff could not and would

not be aware, Defendant nevertheless advertised, marketed, sold and distributed the supplement knowing that there were safer methods and alternatives to the treatment of obesity.

71.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

<u>COUNT VIII</u>

<u>FRAUD AND MISREPRESENTATION OF</u>

<u>DEFENDANT, CHEMINS COMPANY, INC.,</u>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

72.    Defendant fraudulently, intentionally and/or negligently misrepresented, in its advertising and labeling to JOSEPH SAITER, and the general public, the safety and

26

effectiveness of Metabolife 356 and/or fraudulently, intentionally or negligently concealed material, adverse information regarding the safety and effectiveness of Metabolife 356. These representations were placed on the product label and other advertising material read and relied on by JOSEPH SAITER in the several months preceding his stroke. JOSEPH SAITER read and relied upon these representations to his detriment. A sample of this adverse information available to Defendant includes, but is not limited to:

      a.     There were 926 cases of possible ma huang toxicity reported to the Food and Drug Administration between 1995-1997. In 37 patients (23 women and 14 men) use of ma huang was temporally related to stroke (in 16), myocardial infarction (in 10), or sudden death (in 11). Autopsies performed in 7 of the 11 patients who experienced sudden death showed a normal heart in 1, coronary atherosclerosis in 3, and cardiomyopathies in 3. In 36 of the 37 patients, use of ma huang was reported to be within the manufacturers' dosing guidelines. They concluded that: (1) ma huang use is temporally related to stroke, myocardial infarction, and sudden death; (2) underlying heart or vascular disease is not a prerequisite for ma huang-related adverse events; and (3) the cardiovascular toxic effects associated with ma huang were not limited to massive doses.

      b.     Defendant knew or should have known that one of the components of ephedra alkaloids is norephedrine, also known as phenylpropanolamine (PPA). Defendant knew or should have known that a Yale University study indicated that PPA increases the risk of hemorrhagic stroke (bleeding into the brain or into tissue surrounding the brain) in women. Defendant knew or should have known that Metabolife 356 had norephedrine (PPA) in the product and still continued to market the product and placed consumers at risk.

c.     Defendant knew or should have known that Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine was known to present health hazards including causing cardiovascular, cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients inherently dangerous.   Metabolife 356 was placed in the stream of commerce containing Guarana Extract (Caffeine), and Ma Huang Extract (Ephedra).

73.     Defendant's misrepresentations in its marketing scheme, advertising and labeling were communicated with the intent that the representations reach Plaintiff. Despite their superior knowledge concerning the dangers of ephedra, alone or in combination with other active ingredients, Defendants intentionally failed to make any changes in its representations, labels, and/or marketing schemes in order to alert consumers of the known dangers of Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss.   These actions by Defendants were false and misleading and allowed the continuation of purchases by ultimate users and subsequent harm to numerous persons including JOSEPH SAJTER.  JOSEPH SAJTER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein and described herein.

74.     Defendant knew or should have known that the representations regarding the safety and efficacy of Metabolife 356 were false.

75.     Defendant, in its advertising and labeling, made representations on its label and in advertisements and/or actively concealed information, such as that specified above, pertinent to the supplement with the intention and specific desire that the Plaintiff and the consuming public would rely on the misrepresentation and purchase Metabolife 356 as a treatment for obesity.

76.    Defendant, in its advertising and labeling, negligently concealed this material, adverse information regarding the safety and effectiveness of its product.

77.    Defendant made representations, in its advertising and labeling, and actively concealed adverse information at a time when Defendant knew or should have known that Metabolife 356 had defects, dangers and characteristics that were other than what Defendant had represented to the consuming public. These representations were made in an effort to market Metabolife 356 as a safe, natural means of weight loss despite Defendants knowledge regarding serious adverse consequences that had been reported regarding ephedra ingestion.

78.    The misrepresentations and/or act of concealment by Defendant includes, but is not limited to, the following:

(a)    Defendant misrepresented, in its advertising and labeling, that there had been clinical research studies proving the effectiveness and lack of harm of the supplement.

(b)    Defendant knew that there had been insufficient or inadequate testing of the supplement when Defendant marketed, promoted and sold Metabolife 356 as if it were fully and adequately tested.

(c)    Defendant failed to undertake sufficient studies regarding the safety and efficacy of the use of Metabolife 356 with other products including products containing caffeine.

79.    Despite knowing that there was insufficient and inadequate testing of Metabolife 356, Defendant, in its advertising and labeling, marketed, promoted and/or sold Metabolife 356 as if it were fully and adequately tested.

80.    Defendant, in its advertising and labeling, failed to advise JOSEPH SAITER, and others that prior studies, research, reports and/or testing connected and linked Metabolife 356's ingredient Ephedra or Ephedrine either alone or in combination with other products such as

29

caffeine, to serious adverse reactions and events over and above what other dietary supplements caused.

81.    Defendant misrepresented and/or actively concealed information that Metabolife 356 usage was associated with stroke, heart attack and death.

82.    The misrepresentations and/or act of concealment by Defendant was perpetuated directly and indirectly by Defendant and its sales representatives, employees, distributors, agents, retailers and/or detail persons.

83.    The misrepresentations and/or acts of concealment by Defendant constitute a continuing tort.

84.    Defendant continued to advertise and market and sell Metabolife 356 as a safe, more effective weight loss dietary supplement than the other supplements on the market. The representations made by Defendant were false and misleading and allowed the continuation of the sale of Metabolife 356 to other consumers, and subsequent harm to numerous patients, including JOSEPH SAITER.

85.    Through Defendant's advertising, labeling and representations, Defendant continued to misrepresent potential risks and complications associated with the use of Metabolife 356.

86.    Defendant misrepresented the safety and efficacy of Metabolife 356 in its labeling, advertising, promotional materials and other marketing efforts.

87.    JOSEPH SAITER justifiably relied on the representations and/or act of concealment of Defendant to his own detriment.

88.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

30

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.      Bodily injury and any resulting pain and suffering;

b.      Mental anguish;

c.      Disability and physical impairment;

d.      Loss of capacity for the enjoyment of life;

e.      Lost wages in the past and impaired earning capacity;

f.      Inconvenience;

g.      Medical expenses, past and future;

h.      Costs of suit incurred herein;

i.      Pre-judgment interest as provided by law; and

j.      Such other and further relief as the Court may deem just and proper.

## COUNT IX

### STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT,

### DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING,

### (DEFECTIVE DESIGN)

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

89.     At all times material to this action, Defendant engaged in the business of selling, distributing, supplying, marketing and promoting the dietary supplement Metabolife 356, which is defective and unreasonably dangerous to consumers, including JOSEPH SAITER.

90.     At all times material to this action Metabolife 356 was sold, distributed, supplied, marketed and/or promoted by Defendant; Metabolife 356 was expected to reach, and did reach,

31

consumers in the State of Florida, including Plaintiff, without substantial difference between the condition in which it was manufactured and sold.

91.    At all times material to this action, Metabolife 356, was sold, marketed, distributed, supplied, and/or promoted by Defendant in a defective and unreasonably dangerous condition.

92.    The product was defective and unreasonably dangerous in one or more of the following particulars:

(a)    When placed in the stream of commerce, and when received and sold by this defendant, the supplement contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting JOSEPH SAITER, to risks which exceeded the benefits of the product;

(b)    When placed in the stream of commerce, and when received and sold by this defendant, the supplement was defective in design and formulation, thereby making the use of the supplement more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the underlying condition for which the supplement was prescribed.

(c)    The supplement was insufficiently and inadequately tested.

(d)    The supplement caused harmful side effects which outweighed potential utility;

(e)    The supplement was not accompanied by adequate instructions and/or warnings to apprise consumers, including Plaintiff, of the full nature or extent of the risks and side effects associated with the use of Metabolife 356, thereby rendering Defendant liable to Plaintiff, individually and collectively.

32

(f)     The supplement was not manufactured with adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery with each pill.

(g)     Defendant placed Metabolife 356 in the stream of commerce when it knew or should have known that Metabolife 356 would be used in conjunction with other products on the market including products containing caffeine, and that substantial risk of harm was posed to consumers utilizing Metabolife 356 either alone or in conjunction with other products.

93.     Defendant failed to provide a reasonably safe alternative formulation of Metabolife 356 when Defendant knew or should have known that other dietary supplements were available and existing in the market which could safely offer the consumer a weight loss option without subjecting them to the risk to which Metabolife 356 subjected the consumer.

94.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.      Bodily injury and any resulting pain and suffering;

b.      Mental anguish;

c.      Disability and physical impairment;

d.      Loss of capacity for the enjoyment of life;

e.      Lost wages in the past and impaired earning capacity;

f.      Inconvenience;

g.      Medical expenses, past and future;

h.      Costs of suit incurred herein;

i.      Pre-judgment interest as provided by law; and

j.      Such other and further relief as the Court may deem just and proper.

33



## COUNT X

### STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT, DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING (FAILURE TO WARN)

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

95.     Metabolife 356 was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including JOSEPH SAITER, of the dangerous risks and reactions associated with consuming Metabolife 356.   JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

96.     JOSEPH SAITER used Metabolife 356 for its intended purposes.

97.     JOSEPH SAITER could not have discovered any defects in the product through the exercise of reasonable care or diligence.

98.     The warnings given by Defendant were not accurate, thorough, clear or unambiguous.

99.     Defendant had a continuing duty to warn JOSEPH SAITER, of the dangers associated with the use of Metabolife 356.

100.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.      Bodily injury and any resulting pain and suffering;

34

b.      Mental anguish;

c.      Disability and physical impairment;

d.      Loss of capacity for the enjoyment of life;

e.      Lost wages in the past and impaired earning capacity;

f.      Inconvenience;

g.      Medical expenses, past and future;

h.      Costs of suit incurred herein;

i.      Pre-judgment interest as provided by law; and

j.      Such other and further relief as the Court may deem just and proper.

## COUNT XI

## NEGLIGENCE OF DEFENDANT, DIXIE HEALTH OF

## PENSACOLA, INC d/b/a SMOOTHIE KING

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

101.    Defendant, directly or indirectly, negligently and/or defectively distributed, promoted, marketed, advertised, and/or sold Metabolife 356 in the State of Florida.

102.    At all times material to this action, Defendants had a duty to any/all consumers including JOSEPH SAITER, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distributing, promoting and selling of Metabolife 356.

103.    Defendant breached the duty owed to JOSEPH SAITER, and acted negligently in its actions and representations toward JOSEPH SAITER, including, but not limited to, the following:

35

(a)     Failed to include adequate warnings at the point of sale that would alert consumers to the potential risk and serious side effects of Metabolife 356.

(b)     Failed to adequately and properly test the supplement or ensure that it was tested before placing Metabolife 356 on the market.

(c)     Failed to conduct sufficient testing on the supplement which, if properly performed, would have shown that Metabolife 356 has serious side effects.

(d)     Failed to conduct sufficient testing of Metabolife 356 to eliminate non-uniform and non-standard delivery of the ingredients with each pill.

(e)     Failed to promulgate, adopt and implement adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery.

(f)     Failed to adequately warn JOSEPH SAITER, that use of Metabolife 356 carried a risk of organ damage including stroke, heart attack and death.

(g)     Failed to warn Plaintiff that use of the product carried a risk of disabling conditions.

(h)     Failed to provide adequate after-marketing warnings or instructions after Defendant knew or should have known of the significant risks associated with the use of Metabolife 356.

104.    Despite Defendant knowing or having reason to know that Metabolife 356 caused unreasonably dangerous risks and serious side effects of which the Plaintiff could not and would not be aware, Defendant nevertheless advertised, marketed, sold and distributed the supplement knowing that there were safer methods and alternatives to the treatment of obesity.

105.    As a direct and proximate result of the defective condition of the product. JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.     Bodily injury and any resulting pain and suffering;

b.     Mental anguish;

c.     Disability and physical impairment;

d.     Loss of capacity for the enjoyment of life;

e.     Lost wages in the past and impaired earning capacity;

f.      Inconvenience;

g.     Medical expenses, past and future;

h.     Costs of suit incurred herein;

i.      Pre-judgment interest as provided by law; and

j.      Such other and further relief as the Court may deem just and proper.

<h3 style="text-align:center">COUNT XII</h3>

<h3 style="text-align:center">FRAUD AND MISREPRESENTATION OF DEFENDANT,</h3>

<h3 style="text-align:center">DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING</h3>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

106.    Defendant fraudulently, intentionally and/or negligently misrepresented, in its display of the Metabolife 356 label upon its shelves the safety and effectiveness of Metabolife 356 and/or fraudulently, intentionally or negligently concealed material, adverse information regarding the safety and effectiveness of Metabolife 356. A sample of this adverse information available to Defendant includes, but is not limited to:

<div style="text-align:center">37</div>



a.     There were 926 cases of possible ma huang toxicity reported to the Food and Drug Administration between 1995-1997. In 37 patients (23 women and 14 men) use of ma huang was temporally related to stroke (in 16), myocardial infarction (in 10), or sudden death (in 11). Autopsies performed in 7 of the 11 patients who experienced sudden death showed a normal heart in 1, coronary atherosclerosis in 3, and cardiomyopathies in 3. In 36 of the 37 patients, use of ma huang was reported to be within the manufacturers' dosing guidelines. They concluded that: (1) ma huang use is temporally related to stroke, myocardial infarction, and sudden death; (2) underlying heart or vascular disease is not a prerequisite for ma huang-related adverse events; and (3) the cardiovascular toxic effects associated with ma huang were not limited to massive doses.

b.     Defendant knew or should have known that one of the components of ephedra alkaloids is norephedrine, also known as phenylpropanolamine (PPA). Defendant knew or should have known that a Yale University study indicated that PPA increases the risk of hemorrhagic stroke (bleeding into the brain or into tissue surrounding the brain) in women. Defendant knew or should have known that Metabolife 356 had norephedrine (PPA) in the product and still continued to market the product and placed consumers at risk.

c.     Defendant knew or should have known that Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine was known to present health hazards including causing cardiovascular, cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients inherently dangerous.  Metabolife 356 was placed in the stream of commerce containing Guarana Extract (Caffeine) and Ma Huang Extract (Ephedra).

107.   Defendant's display of the claims made on the Metabolife 356 label were communicated with the intent that the representations reach Plaintiff. Despite their knowledge concerning the dangers of ephedra, alone or in combination with other active ingredients, Defendants intentionally failed to make any changes in its display in order to alert consumers of the known dangers of Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss.   These actions by Defendant were false and misleading and allowed the continuation of purchases by JOSEPH SAITER and subsequent harm to JOSEPH SAITER. JOSEPH SAITER read and relied to his detriment upon the representations made on the label and by the Smoothie King Franchises, Inc. employee.

108.   Defendant knew or should have known that the representations regarding the safety and efficacy of Metabolife 356 were false.

109.   Defendant, in its display of the Metabolife 356 label and statements made by its employee made misrepresentations and/or actively concealed information, such as that specified above, pertinent to the supplement with the intention and specific desire that the Plaintiff and the consuming public would rely on the misrepresentation and purchase Metabolife 356 as a treatment for obesity.

110.   Defendant, in its display of the Metabolife 356 label, negligently concealed this material, adverse information regarding the safety and effectiveness of its product.

111.   Defendant made representations, in its display of the Metabolife 356 label, and actively concealed adverse information at a time when Defendant knew or should have known that Metabolife 356 had defects, dangers and characteristics that were other than what Defendant had represented to the consuming public. These representations were made in an effort to market

Metabolife 356 as a safe, natural means of weight loss despite Defendants knowledge regarding serious adverse consequences that had been reported regarding ephedra ingestion.

112.    The misrepresentations and/or act of concealment by Defendant includes, but is not limited to, the following:

(a)    Defendant misrepresented, in displaying the Metabolife 356 label and through the oral statements of its employee, that there had been clinical research studies proving the effectiveness and lack of harm of the supplement.

(b)    Defendant knew that there had been insufficient or inadequate testing of the supplement when Defendant displayed, promoted and sold Metabolife 356 as if it were fully and adequately tested.

(c)    Defendant failed to undertake sufficient studies regarding the safety and efficacy of the use of Metabolife 356 with other products including products containing caffeine.

(d)    JOSEPH SAITER read and relied upon the representations made on the label and in advertisements regarding the safety and effectiveness of Metabolife 356. These advertisements failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

113.    Despite knowing that there was insufficient and inadequate testing of Metabolife 356, Defendant, in displaying the claims made on the Metabolife 356 label, promoted and/or sold Metabolife 356 as if it were fully and adequately tested.

114.    Defendant failed to advise JOSEPH SAITER, and others that prior studies, research, reports and/or testing connected and linked Metabolife 356's ingredient Ephedra or Ephedrine either alone or in combination with other products such as caffeine, to serious adverse reactions and events over and above what other dietary supplements caused.

115.    Defendant misrepresented and/or actively concealed information that Metabolife 356 usage was associated with stroke, heart attack and death.

116.    The misrepresentations and/or act of concealment by Defendant was perpetuated directly and indirectly by Defendant and its sales representatives, employees, distributors, agents, retailers and/or detail persons. Defendant was responsible for ensuring that its retail stores and its employees convey to the consumers accurate and complete information regarding the products sold at those stores.

117.    The misrepresentations and/or acts of concealment by Defendant constitute a continuing tort.

118.    Defendant continued to display and sell Metabolife 356 as a safe, more effective weight loss dietary supplement than the other supplements on the market. The representations made by Defendant were false and misleading and allowed the continuation of the sale of Metabolife 356 to other consumers, and subsequent harm to numerous consumers, including JOSEPH SAITER.

119.    Through Defendant's display of the Metabolife 356 label Defendant continued to misrepresent potential risks and complications associated with the use of Metabolife 356.

120.    Defendant misrepresented the safety and efficacy of Metabolife 356 in its labeling, advertising, promotional materials and other marketing efforts.

121.    JOSEPH SAITER justifiably relied on the representations and/or act of concealment of Defendant to his own detriment.

122.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.



WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

    a.    Bodily injury and any resulting pain and suffering;

    b.    Mental anguish;

    c.    Disability and physical impairment;

    d.    Loss of capacity for the enjoyment of life;

    e.    Lost wages in the past and impaired earning capacity;

    f.    Inconvenience;

    g.    Medical expenses, past and future;

    h.    Costs of suit incurred herein;

    i.    Pre-judgment interest as provided by law; and

    j.    Such other and further relief as the Court may deem just and proper.

## COUNT XIII

## BREACH OF EXPRESS AND/OR IMPLIED WARRANTY BY DEFENDANT, DIXIE HEALTH OF PENSACOLA, INC d/b/a SMOOTHIE KING

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

123.    At the time and place of the sale of Metabolife 356, Defendant expressly represented and warranted that the product was safe, and impliedly warranted that the product was reasonably fit for its intended purpose, and was of marketable quality. In fact, however, the product was unfit and unsafe for ingestion by users. The express warranty for Metabolife 356, in effect at the time of purchase, was made in advertising materials and on the product packaging label. JOSEPH SALTER read and relied to his detriment upon the representations made in the

marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

124.     JOSEPH SAITER read and relied upon the representations made on the label, in brochures and in advertisements regarding the safety and effectiveness of Metabolife 356. These representations failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

125.     At the time and place of the sale of Metabolife 356, the product was not reasonably fit or safe for its intended purpose and, therefore, was not of marketable quality, and constituted potentially an extreme hazard and danger to persons using said product. Defendant breached these warranties by failing to warn of known or readily ascertainable risks associated with Metabolife 356.

126.     As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

   a.     Bodily injury and any resulting pain and suffering;

   b.     Mental anguish;

   c.     Disability and physical impairment;

   d.     Loss of capacity for the enjoyment of life;

   e.     Lost wages in the past and impaired earning capacity;

   f.      Inconvenience;

   g.     Medical expenses, past and future;

   h.     Costs of suit incurred herein;

i.     Pre-judgment interest as provided by law; and

j.     Such other and further relief as the Court may deem just and proper.

## COUNT XIV

## STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT,

## SMOOTHIE KING FRANCHISES, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

127.    At all times material to this action, Defendant engaged in the business of selling, distributing, supplying, marketing and promoting the dietary supplement Metabolife 356, which is defective and unreasonably dangerous to consumers, including JOSEPH SAITER.

128.    At all times material to this action Metabolife 356 was sold, distributed, supplied, marketed and/or promoted by Defendant; Metabolife 356 was expected to reach, and did reach, consumers in the State of Florida, including Plaintiff, without substantial difference between the condition in which it was manufactured and sold.

129.    At all times material to this action, Metabolife 356, was sold, marketed, distributed, supplied, and/or promoted by Defendant in a defective and unreasonably dangerous condition.

130.    The product was defective and unreasonably dangerous in one or more of the following particulars:

(a)    When placed in the stream of commerce, and when received and sold by this defendant, the supplement contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting JOSEPH SAITER, to risks which exceeded the benefits of the product;

44

(b)    When placed in the stream of commerce, and when received and sold by this defendant, the supplement was defective in design and formulation, thereby making the use of the supplement more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the underlying condition for which the supplement was prescribed.

(c)    The supplement was insufficiently and inadequately tested.

(d)    The supplement caused harmful side effects which outweighed potential utility;

(e)    The supplement was not accompanied by adequate instructions and/or warnings to apprise consumers, including Plaintiff, of the full nature or extent of the risks and side effects associated with the use of Metabolife 356, thereby rendering Defendant liable to Plaintiff, individually and collectively.

(f)    The supplement was not manufactured with adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery with each pill.

(g)    Defendant placed Metabolife 356 in the stream of commerce when it knew or should have known that Metabolife 356 would be used in conjunction with other products on the market including products containing caffeine, and that substantial risk of harm was posed to consumers utilizing Metabolife 356 either alone or in conjunction with other products.

131.    Defendant failed to provide a reasonably safe alternative formulation of Metabolife 356 when Defendant knew or should have known that other dietary supplements were available and existing in the market which could safely offer the

consumer a weight loss option without subjecting them to the risk to which Metabolife 356 subjected the consumer.

132. As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.     Bodily injury and any resulting pain and suffering;

b.     Mental anguish;

c.     Disability and physical impairment;

d.     Loss of capacity for the enjoyment of life;

e.     Lost wages in the past and impaired earning capacity;

f.     Inconvenience;

g.     Medical expenses, past and future;

h.     Costs of suit incurred herein;

i.     pre-judgment interest as provided by law; and

j.     Such other and further relief as the Court may deem just and proper.

<u>COUNT XV</u>

<u>STRICT PRODUCTS LIABILITY AS AGAINST DEFENDANT, SMOOTHIE
KING FRANCHISES, INC. (FAILURE TO WARN)</u>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

133.    Metabolife 356 was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including JOSEPH SAITER, of the dangerous risks and reactions associated with consuming Metabolife 356.    JOSEPH SAITER read and relied to his detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

134.    JOSEPH SAITER used Metabolife 356 for its intended purposes.

135.    JOSEPH SAITER could not have discovered any defects in the product through the exercise of reasonable care or diligence.

136.    The warnings given by Defendant were not accurate, thorough, clear or unambiguous.

137.    Defendant had a continuing duty to warn JOSEPH SAITER, of the dangers associated with the use of Metabolife 356.

138.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

47

    f.      Inconvenience;

    g.     Medical expenses, past and future;

    h.     Costs of suit incurred herein;

    i.      Pre-judgment interest as provided by law; and

    j.      Such other and further relief as the Court may deem just and proper.

## COUNT XVI

## NEGLIGENCE OF DEFENDANT, SMOOTHIE KING FRANCHISES, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

139.    Defendant, directly or indirectly, negligently and/or defectively distributed, promoted, marketed, advertised, and/or sold Metabolife 356 in the State of Florida.

140.    At all times material to this action, Defendants had a duty to any/all consumers including JOSEPH SAITER, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distributing, promoting and selling of Metabolife 356.

141.    Defendant breached the duty owed to JOSEPH SAITER, and acted negligently in its actions and representations toward JOSEPH SAITER, including, but not limited to, the following:

    (a)     Failed to include adequate warnings at the point of sale that would alert consumers to the potential risk and serious side effects of Metabolife 356.

    (b)     Failed to adequately and properly test the supplement or ensure that it was tested before placing Metabolife 356 on the market.

48

(c)    Failed to conduct sufficient testing on the supplement which, if properly performed, would have shown that Metabolife 356 has serious side effects.

(d)    Failed to conduct sufficient testing of Metabolife 356 to eliminate non-uniform and non-standard delivery of the ingredients with each pill.

(e)    Failed to promulgate, adopt and implement adequate protocol, procedure and/or safeguards to assure uniform and standardized delivery.

(f)    Failed to adequately warn JOSEPH SAITER, that use of Metabolife 356 carried a risk of organ damage including stroke, heart attack and death.

(g)    Failed to warn Plaintiff that use of the product carried a risk of disabling conditions.

(h)    Failed to provide adequate after-marketing warnings or instructions after Defendant knew or should have known of the significant risks associated with the use of Metabolife 356.

142.    Despite Defendant knowing or having reason to know that Metabolife 356 caused unreasonably dangerous risks and serious side effects of which the Plaintiff could not and would not be aware, Defendant nevertheless advertised, marketed, sold and distributed the supplement knowing that there were safer methods and alternatives to the treatment of obesity.

143.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering:

b.      Mental anguish;

c.      Disability and physical impairment;

d.      Loss of capacity for the enjoyment of life;

e.      Lost wages in the past and impaired earning capacity;

f.      Inconvenience;

g.      Medical expenses, past and future;

h.      Costs of suit incurred herein;

i.      Pre-judgment interest as provided by law; and

j.      Such other and further relief as the Court may deem just and proper.

<div align="center">

## COUNT XVII

## FRAUD AND MISREPRESENTATION OF DEFENDANT,

## SMOOTHIE KING FRANCHISES, INC.

</div>

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

144.    Defendant fraudulently, intentionally and/or negligently misrepresented, in its display of the Metabolife 356 label upon its shelves the safety and effectiveness of Metabolife 356 and/or fraudulently, intentionally or negligently concealed material, adverse information regarding the safety and effectiveness of Metabolife 356. A sample of this adverse information available to Defendant includes, but is not limited to:

a.      There were 926 cases of possible ma huang toxicity reported to the Food and Drug Administration between 1995-1997. In 37 patients (23 women and 14 men) use of ma huang was temporally related to stroke (in 16), myocardial infarction (in 10), or sudden death (in 11). Autopsies performed in 7 of the 11 patients who experienced

<div align="center">50</div>



sudden death showed a normal heart in 1, coronary atherosclerosis in 3, and cardiomyopathies in 3. In 36 of the 37 patients, use of ma huang was reported to be within the manufacturers' dosing guidelines. They concluded that: (1) ma huang use is temporally related to stroke, myocardial infarction, and sudden death; (2) underlying heart or vascular disease is not a prerequisite for ma huang-related adverse events; and (3) the cardiovascular toxic effects associated with ma huang were not limited to massive doses.

b.      Defendant knew or should have known that one of the components of ephedra alkaloids is norephedrine, also known as phenylpropanolamine (PPA). Defendant knew or should have known that a Yale University study indicated that PPA increases the risk of hemorrhagic stroke (bleeding into the brain or into tissue surrounding the brain) in women. Defendant knew or should have known that Metabolife 356 had norephedrine (PPA) in the product and still continued to market the product and placed consumers at risk.

c.      Defendant knew or should have known that Ephedra or Ephedrine, either alone or in combination with other ingredients including caffeine was known to present health hazards including causing cardiovascular, cardiopulmonary and central nervous system events resulting in death and disability, thus rendering any product containing such ingredients inherently dangerous.    Metabolife 356 was placed in the stream of commerce containing Guarana Extract (Caffeine) and Ma Huang Extract (Ephedra).

145.    Defendant's display of the claims made on the Metabolife 356 label were communicated with the intent that the representations reach Plaintiff.    Despite their knowledge concerning the dangers of ephedra, alone or in combination with other active

51

ingredients, Defendants intentionally failed to make any changes in its display in order to alert consumers of the known dangers of Metabolife 356, but rather chose to emphasize the purported benefits in rapid fat loss. These actions by Defendant were false and misleading and allowed the continuation of purchases by JOSEPH SAITER and subsequent harm to JOSEPH SAITER. JOSEPH SAITER read and relied to his detriment upon the representations made on the label.

146.    Defendant knew or should have known that the representations regarding the safety and efficacy of Metabolife 356 were false.

147.    Defendant, in its display of the Metabolife 356 label and statements made by its employee made misrepresentations and/or actively concealed information, such as that specified above, pertinent to the supplement with the intention and specific desire that the Plaintiff and the consuming public would rely on the misrepresentation and purchase Metabolife 356 as a treatment for obesity.

148.    Defendant, in its display of the Metabolife 356 label, negligently concealed this material, adverse information regarding the safety and effectiveness of its product.

149.    Defendant made representations, in its display of the Metabolife 356 label, and actively concealed adverse information at a time when Defendant knew or should have known that Metabolife 356 had defects, dangers and characteristics that were other than what Defendant had represented to the consuming public. These representations were made in an effort to market Metabolife 356 as a safe, natural means of weight loss despite Defendants knowledge regarding serious adverse consequences that had been reported regarding ephedra ingestion.



150.    The misrepresentations and/or act of concealment by Defendant includes, but is not limited to, the following:

(a)    Defendant misrepresented, in displaying the Metabolife 356 label and through the oral statements of its employee, that there had been clinical research studies proving the effectiveness and lack of harm of the supplement.

(b)    Defendant knew that there had been insufficient or inadequate testing of the supplement when Defendant displayed, promoted and sold Metabolife 356 as if it were fully and adequately tested.

(c)    Defendant failed to undertake sufficient studies regarding the safety and efficacy of the use of Metabolife 356 with other products including products containing caffeine.

(d)    JOSEPH SAITER read and relied upon the representations made on the label and in advertisements regarding the safety and effectiveness of Metabolife 356. These advertisements failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

151.    Despite knowing that there was insufficient and inadequate testing of Metabolife 356, Defendant, in displaying the claims made on the Metabolife 356 label, promoted and/or sold Metabolife 356 as if it were fully and adequately tested.

152.    Defendant failed to advise JOSEPH SAITER, and others that prior studies, research, reports and/or testing connected and linked Metabolife 356's ingredient Ephedra or Ephedrine either alone or in combination with other products such as caffeine, to serious adverse reactions and events over and above what other dietary supplements caused.

153.    Defendant misrepresented and/or actively concealed information that Metabolife 356 usage was associated with stroke, heart attack and death.

154.    The misrepresentations and/or act of concealment by Defendant was perpetuated directly and indirectly by Defendant and its sales representatives, employees, distributors, agents, retailers and/or detail persons.  Defendant was responsible for ensuring that its retail stores and its employees convey to the consumers accurate and complete information regarding the products sold at those stores.

155.    The misrepresentations and/or acts of concealment by Defendant constitute a continuing tort.

156.    Defendant continued to display and sell Metabolife 356 as a safe, more effective weight loss dietary supplement than the other supplements on the market.  The representations made by Defendant were false and misleading and allowed the continuation of the sale of Metabolife 356 to other consumers, and subsequent harm to numerous consumers, including JOSEPH SAITER.

157.    Through Defendant's display of the Metabolife 356 label Defendant continued to misrepresent potential risks and complications associated with the use of Metabolife 356.

158.    Defendant misrepresented the safety and efficacy of Metabolife 356 in its labeling, advertising, promotional materials and other marketing efforts.

159.    JOSEPH SAITER justifiably relied on the representations and/or act of concealment of Defendant to his own detriment.

160.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.   Bodily injury and any resulting pain and suffering;

b.   Mental anguish;

c.   Disability and physical impairment;

d.   Loss of capacity for the enjoyment of life;

e.   Lost wages in the past and impaired earning capacity;

f.   Inconvenience;

g.   Medical expenses, past and future;

h.   Costs of suit incurred herein;

i.   Pre-judgment interest as provided by law; and

j.   Such other and further relief as the Court may deem just and proper.

## COUNT XVIII

## BREACH OF EXPRESS AND/OR IMPLIED WARRANTY BY DEFENDANT, SMOOTHIE KING FRANCHISES, INC.

Plaintiff re-alleges and incorporates herein by reference each and every factual allegation alleged in Paragraphs 1 through 18 as if fully set forth herein, and further state:

161.   At the time and place of the sale of Metabolife 356, Defendant expressly represented and warranted that the product was safe, and impliedly warranted that the product was reasonably fit for its intended purpose, and was of marketable quality. In fact, however, the product was unfit and unsafe for ingestion by users. The express warranty for Metabolife 356, in effect at the time of purchase, was made in advertising materials and on the product packaging label. JOSEPH SAITER read and relied to his

detriment upon the representations made in the marketing literature, advertisements and product literature, including but not limited to the representations, warranties, safety claims, usage instructions and warnings contained therein.

162.    JOSEPH SAITER read and relied upon the representations made on the label, in brochures and in advertisements regarding the safety and effectiveness of Metabolife 356. These representations failed to sufficiently warn JOSEPH SAITER of the dangers posed by products containing ephedra, including Metabolife 356.

163.    At the time and place of the sale of Metabolife 356, the product was not reasonably fit or safe for its intended purpose and, therefore, was not of marketable quality, and constituted potentially an extreme hazard and danger to persons using said product. Defendant breached these warranties by failing to warn of known or readily ascertainable risks associated with Metabolife 356.

164.    As a direct and proximate result of the defective condition of the product, JOSEPH SAITER, suffered a myocardial infarction, which resulted in permanent injury.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as appropriate to this count of this complaint:

a.    Bodily injury and any resulting pain and suffering;

b.    Mental anguish;

c.    Disability and physical impairment;

d.    Loss of capacity for the enjoyment of life;

e.    Lost wages in the past and impaired earning capacity;

f.    Inconvenience;

g.    Medical expenses, past and future;

h.    Costs of suit incurred herein;

i.    Pre-judgment interest as provided by law; and

j.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

165.    Plaintiff hereby requests a jury trial against all defendants for all issues so triable.

THOMAS F. GONZALEZ
Florida Bar No.: 0173878
J. NIXON DANIEL, III
Florida Bar No.: 228761
JOHN F. WINDHAM
Florida Bar No.: 203394
BEGGS & LANE
501 Commendencia Street
Post Office Box 12950
Pensacola, Florida 32591-2950
(850) 432-2451
Fax: 469-3330/1
TIM OBRIEN, ESQUIRE
FL Bar #0007552
Levin, Papantonio, Thomas, Mitchell,
Echsner & Proctor, P.A.
Post Office Box 12308 (32581)
316 S. Baylen Street (32501)
Pensacola, FL 32581
850-435-7079 (phone)
850-436-6130 (fax)



# IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER

        Plaintiff,

v.                                   CASE NO.:

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.,

        Defendants.

---

## RESPONSE TO METABOLIFE'S ANSWER AND AFFIRMATIVE DEFENSES

---

COMES NOW, Plaintiffs, by and through their undersigned attorneys, and hereby respond to Defendant, Metabolife International, Inc.'s Answer and Affirmative Defenses as follows:

### FIRST DEFENSE

Plaintiffs deny that their claim is barred by the applicable statutes of limitations and demand strict proof thereof.

### SECOND DEFENSE

Plaintiffs deny that their Complaint failed to state a cause of action for strict liability (defective design), strict liability (failure to warn), negligence, fraud and misrepresentation, breach of express warranty, breach of implied warranty, and loss of consortium. Plaintiffs demand strict proof from Defendant as to the specific factual basis of their second defense.

### THIRD DEFENSE

Plaintiffs deny the allegations stated in the third defense and demand strict proof thereof.

## FOURTH DEFENSE

Plaintiffs deny the product was not used for its intended purpose and demand strict proof thereof.

## FIFTH DEFENSE

Plaintiffs deny Defendant's assumption of risk defense and demand strict proof thereof.

## SIXTH DEFENSE

Plaintiffs deny that Mr. Saiter's  claim should be barred or proportionately reduced by action of Defendant's asserted sophisticated user defense.

## SEVENTH DEFENSE

Plaintiffs deny that they failed and/or refused to reasonably mitigate their damages. Therefore, they deny the seventh defense and demand strict proof thereof.

## EIGHTH DEFENSE

Plaintiffs deny comparative negligence therefore, completely deny this eighth defense and demand strict proof thereof.

## NINTH DEFENSE

Plaintiffs deny alteration of the product, therefore, completely deny this ninth defense and demand strict proof thereof.

## TENTH DEFENSE

Plaintiffs deny that the warnings contained on the bottle of Metabolife 356 were adequate to warn consumers of the risk of bilateral thalamic infarct and other dangers and specifically deny all allegations made in Defendant's tenth defense and demand strict proof thereof.

## ELEVENTH DEFENSE

Plaintiffs deny that they have brought a claim subject to federal preemption and specifically deny the eleventh defense and demand strict proof thereof.

## TWELFTH DEFENSE

Plaintiffs' deny that Mr. Saiter participated in the unauthorized, unreasonable, or unforeseeable use of the product therefore, deny in its entirety Defendant's twelfth defense and demand strict proof of the facts on which the Defendant based this defense.

## THIRTEENTH DEFENSE

As stated in the fifth defense the Plaintiffs deny Defendant's assumption of risk defense and demand strict proof thereof.

## FOURTEENTH DEFENSE

Plaintiffs deny that the doctrine of unclean hands or laches applies to this claim and demands strict proof of facts which would support Defendant's fourteenth Defense.

## FIFTEENTH DEFENSE

Plaintiffs deny Defendant's fifteenth defense insofar as they lack specific knowledge of Metabolife International, Inc.'s compliance with any and all governmental regulations and/or specifications.  Therefore, Plaintiffs completely deny this fifteenth defense and demand strict proof of all facts which support this defense.

## SIXTEENTH DEFENSE

Plaintiffs expressly deny the allegations raised in Defendant's sixteenth defense and demand strict proof of all facts which support the claims raised by this defense

## SEVENTEENTH DEFENSE

Plaintiffs expressly deny  all allegations of Defendant's seventeenth defense and demand all facts which support this affirmative defense.

## EIGHTEENTH DEFENSE

Plaintiffs deny that the benefit of weight loss and increased energy could ever outweigh the risk of a devastating myocardial infarction which resulted in permanent disability to the Plaintiff, Jay Saiter. Therefore, Plaintiffs completely deny this eighteenth defense and demand strict proof thereof.

## NINETEENTH DEFENSE

Plaintiffs deny Defendant's nineteenth defense which alleges conformance with industry standards and state of the art. Plaintiffs demand strict proof of all facts forming the basis of the nineteenth affirmative defense.

## TWENTIETH DEFENSE

Defendant's twentieth defense states an ultimate legal conclusion for which no reply is necessary. However insofar as a reply is deemed necessary Plaintiffs deny Defendant's twentieth defense and demand strict proof of all facts supporting the allegations contained in this defense

## TWENTY-FIRST DEFENSE

Plaintiffs incorporate their denial of Defendant's nineteenth defense and furthermore completely deny Defendant's twenty-first defense and demand strict proof of all facts supporting the allegations.

## TWENTY-SECOND DEFENSE

Plaintiffs deny that Jay Saiter is a putative member of the Perez medical monitoring class action referenced in Defendant's twenty-second defense and expressly deny all allegations contained in the twenty-second defense. Plaintiffs further demand Defendant state all facts on which they based their assertion that Mr. Saiter is a putative class member.



### TWENTY-FOURTH DEFENSE

Plaintiff do not dispute the potential applicability of Section 768.81, Florida Statutes to negligence actions in Florida, Plaintiffs deny that it in anyway specially limits Defendant's liability in this matter.

### TWENTY-FIFTH DEFENSE

Plaintiffs deny Defendant's twenty-fifth defense insofar as it makes no differentiation between economic and non-economic damages.

### TWENTY-SIXTH DEFENSE

Plaintiffs deny Defendant's twenty-sixth defense.

### TWENTY-SEVENTH DEFENSE

Plaintiffs deny that any danger posed by Metabolife 356 was open and obvious to Joseph Saiter.

### TWENTY-EIGHTH DEFENSE

Plaintiffs deny Defendant's twenty-eighth defense and demand strict proof thereof.

### RESERVATION OF DEFENSES

Plaintiffs object to Defendant's attempts to reserve all other affirmative defenses.

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing has been provided this 7th day of June, 2004 to the following:

*By U.S. Mail*
Ronald E. Cabaniss, Esquire
Larry D. Smith, Esquire
Jason Herman, Esquire
485 North Kellar Road, Suite 401
Maitland, Florida 32751

Frederick H.L. McClure
Christian C. Burden
Piper Rudnick
101 East Kennedy Boulevard
Suite 2000
Tampa, Florida 33602

THOMAS F. GONZALEZ
Florida Bar No.: 0173878
J. NIXON DANIEL, III
Florida Bar No.: 228761
JOHN F. WINDHAM
Florida Bar No.: 203394
BEGGS & LANE
501 Commendencia Street
Post Office Box 12950
Pensacola, Florida 32591-2950
(850) 432-2451
TIM OBRIEN, ESQUIRE
FL Bar #0007552
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
Post Office Box 12308 (32581)
316 S. Baylen Street (32501)
Pensacola, FL 32581

IN THE CIRCUIT COURT OF THE 1ST
JUDICIAL CIRCUIT IN AND FOR
SANTA ROSA COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 04-000299-CA

JOSEPH SAITER,

      Plaintiff,

v.

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.,

      Defendants.

_____ /

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT, DIXIE HEALTH OF PENSACOLA, INC., D/B/A SMOOTHIE KING

Defendant, DIXIE HEALTH OF PENSACOLA, INC., d/b/a SMOOTHIE KING

(hereinafter "SMOOTHIE KING"), by and through its undersigned counsel and pursuant to Fla.

R. Civ. P. 1.110, hereby answers Plaintiff's First Amended Complaint ("Complaint") and states

in response thereto as follows:

1.    Defendant admits for jurisdictional purposes only that Plaintiff seeks damages in

       excess of the jurisdictional threshold of the Court, exclusive of interest and costs.

2.    Defendant denies, severally, all remaining material allegations of Plaintiff's

       Complaint including all inferences there from and demands strict proof thereof.

CASE NO.: 04-000299-CA
Page 2

## DEFENSES AND AFFIRMATIVE DEFENSES

By way of defense and affirmative defense, Defendant states the following:

### FIRST DEFENSE

Plaintiff's claims are barred by the applicable statutes of limitations.

### SECOND DEFENSE

Plaintiff's Complaint fails to state a cause of action for strict liability (defective design), strict liability (failure to warn), negligence, and fraud and misrepresentation.

### THIRD DEFENSE

The alleged damages were proximately cause by the intentional or negligent acts or omissions of Plaintiff, JOSEPH SAITER ("SAITER"), or third parties over whom Defendant had no control, whom Defendant will identify with as much particularity as is feasible as discovery progresses and in sufficient time to allow Plaintiff to respond and/or file amended pleadings. Thus, Plaintiff's claims should be barred or proportionately reduced by the negligence or intentional acts of SAITER and/or such third parties.

### FOURTH DEFENSE

The product was not used for its intended purpose and there, Defendant is not liable for Plaintiff's damages.

### FIFTH DEFENSE

That the injuries and damages complained of in Plaintiff's Complaint were legally and proximately caused by and arose out of risks of which SAITER had knowledge and understanding and voluntarily assumed. Therefore, Plaintiff's claims should be barred or

proportionately reduced by that amount of risk, which SAITER had knowledge of and voluntarily assumed.

### SIXTH DEFENSE

SAITER is and was, at all times material hereto, a sophisticated user of the subject product. Therefore, Plaintiff's claims should be barred or proportionately reduced.

### SEVENTH DEFENSE

The Plaintiff failed and/or refused to reasonably mitigate his damages, if any, thus barring or proportionately reducing Plaintiff's recovery, if any.

### EIGHTH DEFENSE

SAITER did not exercise ordinary care, caution or prudence for his own safety or protection, and the resultant injuries and/or damages, if any, sustained by Plaintiff was proximately contributed to and caused by said carelessness and negligence, thus barring or diminishing Plaintiff's recovery, pursuant to the principles of F.S. 768.81.

### NINTH DEFENSE

The subject product was altered after it left Defendant's possession and/or control.

### TENTH DEFENSE

Adequate warnings were provided to consumers of the product, including SAITER. Further, the warnings provided adequately warned consumers of particular risks that were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

### ELEVENTH DEFENSE

Plaintiff's allegations are barred by the doctrine of federal preemption.

CASE NO.: 04-000299-CA
Page 4

## TWELFTH DEFENSE

Plaintiff's damages, if any, were proximately cause by the unauthorized, unreasonable, or

unforeseeable use of the subject product by SAITER, thus barring or diminishing Plaintiff's

recovery.

## THIRTEENTH DEFENSE

SAITER voluntarily assumed the risk of the activities alleged in the Complaint, and the

resultant damages, if any, sustained by SAITER were proximately cause or contributed to by

such voluntary assumption of the risk.

## FOURTEENTH DEFENSE

SAITER, by his own conduct or otherwise, has waived any claim for relief or claims that

he may have against Defendant, or is estopped, due to unclean hands, latches or otherwise, to

assert any wrongful conduct on the part the Defendant.

## FIFTEENTH DEFENSE

Metabolife International, Inc. manufactured, developed, produced, and/or distributed its

product in full compliance with any and all governmental regulations and/or specifications.

## SIXTEENTH DEFENSE

SAITER and/or other persons without Defendant's knowledge and/or approval,

redesigned, modified, altered and used the subject product, contrary to instructions, warnings,

and the custom and practice of the industry, so as to substantially change the character of the

subject produce.  If the subject product is defective in any way, which defectiveness is

specifically denied, then such defectiveness resulted solely from the redesign, modification,

alteration, use or other changes therein and not from any act or omission of the Defendant.

CASE NO.: 04-000299-CA
Page 5

Therefore, any such defect, if any, so created by SAITER and/or other persons or parties, was the

sole proximate cause of the injuries and/or damages, if any, allegedly suffered by Plaintiff.

## SEVENTEENTH DEFENSE

Any inquires or damages suffered by Plaintiff, the existence of which are specifically

denied, are the direct and proximate result of SAITER'S particular, idiosyncratic, peculiar or

unforeseeable susceptibility to the subject product, which reaction was not the result of any

conduct or omission on the part of the Defendant, nor the result of any defect in the subject

product manufactured, developed, produced, and/or distributed by the Defendant.

## EIGHTEENTH DEFENSE

In light of all relevant factors, the benefits of the design of the product alleged to have

cause injury to SAITER, outweigh the risk and danger, if any, inherent in the design of said

product.

## NINETEENTH DEFENSE

The subject product, when manufactured, developed, produced, and/or distributed,

conformed to the then current applicable industry standards and state of the art, and practice were

such that the Defendant did not and could not know that the product might pose a risk of harm

when used in a normal and foreseeable manner.

## TWENTIETH DEFENSE

Defendant alleges that in the event Plaintiff establishes that any use of the subject product

was a proximate cause of any injury to SAITER, which Defendant specifically denies, then said

use would have been so minimal as to the insufficient to establish within a reasonable degree of

medical probability that the subject product was the proximate cause of SAITER'S alleged

injuries.

## TWENTY-FIRST DEFENSE

The state of technical or scientific knowledge regarding the subject product and its design or manufacture, at all times material hereto, was such that Defendant neither knew, nor reasonably should have known, that the subject product posed any risk of harm to SAITER if such product was used properly.

## TWENTY-SECOND DEFENSE

Plaintiff's action is barred by prior and/or pending class action cases of which SAITER is a putative member and is therefore bound by those cases including, but not limited to Francella Perez, et al. v. Metabolife Int'l, Inc., Case No. 02-22850-CIV Huck/Turnoff and by Florida's prohibition against claims splitting.

## TWENTY-THIRD DEFENSE

That pursuant to Section 768.76, Florida Statutes, Defendant is entitled to a set-off from any recovery against them to the extent of the value of all benefits paid or payable to or on behalf of Plaintiff from any collateral source.

## TWENTY-FOURTH DEFENSE

Defendant alleges that the provisions of Section 768.81, Florida Statutes, are applicable and thereby diminish Plaintiff's recovery against the Defendant by that percentage of negligence attributable to SAITER. Defendant's liability shall be limited to their percentage of responsibility for Plaintiff's damages, if any, and not on the basis of the doctrine of joint and several liability, and that Defendant's percentage of responsibility shall be further limited by that percentage of responsibility attributable to third parties. Discovery is continuing as to the

indemnity and culpability of the *fabre* entities.

## TWENTY-FIFTH DEFENSE

Defendant claims as a set-off, any monies received by Plaintiff through settlement, judgment or agreement between the Plaintiffs and many party or non-party to this action.

## TWENTY-SIXTH DEFENSE

The subject product, Metabolife 356, is not unreasonably dangerous as a matter of law.

## TWENTY-SEVENTH DEFENSE

If the subject product is dangerous in any way, which dangerousness is specifically denied, then such dangerousness was open and obvious to SAITER.

## TWENTY-EIGHTH DEFENSE

Plaintiff's alleged injuries are the result of a pre-existing medical condition, and accordingly, Plaintiff is barred from recovery.

## DEMAND FOR JURY TRIAL

Defendant demands trial by jury on all issues to triable.

## RESERVATION OF DEFENSES

Defendant reserves the right to assert all other affirmative defenses that become known to it throughout the course of discovery of this cause.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing document has been furnished by U.S. mail this 17th day of June, 2004; to: **Thomas F. Gonzalez, Esquire**, attorney for Plaintiff, 501 Commendencia Street, Post Office Box 12950, Pensacola, Florida 32591-2950;

CASE NO.: 04-000299-CA

Page 8

**Tim O'Brien, Esquire**, 316 Baylen Street, Post Office Box 12308, Pensacola, Florida 32581;

and, **Ronald E. Cabaniss, Esquire**, 485 North Keller Road, Suite 401, Post Office Box 945401,

Maitland, Florida 32751.

> **GAEBE, MULLEN, ANTONELLI,**
> **ESCO & DIMATTEO**
> **Attorneys for Defendant**
> 420 S. Dixie Highway, Third Floor
> Coral Gables, Florida 33146
> Telephone Number: (305) 667-0223
>
> BY: _____
>         DAVID A. NEBLETT, ESQUIRE
>         Fla. Bar No.: 526371

## IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER

        Plaintiff,

v.                              CASE NO.: 04-299-CA

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.,

        Defendants.

---

### RESPONSE TO DIXIE HEALTH OF PENSACOLA d/b/a SMOOTHIE KING'S ANSWER AND AFFIRMATIVE DEFENSES

---

COMES NOW, Plaintiffs, by and through their undersigned attorneys, and hereby respond to Defendant, Dixie Health of Pensacola, d/b/a Smoothie King.'s Answer and Affirmative Defenses as follows:

#### FIRST DEFENSE

Plaintiffs deny that their claim is barred by the applicable statutes of limitations and demand strict proof thereof.

#### SECOND DEFENSE

Plaintiffs deny that their Complaint failed to state a cause of action for strict liability (defective design), strict liability (failure to warn), negligence, fraud and misrepresentation, breach of express warranty, breach of implied warranty, and loss of consortium. Plaintiffs demand strict proof from Defendant as to the specific factual basis of their second defense.

## THIRD DEFENSE

Plaintiffs deny the allegations stated in the third defense and demand strict proof thereof.

## FOURTH DEFENSE

Plaintiffs deny the product was not used for its intended purpose and demand strict proof thereof.

## FIFTH DEFENSE

Plaintiffs deny Defendant's assumption of risk defense and demand strict proof thereof.

## SIXTH DEFENSE

Plaintiffs deny that Mr. Saiter's claim should be barred or proportionately reduced by action of Defendant's asserted sophisticated user defense.

## SEVENTH DEFENSE

Plaintiffs deny that they failed and/or refused to reasonably mitigate their damages. Therefore, they deny the seventh defense and demand strict proof thereof.

## EIGHTH DEFENSE

Plaintiffs deny comparative negligence therefore, completely deny this eighth defense and demand strict proof thereof.

## NINTH DEFENSE

Plaintiffs deny alteration of the product, therefore, completely deny this ninth defense and demand strict proof thereof.

## TENTH DEFENSE

Plaintiffs deny that the warnings contained on the bottle of Metabolife 356 were adequate to warn consumers of the risk of myocardial infarction and other dangers and specifically deny all allegations made in Defendant's tenth defense and demand strict proof thereof.

## ELEVENTH DEFENSE

Plaintiffs deny that they have brought a claim subject to federal preemption and specifically deny the eleventh defense and demand strict proof thereof.

## TWELFTH DEFENSE

Plaintiffs' deny that Mr. Saiter participated in the unauthorized, unreasonable, or unforeseeable use of the product therefore, deny in its entirety Defendant's twelfth defense and demand strict proof of the facts on which the Defendant based this defense.

## THIRTEENTH DEFENSE

As stated in the fifth defense the Plaintiffs deny Defendant's assumption of risk defense and demand strict proof thereof.

## FOURTEENTH DEFENSE

Plaintiffs deny that the doctrine of unclean hands or laches applies to this claim and demands strict proof of facts which would support Defendant's fourteenth Defense.

## FIFTEENTH DEFENSE

Plaintiffs deny Defendant's fifteenth defense insofar as they lack specific knowledge of Metabolife International, Inc.'s compliance with any and all governmental regulations and/or specifications. Therefore, Plaintiffs completely deny this fifteenth defense and demand strict proof of all facts which support this defense.

## SIXTEENTH DEFENSE

Plaintiffs expressly deny the allegations raised in Defendant's sixteenth defense and demand strict proof of all facts which support the claims raised by this defense.

### SEVENTEENTH DEFENSE

Plaintiffs expressly deny all allegations of Defendant's seventeenth defense and demand all facts which support this affirmative defense.

### EIGHTEENTH DEFENSE

Plaintiffs deny that the benefit of weight loss and increased energy could ever outweigh the risk of a devastating myocardial infarction which resulted in permanent disability to the Plaintiff, Jay Saiter. Therefore, Plaintiffs completely deny this eighteenth defense and demand strict proof thereof.

### NINETEENTH DEFENSE

Plaintiffs deny Defendant's nineteenth defense which alleges conformance with industry standards and state of the art. Plaintiffs demand strict proof of all facts forming the basis of the nineteenth affirmative defense.

### TWENTIETH DEFENSE

Defendant's twentieth defense states an ultimate legal conclusion for which no reply is necessary. However insofar as a reply is deemed necessary Plaintiffs deny Defendant's twentieth defense and demand strict proof of all facts supporting the allegations contained in this defense

### TWENTY-FIRST DEFENSE

Plaintiffs incorporate their denial of Defendant's nineteenth defense and furthermore completely deny Defendant's twenty-first defense and demand strict proof of all facts supporting the allegations.

### TWENTY-SECOND DEFENSE

Plaintiffs deny that Jay Saiter is a putative member of the Perez medical monitoring class action referenced in Defendant's twenty-second defense and expressly deny all allegations

contained in the twenty-second defense.  Plaintiffs further demand Defendant state all facts on

which they based their assertion that  Mr. Saiter is a putative class member.

## TWENTY-FOURTH DEFENSE

Plaintiff do not dispute the potential applicability of  Section 768.81, Florida Statutes to

negligence actions in Florida, Plaintiffs deny that it in anyway specially limits Defendant's

liability in this matter.

## TWENTY-FIFTH DEFENSE

Plaintiffs deny Defendant's twenty-fifth defense insofar as it makes no differentiation

between economic and non-economic damages.

## TWENTY-SIXTH DEFENSE

Plaintiffs deny Defendant's twenty-sixth defense.

## TWENTY-SEVENTH DEFENSE

Plaintiffs deny that any danger posed by Metabolife 356 was open and obvious to Joseph

Saiter.

## TWENTY-EIGHTH DEFENSE

Plaintiffs deny Defendant's twenty-eighth defense and demand strict proof thereof.

## RESERVATION OF DEFENSES

Plaintiffs object to Defendant's attempts to reserve all other affirmative defenses.



## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing has been provided this 1st day of July, 2004 to the following:

*By U.S. Mail*
**Ronald E. Cabaniss, Esquire**
**Larry D. Smith, Esquire**
**Jason Herman, Esquire**
**485 North Kellar Road, Suite 401**
**Maitland, Florida 32751**

**Frederick H.L. McClure, Esquire**
**Christian C. Burden, Esquire**
**Piper Rudnick**
**101 East Kennedy Boulevard**
**Suite 2000**
**Tampa, Florida 33602**

**David A. Neblett, Esquire**
**Gaebe, Mullen, Antonelli, Esco & Dimatteo**
**420 S. Dixie Hwy, Third Floor**
**Coral Gables, Florida 33146**

**THOMAS F. GONZALEZ**
Florida Bar No.: 0173878
**J. NIXON DANIEL, III**
Florida Bar No.: 228761
**JOHN F. WINDHAM**
Florida Bar No.: 203394
BEGGS & LANE
501 Commendencia Street
Post Office Box 12950
Pensacola, Florida 32591-2950
(850) 432-2451
**TIM OBRIEN, ESQUIRE**
FL Bar #0007552
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
Post Office Box 12308 (32581)
316 S. Baylen Street (32501)
Pensacola, FL 32581

# IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,

        Plaintiff,

v.                                 CASE NO.:   04-299-CA

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC.,
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.

        Defendants.

---

## COMBINED MOTION AND MEMORANDUM FOR LEAVE TO EXCEED THIRTY INTERROGATORIES

---

COMES NOW, the Plaintiff, Joseph Saiter, by and through his undersigned attorneys pursuant to Florida Rule of Civil Procedure 1.340 (a) and moves this Court to grant Plaintiff leave to exceed thirty (30) interrogatories. As grounds therefore, the Plaintiff states:

Florida Rule of Civil Procedure 1.340 governs interrogatories to parties. That rule states that interrogatories shall not exceed thirty, including all subparts, unless the court permits a larger number on motion and notice and for good cause.

None of the six form interrogatories approved by the Florida Supreme Court are applicable to this cause of action for products liability. Plaintiff's complaint alleges causes of action sounding in negligence, strict liability and breach of warranty stemming from Plaintiff's ingestion of a dietary supplement containing Ephedra.

In preparing interrogatories to propound upon Defendants, Plaintiff has attempted to ask only those questions necessary to discover those facts relevant to the history of Defendant's product development, marketing and sale. This discovery is designed to precisely target

Defendant's knowledge, conduct, actions and omissions with respect to its role in providing an Ephedra containing product which Plaintiff ingested. Each interrogatory propounded by Plaintiff has been carefully considered and is a good faith attempt to discover only the facts relevant to this case without undue burden upon Defendants. To that end Plaintiff hereby stipulates to an extension of the response deadline from the thirty days announced in Rule 1.340 to forty-five (45) days.

WHEREFORE Plaintiff most respectfully this Court to enter the attached Order granting his request to exceed thirty (30) interrogatories.

Defendant's knowledge, conduct, actions and omissions with respect to its role in providing an

Ephedra containing product which Plaintiff ingested. Each interrogatory propounded by Plaintiff

has been considered and is a good faith attempt to discover the facts relevant to this case without

undue burden upon Defendants. To that end Plaintiff hereby ~~extend~~ the response deadline from

the thirty days announced in Rule 1.340 to forty-five (45) days.

WHEREFORE Plaintiff most respectfully this Court to enter the attached Order granting

~~their~~ request to exceed thirty (30) interrogatories.

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing has been provided this 1st day of July, 2004 to the following:

*By U.S. Mail*
**Ronald E. Cabaniss, Esquire**
**Larry D. Smith, Esquire**
**Jason Herman, Esquire**
**485 North Kellar Road, Suite 401**
**Maitland, Florida 32751**

**Frederick H.L. McClure, Esquire**
**Christian C. Burden, Esquire**
**Piper Rudnick**
**101 East Kennedy Boulevard**
**Suite 2000**
**Tampa, Florida 33602**

**David A. Neblett, Esquire**
**Gaebe, Mullen, Antonelli, Esco & Dimatteo**
**420 S. Dixie Hwy, Third Floor**
**Coral Gables, Florida 33146**

THOMAS F. GONZALEZ
Florida Bar No.: 0173878
**J. NIXON DANIEL, III**
Florida Bar No.: 228761
**JOHN F. WINDHAM**
Florida Bar No.: 203394
BEGGS & LANE
501 Commendencia Street
Post Office Box 12950
Pensacola, Florida 32591-2950
(850) 432-2451
**TIM OBRIEN, ESQUIRE**
FL Bar #0007552
Levin, Papantonio, Thomas, Mitchell, Echsner &
Proctor, P.A.
Post Office Box 12308 (32581)
316 S. Baylen Street (32501)
Pensacola, FL 32581

# IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,

                    Plaintiff,

v.                                              CASE NO.:   04-299-CA

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC.,
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.

                    Defendants.

---

## ORDER

---

THIS CAUSE having come before the Court on the Plaintiff's Combined Motion And Memorandum For Leave To Exceed Thirty Interrogatories and the Court having being fully advised in the premises, it is ORDERED AND ADJUDGED that Plaintiff's Combined Motion And Memorandum For Leave To Exceed Thirty Interrogatories is hereby GRANTED. The deadline for response to Plaintiff's Interrogatories is extended to forty-five (45) days.

Done and ordered at Milton, Santa Rosa County, Florida this ___ day of_____, 2004.


                                        _____
                                        Judge Paul A. Rasmussen

Conformed Copies:
Thomas F. Gonzalez, Esquire
Ronald E. Cabaniss, Esquire
Larry D. Smith, Esquire
Jason Herman, Esquire
Frederick H.L. McClure, Esquire
Christian C. Burden, Esquire
David A. Neblett, Esquire

# IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,

<div align="center">Plaintiff,</div>

v.                                                            CASE NO.:    04-299-CA

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC.,
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.

<div align="center">Defendants.</div>

---

## NOTICE OF HEARING

---

**TO:    Ronald E. Cabaniss, Esquire**
**Jason Herman, Esquire**
**485 North Kellar Road, Suite 401**
**Maitland, Florida 32751**
**and**
**Bruce Fehr, Esquire**
**Vernis & Bowling of NW Florida**
**315 South Palafox**
**Pensacola, Florida 32502**

PLEASE TAKE NOTICE that the Defendant, The Chemins Company, Inc.'s Motion for Protective Order will be called on for hearing before the Honorable Paul A. Rasmussen, Judge of this Court, in his chambers in the Santa Rosa Courthouse, at 4:00 P.M. on November 29, 2004. Thirty (30) minutes have been reserved for this hearing.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Persons needing a special accommodation to participate in this proceeding should contact the undersigned attorney not later than seven (7) days prior to the proceeding.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing have been furnished to **Jason Herman, Esquire**, of Cabaniss, Smith, Toole & Wiggins, PL, 485 N. Keller Road, Suite 401, Maitland, FL 32751 and a copy to **Bruce Fehr, Esquire,** Vernis & Bowling, 315 S. Palafox Street Pensacola, FL 32502 and **David A. Neblett, Esquire**, Gaebe, Mullen, Anotnelli, Esco & Dimatteo, 420 South Dixie Highway, Third Floor, Coral Gables, Florida 33146, **Christian C. Burden, Esquire,** Piper Rudnick, 101 East Kennedy Blvd, Suite 2000, Tampa, Florida 33602-5149, by the undersigned counsel by U.S. Mail this 7th day of October, 2004.

**THOMAS F. GONZALEZ**
Florida Bar No.: 0025878
**J. NIXON DANIEL, III**
Florida Bar No. 228761
**JOHN F. WINDHAM**
Florida Bar No.: 203394
BEGGS & LANE
501 Commendencia Street
Pensacola, Florida 32591-2950
(850) 432-2451
**TIM O'BRIEN, ESQUIRE**
FL Bar #0007552
Levin, Papantonio, Thomas, Mitchell,
Echsner & Proctor, P.A.
316 S. Baylen Street (32501)
Pensacola, FL 32581
850-435-7079 (phone)

Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,                                    CASE NO.: 04-299 CA
                                                  DIVISION NO.:
      Plaintiff,

vs.

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.,

      Defendant.
_____/

### DEFENDANT METABOLIFE INTERNATION, INC.'S
### NOTICE OF FILING NOTICE OF STAY

Comes now the Defendant, METABOLIFE INTERNATIONAL, INC., by and through its

undersigned attorneys and gives notice that it is contemporaneously filing a Notice of Stay as to

Metabolife International, Inc. and Alpine Health Products, LLC, by said entities' bankruptcy counsel

and requests that the Court and all Parties take note of same.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via

U.S. Mail on July 8, 2005 to: Thomas F. Gonzalez, Esq., Beggs & Lane, Post Office Box 12950,

Pensacola, FL 32591-2950; David A. Neblett, Esquire, Gaebe, Mullen, Antonelli, Esco & Dimatteo,

420 S. Dixie Highway, Third Floor, Coral Gables, FL 33146; Timothy Michael O'Brien, Esq., Levin,

Papantonio, Thomas, Mitchell, Eschner & Proctor, P.A., P.O. Box 12308, Pensacola, FL 32501.


LARRY D. SMITH, ESQUIRE
Florida Bar No.: 442331
JENNIFER B. LOCKE, ESQUIRE
Florida Bar No.: 0364370
CABANISS, SMITH, TOOLE & WIGGINS, PL
485 N. Keller Road, Suite 401 (32751)
Post Office Box 945401
Maitland, Florida 32794-5401
Phone: (407) 246-1800
Facsimile: (407) 246-1895
Attorneys for Defendant Metabolife
International, Inc.



IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,                                    CASE NO.: 04-299 CA
                                                  DIVISION NO.:
     Plaintiff,

vs.

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE
KING FRANCHISES, INC.,

     Defendants.
_____/

## NOTICE OF STAY AS TO METABOLIFE INTERNATIONAL INC. AND ALPINE HEALTH PRODUCTS, LLC

PLEASE TAKE NOTICE that on June 30, 2005, the United States Bankruptcy Court for the Southern District of California entered an Order for Relief under Chapter 11 of United States Bankruptcy Code against Metabolife International, Inc. ("Metabolife") and its wholly owned subsidiary, Alpine Health Products, LLC ("Alpine," collectively with Metabolife, the "Debtors"), designated Case Nos. 05-6040 and 05-6041, respectively.

Pursuant to section 362 of the Bankruptcy Code, plaintiff(s) in the within action is stayed from continuing this proceeding against Defendants Metabolife and Alpine, or from taking any action or asserting control over any assets or property of either of the Debtors except in accordance with the United States Bankruptcy Code.  Copies of the Notices of

NOTICE OF STAY AS TO METABOLIFE INTERNATIONAL INC. AND ALPINE HEALTH PRODUCTS, LLC - Page 1

Commencement of Bankruptcy Cases are attached hereto as

Exhibit A and incorporated by this reference.

Dated:  July  7 , 2005

ALLEN MATKINS LECK GAMBLE &
MALLORY, LLP

By:  _David A. Riley_____

David L. Osias, Esq.
Debra A. Riley, Esq.
501 W. Broadway, 9th Floor
San Diego, CA 92101
(619) 233-1155

BANKRUPTCY ATTORNEYS FOR
DEBTORS METABOLIFE
INTERNATIONAL, INC. AND
ALPINE HEALTH PRODUCTS, LLC

# IN THE CIRCUIT COURT IN AND FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,

      Plaintiff,

v.              CASE NO.: 04-299-CA

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC.,
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE KING
FRANCHISES, INC.

      Defendants.

---

## NOTICE OF FILING

---

  YOU ARE HEREBY NOTIFIED that the Plaintiff, Joseph Saiter, by and through his undersigned counsel has filed with the Court the following:

  1.  A copy of the Proof of Claim submitted to the United States Bankruptcy Court, Southern District of California on July 22, 2005.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing have been furnished to **Brian Equi,**

**Esquire**, of Cabaniss, Smith, Toole & Wiggins, PL, 485 N. Keller Road, Suite 401, Maitland, FL

32751 by the undersigned counsel by U.S. Mail this _____ day of August, 2005.


**THOMAS F. GONZALEZ**
Florida Bar No.: 0173878
**J. NIXON DANIEL, III**
Florida Bar No.: 228761
**JOHN F. WINDHAM**
Florida Bar No.: 203394
BEGGS & LANE
501 Commendencia Street
Pensacola, Florida 32591-2950
(850) 432-2451
**TIM O'BRIEN, ESQUIRE**
FL Bar #0007552
Levin, Papantonio, Thomas, Mitchell,
Echsner & Proctor, P.A.
316 S. Baylen Street (32501)
Pensacola, FL 32581
850-435-7079 (phone)

Attorneys for Plaintiff

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF CALIFORNIA | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Metabolife International, Inc. | Case Number<br>05-06040 - JH - 11 |
|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Saiter, Joseph | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and Address where notices should be sent:<br>Saiter, Joseph<br>c/o Beggs & Lane<br>P.O. Box 12950<br>Pensacola, FL 32591-2950 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
| Telephone Number:  850 - 432 - 2451 | | |

| Account or other number by which creditor identifies debtor: | Check here if ☐ replaces<br>this claim  ☐ amends    a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☑ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)          (date)

**2. Date debt was incurred:**
Still in litigation

**3. If court judgment, date obtained:**
Still in litigation

**4. Total Amount of Claim at Time Case Filed:** $ 2 million _____ _____ 2 million
Still undetermined    (unsecured)    (secured)    (priority)    (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☐ Other_____

Value of Collateral:  $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim $_____**
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
☐ Up to $ 2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:**  *Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.*

**10. Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>7/22/15 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>attorney |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

038747

**FORM B10 (Official Form 10) (04/04)**

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

#### ---- DEFINITIONS ----

*Debtor*

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

*Proof of Claim*

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

*Secured Claim*

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

*Unsecured Claim*

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

*Unsecured Priority Claim*

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

---

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money *or* property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim at Time Case Filed:**
Fill in the applicable amounts, including the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above.)

**6. Unsecured Nonpriority Claim:**
Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount not entitled to priority.

**7. Unsecured Priority Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above.) A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**8. Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**9. Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

## IN THE CIRCUIT COURT OF THE
## FIRST JUDICIAL CIRCUIT IN AND
## FOR SANTA ROSA COUNTY, FLORIDA

JOSEPH SAITER,                                  CASE NO.: 04-299 CA

      Plaintiff,

vs.

METABOLIFE INTERNATIONAL, INC.,
THE CHEMINS COMPANY, INC., and
DIXIE HEALTH OF PENSACOLA, INC.,
d/b/a SMOOTHIE KING, SMOOTHIE
KING FRANCHISES, INC.,

      Defendants.
_____/

### DEFENDANT, THE CHEMINS COMPANY, INC.'S, NOTICE OF FILING
### STIPULATION AND ORDER FOR A NINETY DAY STAY OF ALL PROCEEDINGS

      COMES NOW the Defendant, THE CHEMINS COMPANY, INC. by and through its

undersigned counsel hereby gives notice of filing the following:

1.)     Stipulation and Order for a Ninety (90) Day Stay of all Proceedings filed with the MDL in
the United States District, Southern District of New York.

2.)     Order by the United States Bankruptcy Court for the Southern District of California on
Motion for Temporary Restraining Order and Setting Hearing regarding Preliminary
Injunction.

3.)     Order by the United States Bankruptcy Court for the Southern District of California
Granting and Staying all Proceedings against the Non-debtor Defendants for Ninety days
(90) ending on December 6, 2005.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via

facsimile transmittal and United States Mail on September 21, 2005:  Thomas F. Gonzalez, Esq.,

**Beggs & Lane,** Post Office Box 12950, Pensacola, FL 32591-2950; David A. Neblett, Esquire,

**Gaebe, Mullen, Antonelli, Esco & Dimatteo**, 420 S. Dixie Highway, Third Floor, Coral Gables,

FL 33146 and Timothy Michael O'Brien, Esq., **Levin, Papantonio, Thomas, Mitchell, Eschner**

**& Proctor, P.A.,** P.O. Box 12308, Pensacola, FL 32501.


LARRY D. SMITH, ESQUIRE
Florida Bar No.: 442331
JENNIFER B. LOCKE, ESQUIRE
Florida Bar No.: 0364370
CABANISS, SMITH, TOOLE & WIGGINS, PL
485 N. Keller Road, Suite 401 (32751)
Post Office Box 945401
Maitland, Florida 32794-5401
Phone: (407) 246-1800
Facsimile: (407) 246-1895
Attorneys for The Chemins Company, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

EPHEDRA PRODUCTS LIABILITY                    04 MD 1598 (JSR)
LITIGATION.

         Debtors.

PERTAINS TO ALL CASES

## STIPULATION AND ORDER

WHEREAS, on June 30, 2005, Metabolife International, Inc. ("Metabolife") and its wholly-owned subsidiary, Alpine Health Products, LLC ("Alpine", collectively with Metabolife, "Metabolife") commenced Chapter 11 cases in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court"), which have been administratively consolidated under Case Number 05-6040-H11 (the "Metabolife Chapter 11 Cases");

WHEREAS, since 1999, Metabolife has faced litigation arising out of alleged injuries related to its ephedra-containing products, primarily Metabolife 356®. Currently, there are approximately 362 ephedra related personal injury and wrongful death civil actions pending nationwide against Metabolife (the "Metabolife Ephedra Litigation Cases"), and there may be additional ephedra related personal injury claims asserted or filed against Metabolife (the Metabolife Ephedra Litigation Cases and any other ephedra related personal injury or wrongful death claims asserted or filed against Metabolife shall be collectively referred to as the "Metabolife Ephedra Litigation Claims");

WHEREAS, approximately 90 of the Metabolife Ephedra Litigation Cases are currently pending in California state courts. These cases have been coordinated by the Judicial Council and are pending in a single proceeding in the Superior Court for the State of California for the County of San Diego, JCCP No. 4360, the Hon. Ronald Styn, presiding (collectively, the



"California JCCP Cases"). In early July 2005, Metabolife caused to be filed a Notice of Stay in the California JCCP Cases, in connection with the proceedings therein against Metabolife. On July 8, 2005, after a noticed, open telephonic hearing at which all parties were invited to participate, and after consulting with liaison counsel for plaintiffs and defendants at that hearing, Judge Styn ordered a 90-day stay on all California JCCP Cases. The next status conference is set for October 14, 2005, at 11:00 a.m.;

WHEREAS, approximately 72 of the Metabolife Ephedra Litigation Cases are pending in various state courts around the country, as well as in a few federal courts other than the Southern District of New York (the venue of the MDL Proceeding as defined below) because of their advanced procedural posture or because they have yet to be transferred to said MDL Proceeding (as defined below) (collectively the "Other Cases"). In early July, Metabolife caused to be filed Notices of Stay in the state and/or federal courts in which each of the Other Cases are pending, as each related to Metabolife. Although these cases have been stayed in connection with proceedings therein against Metabolife pursuant to Section 362 of the Bankruptcy Code, they have not been stayed as to the other defendants;

WHEREAS, the remaining 200 or so Metabolife Ephedra Litigation Cases have been transferred to the United States District Court for the Southern District of New York, the Hon. Jed S. Rakoff, District Judge, presiding (the "District Court"), as part of the In re Ephedra Products Liability Litigation, Case No. 04 MD 1598 (JSR) (the "MDL Proceeding") (the Metabolife Ephedra Litigation Cases in the MDL Proceeding shall be referred to herein as the "Metabolife MDL Cases);

WHEREAS, in early July 2005, in accordance with Section 362 of the Bankruptcy Code, Metabolife caused to be filed a Notice of Stay in the MDL Proceeding in connection with proceedings therein against Metabolife as a defendant in the Metabolife MDL Cases; and

WHEREAS, since the commencement of the Metabolife Chapter 11 Cases, the interested parties in and to the California JCCP Cases, the Other Cases and the Metabolife MDL, Cases— counsel for Metabolife in the Metabolife Chapter 11 Cases, counsel for and members of the Official Committee of Unsecured Creditors in the Metabolife Chapter 11 Cases (the "Metabolife OCC" ), counsel to the Metabolife Shareholders (the "Shareholders"), counsel representing non-debtor defendants named in Metabolife MDL Cases as well as in the other Metabolife Ephedra Litigation Cases (collectively, the "Non-Debtor Defendants") and counsel representing Metabolife insurers, including but not limited to Investors Insurance Company of America, Evanston Insurance Company, National Union Fire Insurance Company of Pittsburgh and Starr Excess International Insurance Company (collectively, the "Insurers") (Metabolife, the Metabolife OCC, the Shareholders, the Non-Debtor Defendants and the Insurers shall collectively be referred to as the "Interested Parties") -- have conferred with respect to issues raised by the Metabolife Chapter 11 Cases, including but not limited to the impact of the automatic stay of proceedings against Metabolife but not for proceedings against the named Non-Debtor Defendants, and the difficulties this may cause for the resolution of the Metabolife Ephedra Litigation Claims, and the disagreement among the Interested Parties about the relative roles of the Bankruptcy Court and the District Court for the resolution of the Metabolife Ephedra Litigation Claims.  In order to avoid unnecessary disputes and expenses, in order to promptly enhance the prospects for obtaining a consensual resolution of the Metabolife Ephedra Litigation Claims without prejudice to any Interested Party's contentions regarding the resolution and litigation of the Metabolife Ephedra Litigation Claims, and for good cause and in good faith, and upon the approval of both the District Court and Bankruptcy Court, the Interested Parties have agreed to stipulate to a ninety (90) day stay of all proceedings with respect to the Metabolife MDL Cases, the California JCCP Cases and the Other Cases (including proceedings against the Non-Debtor Defendants named therein) and to take all reasonable steps necessary to secure such a stay from the District Court and the Bankruptcy Court as the case may be and as provided herein;

1.     The Metabolife MDL Cases, the California JCCP Cases, and the Other
Cases (including all proceedings against the Non-Debtor Defendants named therein) shall be
stayed by stipulated order or other appropriate order for a period of ninety (90) days from entry
of the last such order by the Bankruptcy Court and District Court, unless the stay is otherwise
continued by order of both the District Court and the Bankruptcy Court for cause.

2.     To implement the foregoing as it relates particularly to the California
JCCP Cases and the Other Cases, Metabolife shall, on or before August 26, 2005, commence an
adversary proceeding in the Metabolife Chapter 11 Cases and move pursuant to Section 105 of
the Bankruptcy Code and/or any other applicable statute or rule, requesting the Bankruptcy Court
to issue a 90-day temporary stay of the Metabolife MDL Cases, the California JCCP Cases and
the Other Cases on behalf of and for the benefit of all Non-Debtor Defendants named in the
Metabolife Ephedra Litigation Cases as agreed to and under the conditions provided herein. The
issuance of any temporary stay by the Bankruptcy Court shall be expressly conditioned on a
similar temporary stay being approved and issued by the District Court for the Metabolife MDL
Cases.

3.     Contemporaneously with the foregoing, the Interested Parties, collectively,
shall also seek from the District Court in the MDL Proceeding, a 90-day temporary stay as to all
Non-Debtor Defendants in the Metabolife MDL Cases by submission and District Court
approval of this Stipulation and Order or, if necessary, by motion. The issuance of any
temporary stay issued by the District Court as to the Non-Debtor Defendants in the Metabolife
MDL Cases shall be expressly conditioned on a similar temporary stay being issued by the
Bankruptcy Court in the Metabolife Chapter 11 Cases in the manner set forth in paragraph 2
herein and in accordance with the terms and conditions of this Stipulation and Order. The stays
contemplated and described by paragraphs 2 and 3 herein to be issued by the Bankruptcy Court
and the District Court are collectively referred to as the "Temporary Stays."

4.      During the pendency of the Temporary Stays, representatives of the
Interested Parties shall in good faith enter into negotiations in an attempt to establish and
implement processes and procedures regarding a non-litigated methodology for resolution of the
Metabolife Ephedra Litigation Claims and the development of the terms of a consensual plan of
reorganization/liquidation for Metabolife with respect to all creditors. The Interested Parties
may utilize Professor Greene to conduct any mediation the Interested Parties agree is necessary
and appropriate in that regard. Should the Interested Parties agree to utilize the services of
Professor Greene, the representatives of the Interested Parties shall negotiate in good faith their
respective responsibilities for the fees and related costs of Professor Greene's services and shall
consider whether a cap on such fees is appropriate. Representatives of the Interested Parties
further agree to attend an initial meeting of Interested Parties to be held on or before August 31,
2005 to address the issues set forth above or such other issues or matters as the Interested Parties
may deem appropriate. Metabolife, the Metabolife OCC and a representative of the Retailer
Non-Debtor Defendants shall jointly report to the District Court and the Bankruptcy Court
regarding these efforts by no later than September 8, 2005 and by the end of each month
thereafter so long as the Temporary Stays are in effect.

5.      . This Stipulation and Order is not intended to and shall not impair or waive
any rights, positions and privileges of the Interested Parties, including but not limited to such
rights, positions and privileges that relate to the value and liquidation of disputed, unliquidated
claims, and the forum, venue, and jurisdiction where such claims should be liquidated if a
consensual agreement is not reached. Without limitation of the preceding sentence, the
Interested Parties agree as to themselves and any other party effected hereby or by the orders of
the Bankruptcy Court and the District Court, including all Non-Debtor Defendants in the
Metabolife MDL Cases, the California JCCP Cases and the Other Cases, that all statutes of


limitations under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the United States Code (including without limitation 28 U.S.C §§ 157, 1407, 1452) and otherwise relating to the choice of forum, venue or jurisdiction for resolution of the claims are hereby tolled from the date hereof to a date that is fifteen (15) days after the expiration of the Temporary Stays or any extensions thereof. However, nothing in this Stipulation and Order shall be deemed to preclude or stay any Interested Party from filing or opposing any motion, document or appropriate proceeding, based upon any of the foregoing statutes and rules or otherwise, relating to the choice of forum, venue or jurisdiction with respect to any of the Metabolife Ephedra Litigation Cases pending or subsequently commenced.

6.    The Interested Parties agree that neither this Stipulation and Order nor approval of the Temporary Stays by the Bankruptcy Court and the District Court shall be used by any Interested Party or against any Interested Party in any subsequent litigation or negotiation.

Dated: August _____, 2005

METABOLIFE, as Debtors in Possession

By: _____

METABOLIFE, as Debtors In Possession, on behalf of their Insurers with respect to paragraphs 4, 5 and 6

By: _____

METABOLIFE OCC

By: _____

limitations under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the United States Code (including without limitation 28 U.S.C §§ 157, 1407, 1452) and otherwise relating to the choice of forum, venue or jurisdiction for resolution of the claims are hereby tolled from the date hereof to a date that is fifteen (15) days after the expiration of the Temporary Stays or any extensions thereof. However, nothing in this Stipulation and Order shall be deemed to preclude or stay any Interested Party from filing or opposing any motion, document or appropriate proceeding, based upon any of the foregoing statutes and rules or otherwise, relating to the choice of forum, venue or jurisdiction with respect to any of the Metabolife Ephedra Litigation Cases pending or subsequently commenced.

    6.    The Interested Parties agree that neither this Stipulation and Order nor approval of the Temporary Stays by the Bankruptcy Court and the District Court shall be used by any Interested Party or against any Interested Party in any subsequent litigation or negotiation.

Dated: August _____, 2005

                                    METABOLIFE, as Debtors in Possession

                                    By: _____

                                    METABOLIFE, as Debtors In Possession, on behalf of their Insurers with respect to paragraphs 4, 5 and 6

                                    By: _____

                                    METABOLIFE OCC.

                                    By: _____
                                        Donald J. Morton

NON-DEBTOR DEFENDANT
REPRESENTATIVES

By: _____
  For: WalMart  PAUL B LA-SCALA (counsel)

By: _____
  For: Walgreens

By: _____
  For: GNC Oldco  Michael J Etkin (counsel)

By: _____
  For: Albertsons

By: _____
  For: CVS

By: _____
  For: Rite-Aid

By: _____
  For: Target

By: _____
  For: Sears/K-Mart

By: _____
  For: Safeway

By: _____
  For: Chemins

Metabolife Shareholders

By: _____
  For: Michael Ellis, Michael Blevins
  and William Bradley

So Ordered:

_____
   U.S.D.J.

NON-DEBTOR DEFENDANT
REPRESENTATIVES

By:_____
     For:  WalMart

By:_____
     For:  Walgreens

By:_____
     For:  GNC Oldco

By_____
     For:  Albertsons, Inc.  and/or its subsidiary
     Corporations.

By:_____
     For:  CVS

By:_____
     For:  Rite-Aid

By:_____
     For:  Target

By:_____
     For:  Sears/K-Mart

By:_____
     For:  Safeway

By:_____
     For:  Chemins

Metabolife Shareholders

By:_____
     For:  Michael Ellis, Michael Blevins
     and William Bradley

So Ordered:

_____
                    U.S.D.J.

-7-

NON-DEBTOR DEFENDANT
REPRESENTATIVES

By:_____
        For: WalMart

By:_____
        For   Walgreens

By:_____
        For: GNC Oldco

By:_____
        For: Albertsons

By:_____
        For: CVS

By:_____
        For: Rite Aid

By:_____
        For: Target

By:_____
        For: Sears/K-Mart

By:_____
        For: Safeway

By:_____
        For: Chemins

Metabolife Shareholders

By:_____
        For: Michael Ellis, Michael Blevins
        and William Bradley

So Ordered:

_____
                    U.S.D.J.

-7-

AUG-24-2005  17:32        JUDGE RAKOFF                                              P.12
                         Fax:8473154826            Aug 18 2005  18:52        P.08

NON-DEBTOR DEFENDANT
REPRESENTATIVES

By:_____
     For:  WalMart

By:_____
     For:  Walgreens

By:_____
     For:  GNC Oldco

By: _____
     For:  Albertsons

By: _____
     For:  CVS

By: _____
     For:  Rite-Aid

By: _____
     For:  Target

By: _____
     For:  Sears/K-Mart

By: _____
     For:  Safeway

By: _____
     For:  Chemins

Metabolife Shareholders


By:_____
     For:  Michael Ellis, Michael Blevins
     and William Bradley


So Ordered:

_____
                    U.S.D.J.

**NON-DEBTOR DEFENDANT
REPRESENTATIVES**

By: _____
    For: WalMart

By: _____
    For: Walgreens

By: _____
    For: GNC Oldco

By: _____
    For: Albertsons

By: _____
    For: CVS

By: _____
    For: Rite-Aid

By: _____
    For: Target

By: _____
    For: Sears/K-Mart

By: _____
    For: Safeway

By: _____ Lisa Ackley
    For: Chemins

**Metabolife Shareholders**

By: _____
    For: Michael Ellis, Michael Blevins
    and William Bradley

So Ordered:

_____
                U.S.D.J.

NON-DEBTOR DEFENDANT
REPRESENTATIVES

By:_____
    For: WalMart

By:_____
    For: Walgreens

By:_____
    For: GNC Oldco

By:_____
    For: Albertsons

By:_____
    For: CVS
Jon-Paul Lapointe, Esquire
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 528-5856
Fax No. (888) 325-9630

By:_____
    For: Rite-Aid

By:_____
    For: Target

By:_____
    For: Sears/K-Mart

By:_____
    For: Safeway

By:_____
    For: Chemins

Metabolife Shareholders

By:_____

AUG-24-2005  17:32          JUDGE RAKOFF                                                    P.15

                                                  Aug 18 2005  15:10      P.02


                                        NON-DEBTOR DEFENDANT
                                        REPRESENTATIVES

                                        By:_____
                                             For:  WalMart

                                        By:_____
                                             For:  Walgreens

                                        By:_____
                                             For:  GNC Oldco

                                        By:_____
                                             For:  Albertsons

                                        By:_____
                                             For:  CVS

                                        By:_____
                                             For:  Rite-Aid

                                        By:_____
                                             For:  Target

                                        By:_____
                                             For:  Sears/K-Mart

                                        By:_____
                                             For:  Safeway

                                        By:_____
                                             For:  Chemins

                                    Metabolife Shareholders

                                        By:_____
                                             For:  Michael Ellis, Michael Blevins
                                             and William Bradley

So Ordered:

_____
                          U.S.D.J.

                                    -7-

NON-DEBTOR DEFENDANT
REPRESENTATIVES

By:_____
    For: WalMart

By:_____
    For: Walgreens

By:_____
    For: GNC Oldco

By:_____
    For: Albertsons

By:_____
    For: CVS

By:_____
    For: Rite-Aid

By:_____
    For: Target

By: _Matthew C. Gay_, _Senior Counsel_
    For: Sears/KMart

By:_____
    For: Safeway

By:_____
    For: Chemins

Metabolife Shareholders

By:_____
    For: Michael Ellis, Michael Blevins
    and William Bradley

So Ordered:

_____
             U.S.D.J.

-7-

AUG-24-2005  17:33        )JUDGE RAKOFF                                              P.17

Aug-18-05    03:20pm    From-AKIN.GUMP,STRAUSS,HAUER,FELD                  T-578  P.002/002  F-868

NON-DEBTOR DEFENDANT
REPRESENTATIVES

By:_____
     For: WalMart

By:_____
     For: Walgreens

By:_____
     For: GNC Oldco

By:_____
     For: Albertsons

By:_____
     For: CVS

By:_____
     For: Rite-Aid

By:_____
     For: Target

By:_____
     For: Sears/K-Mart

By:_____
     For: Safeway

By:_____
     For: Chemins

METABOLIFE SHAREHOLDERS

By:_____
     For: Michael Ellis, Michael Blevins
     and William Bradley

So Ordered:

_____
              U.S.D.J.

8-23-05

TOTAL P.18
TOTAL P.17

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.
David L. Osias/Debra A. Riley (91287/151925)
Allen Matkins Leck Gamble & Mallory LLP
501 W. Broadway, 15th Floor
San Diego, CA 92101
619-233-1155

Order Entered on
August 29, 2005
by Clerk U.S. Bankruptcy Court
Southern District Of California

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re
METABOLIFE INTERNATIONAL, INC.
METABOLIFE INTERNATIONAL V. ALANIZ, ET AL.

                                                    Debtor.

BANKRUPTCY NO. 05-90378-JH

Date of Hearing: September 7, 2005
Time of Hearing: 2:00 p.m.
Name of Judge: John J. Hargrove

## ORDER ON
## MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING REGARDING PRELIMINARY INJUNCTION

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through __2__ with exhibits, if any, for a total of __2__ pages, is granted. Motion/Application Docket Entry No. __3__

//

//

//

//

//

//

DATED: **August 29, 2005**

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

Allen Matkins Leck Gamble & Mallory LLP
(Firm name)

By: /s/ David L. Osias
    Attorney for ☑ Movant ☐ Respondent

Judge, United States Bankruptcy Court

CSD 1001A

EXHIBIT

CSD 1001A [11/15/04] (Page ..)
ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING
DEBTOR: METABOLIFE INTERNATIONAL, INC.                                                        CASE NO: 05-90378-JH
          METABOLIFE INTERNATIONAL V. ALANIZ, ET AL.

Upon the motion of Metabolife International, Inc. and Alpine Health Products, LLC (the "Debtors in Possession") for a Temporary Restraining Order, Preliminary Injunction and Certain Other and Additional Relief (the "Motion"); the Court having reviewed the supporting memorandum of points and authorities, the declaration of Christopher R. Barclay and the Stipulation and Order entered in the MDL Litigation on August 23, 2005; the Court having authority to consider the Motion under 28 U.S.C § 157 and 1334 and consideration of the Motion being a core proceeding under 28 U.S.C. § 157(b); venue being proper in this Court under 28 U.S.C. § 1408 and 1409; it appearing that under the standards of Federal Rule of Civil Procedure 65(b), a temporary restraining order without notice is justified; and after due deliberation and good cause appearing therefore, it is hereby

ORDERED as follows:

1) The Motion is granted.

2) For a period of 10 days from the entry of this Order, the defendants herein (the "Ephedra Plaintiffs") are temporarily restrained from the commencement or continuation of any and all actions against nondebtor third parties relating to the purchase and/or use of Metabolife products that contained ephedra. This period shall expire on the 10th day at the same time of day as this Order is entered.

3) A hearing on the Motion for a preliminary injunction is hereby set for September 7, 2005, at 2:00 p.m.

5) A copy of the Motion, and the supporting Memorandum of Points and Authorities and Declaration of Christopher R. Barclay shall be served by overnight delivery upon (1) the Office of the United States Trustee; (2) the attorneys of record for the Ephedra Plaintiffs; and (3) counsel for the Official Committee of Unsecured Creditors. Notice of the entry of this Order shall be given to the same parties by the most expeditious means reasonably possible. Such service shall be deemed good and sufficient notice of this Order and the Motion for a preliminary injunction, and all proceedings to be had thereon.

6) Objections, if any, to the granting of a preliminary injunction shall be made in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of California, shall set forth the basis for the objection and the specific grounds therefore, and shall be filed together with proof of service thereof, and shall be served, in a manner so as to be received by 9:00 a.m. on September 6, 2005, on Allen Matkins Leck Gamble & Mallory LLP, attorneys for Debtors in Possession, 501 W. Broadway, 15th Floor, San Diego, California 92101-3541, Attention: Debra A. Riley, Esq.

7) Any reply by the Debtors in Possession to objections shall be filed and served on the parties specified in paragraph 3 above no later than September 7, 2005, at 9:00 a..m.

Signed by Judge John J. Hargrove August 29,2005

CSD 3000A [11/15/04]
Name, Address, Telephone No. & I.D. No.

DAVID L. OSIAS / DEBRA A. RILEY (091287/151925)
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
*Attorneys for Plaintiffs*

Order Entered on
September 09, 2005
by Clerk U.S. Bankruptcy Court
Southern District of California

### UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| | |
|---|---|
| In Re<br>METABOLIFE INTERNATIONAL, INC., and<br>ALPINE HEALTH PRODUCTS, LLC,<br><div align="right">Debtor.</div> | BANKRUPTCY NO. 05-6040-H11 (Jointly Admin.) |
| Metabolife International, Inc., and<br>Alpine Health Products, LLC,<br><div align="right">Plaintiff(s)</div> | ADVERSARY NO. 05-90378-JH |
| v.<br>Rosemary Alaniz, an individual; et al.,<br><div align="right">Defendants(s)</div> | Date of Hearing: September 7, 2005<br>Time of Hearing: 2:00 p.m.<br>Name of Judge: John J. Hargrove |

## ORDER ON

## MOTION FOR (A) ON AN EMERGENCY BASIS, A TEMPORARY RESTRAINING ORDER, (B) UPON DUE NOTICE, A PRELIMINARY INJUNCTION, AND (C) CERTAIN OTHER AND ADDITION

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __2__ pages, is granted. Motion/Application Docket Entry No. __3__

//

//

//

//

DATED: **September 09, 2005**

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Allen Matkins Leck Gamble & Mallory LLP
(Firm name)

By: /s/ David L. Osias
Attorney for ☑ Movant ☐ Respondent

Judge, United States Bankruptcy Court

CSD 3000A


EXHIBIT 3

CSD 3000A [11/15/04] (Page 2)
ORDER ON MOTION FOR (A) ON AN EMERGENCY BASIS, A TEMPORARY RESTRAINING
DEBTOR: METABOLIFE INTERNATIONAL, INC., and
          ALPINE HEALTH PRODUCTS, LLC.

CASE NO.: 05-6040-H11 (Jointly Admin.)
ADV. NO.: 05-90378-JH

The Plaintiffs' Motion for (A) on an Emergency Basis, a Temporary Restraining Order, (B) Upon Due Notice, a Preliminary Injunction, and (C) Certain Other and Additional Relief came on for hearing before this Court on September 7, 2005, at 2:00 p. m., the Honorable John J. Hargrove presiding. David L. Osias of Allen Matkins Leck Gamble & Mallory LLP appeared as counsel for the Plaintiffs; other appearances were as noted on the record. After consideration of Plaintiffs' moving papers, the files herein, and the argument of counsel at the hearing, the Court finds that notice of the motion was properly given and that, based upon the facts and circumstances herein, the multi-party stipulation executed in the Ephedra Products Liability MDL (04 MD 1598 JSR), and the approval of that stipulation by the United States District Court for the Southern District of New York, entry of the preliminary injunction is reasonably necessary to promote and protect the parties' efforts to work toward a chapter 11 plan.

In light of the foregoing, IT IS HEREBY ORDERED as follows:

1. The motion for preliminary injunction is granted. All proceedings in any case, suit, or action commenced by an Ephedra Plaintiff (as defined in the moving papers), including any proceedings against the non-debtor defendants in such case, suit, or action, are hereby stayed and enjoined through December 6, 2005.

2. This preliminary injunction and stay may be extended upon the approval of such extension by both this Court and the MDL District Court.

3. Pending further order of this Court, all procedural deadlines, including under the Federal Rules of Bankruptcy or Civil Procedure, in this adversary proceeding, such as dates by which service must be effected, a response to the complaint or pretrial reports filed, or initial discovery disclosures made, are also stayed.

CSD 3000A

*Signed by Judge John J. Hargrove September 09, 2005*

# UNITED STATES DISTRICT COURT

Southern District Of California
Office Of The Clerk
880 Front Street, Room 4290
San Diego, California 92101-8900
Phone: (619) 557-5600
Fax: (619) 702-9900

W. Samuel Hamrick, Jr.
Clerk of Court

April 5, 2006

William M. Low                         Thomas F. Gonzalez
Higgs, Fletcher & Mack LLP             Beggs & Lane
401 West A Street #2600                501 Commendencia Street
San Diego, CA  92101                   Pensacola, FL 32591-2950

RE:                     Saiter vs. MII Liquidation Inc.
Bankruptcy Case Number: 05-6040-H11
BAP Case Number         05-90378-JH

You are hereby notified that the above entitled case was on 03/27/06 transferred from
the US Bankruptcy Court, San Diego to the U.S. District Court, Southern District of
California.   The case will now contain the case number of the Southern District, and
the initial of the assigned Judge. The case has been assigned to the Honorable Barry
Ted Moskowitz, and on all future filings please show the case number as 06CV0669-
BTM(JMA).

W. Samuel Hamrick, Jr.
Clerk of Court

**J. PETERSEN**

By: _____
                    J. Petersen, Deputy Clerk

JS 44
(Rev. 07/89)

**CIVIL COVER SHEET**    *Original*

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

Joseph Saiter

## DEFENDANTS

MII Liquidation fka Metabolife International Inc., The Chemins Company, Inc., Dixie Health of Pensacola, Inc. dba Smoothie King and Smoothie King Franchises, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  United States
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  United States
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Thomas F. Gonzalez, Esq.
Beggs & Lane
501 Commendencia Street, PO Box 12950
Pensacola, FL 32591-2950
(850) 432-2451

ATTORNEYS (IF KNOWN)

William M. Low, Esq.
Higgs, Fletcher & Mack LLP
401 West 'A' Street #2600
San Diego, CA 92101
(619) 236-1551

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

'06CV 0.6 9 BTM JMA

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR
(For Diversity Cases Only)    PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. Sec. 157(b)(5). Claims against bankrupt entity for personal injury and damages relating to ingestion of ephedra; action has been transferred to this Court by Order of this Court

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reappointment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Medical Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | [ ] 625 Drug Related Seizure of | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [X] 385 Personal Injury - Product Liability | Property 21 USC 881 | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 690 Other | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **HABEAS CORPUS:** | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [ ] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [X] 5 Transferred from another district Circuit Ct of (specify) Santa Rosa Cnty, Florida
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $25,000.00    CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] YES  [ ] NO

## VIII. RELATED CASE(S) IF ANY  (See instructions):

JUDGE Hon. Barry Ted Moskowitz    Docket Number 02-01671

DATE

March 23, 2006

SIGNATURE OF ATTORNEY OF RECORD

Cyrus L. Torabi

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

PAID $250 3/27/06  BM  RCPT# 123026